**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

LAURA MULLEN, individually and on
behalf of all others similarly situated,

          *Plaintiff,*

v.

GLV, INC., d/b/a SPORTS
PERFORMANCE VOLLEYBALL CLUB
and GREAT LAKES CENTER, an Illinois
corporation, RICKY BUTLER, an individual,
and CHERYL BUTLER, an individual,

          *Defendants.*

Case No. 18-cv-1465

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)</u>**

Dated:  May 14, 2018

Danielle D'Ambrose
ANGELINI & ORI, LLC
155 N. Michigan Avenue, Suite 400
Chicago, IL 60601
(312) 621-0000
ARDC No. 6323782

Attorney for Defendants
*Rick Butler, Cheryl Butler, and
GLV, Inc. d/b/a/ Sports Performance Volleyball Club*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................iii

PRELIMINARY STATEMENT......................................................................................1

STATEMENT OF FACTS............................................................................................2

ARGUMENT..............................................................................................................3

I.      PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.......................3

II.    LEGAL STANDARD............................................................................................4

III.   THE COMPLAINT IS FACTUALLY INSUFFICIENT UNDER RULE 9(b)
AND CONTAINS FACTUAL ADMISSIONS THAT PRECLUDE RECOVERY
UNDER ANY THEORY SOUNDING IN FRAUD...................................................5

       A.    Plaintiff Has Failed to Plead a Plausible Claim to Relief for Common
Law Fraudulent Misrepresentation.................................................................6

              1.    The Statements Set Forth In the Complaint Are Not Deceptive
Because They Are Subjective Descriptions Related to Quality...............6

              2.    Plaintiff Has Not and Cannot Allege That Defendants Had
Knowledge of the Falsity Because the Complaint Contains
Numerous Facts Showing the Truth of the Statements......................10

              3.    Plaintiff Was Not Justified In Relying on Subjective Statements
of Program's General Safety as Fact and Was Further Not
Justified Due To Her Failure to Conduct Any Reasonable Inquiry.........11

              4.    Plaintiff Cannot Claim Allegedly Deceptive Statements Proximately
Caused Her Damages When She Admitted That She Incurred
Alleged Damages Before Ever Being Exposed to Statements...............13

              5.    Plaintiff Did Not Incur Actual Damages Because She Received
the Benefit of the Bargain and Cannot Otherwise Allege the
Existence of Tangible Economic Harm...........................................15

       B.    Plaintiff Has Failed to Plead a Plausible Claim to Relief for Common
Law Fraudulent Concealment.......................................................................17

       C.    Plaintiff Has Failed to Plead a Plausible Claim to Relief for Deceptive
Practices Under the Illinois Physical Fitness Services Act.............................19

i

D.  Plaintiff Has Failed to Plead a Plausible Claim to Relief for Deceptive Practices Under the Illinois Consumer Fraud and Deceptive Business Practices Act ...........................................................20

IV.  THE COMPLAINT IS INSUFFICIENT UNDER RULE 8(a)(2) AND CONTAINS FACTUAL ADMISSIONS THAT PRECLUDE RECOVERY UNDER EVERY THEORY SET FORTH THEREIN........................................21

A.  Plaintiff Has Failed to Plead a Plausible Claim to Relief For an Alleged Violation of Contract Provisions Pursuant to the Illinois Physical Fitness Services Act...............................................22

B.  Plaintiff Has Failed to Plead a Plausible Claim to Relief For an Alleged Violation of Unfair Practices Under the Illinois Consumer Fraud and Deceptive Business Practices Act........................................23

C.  Plaintiff Has Failed to Plead a Plausible Claim to Relief For an Alleged Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act for a "Knowing" Violation of Illinois Physical Fitness Services Act..........25
D.  Plaintiff Has Failed to Plead a Plausible Claim to Relief Under a Theory Of Unjust Enrichment...............................................25

V.  PUBLIC POLICY PROHIBITS THIS COURT FROM GRANTING PLAINTIFF INJUNCTIVE RELIEF.................................................26

VI.  THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE IT IS CLEARLY APPARENT THAT NO SET OF FACTS CAN BE PROVEN THAT WILL ENTITLE THE PLAINTIFF TO RECOVER...............................29

CONCLUSION..................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Abazari v. Rosalind Franklin University of Medicine and Science,*
    No. 2–14–0952, 2015 IL App (2d) 140952 (June 29, 2015)......................................30

*Adler v. William Blair & Co.,*
    271 Ill.App.3d 117 (1995)....................................................................................11

*Anderson v. Abbott Laboratories,*
    140 F.Supp.2d 894 (N.D.Ill.2001), *affirmed*, 269 F.3d 806 (7th Cir. 2001).......................9

*Avery v. State Farm Mut. Auto. Ins. Co.,*
    216 Ill.2d 100 (2005)..................................................................................passim

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................................................3

*August Storck K.G. v. Nabisco, Inc.,*
    59 F.3d 616 (7th Cir.1995)...................................................................................8

*Bank of America, N.A. v. Knight,*
    725 F.3d 815 (7th Cir. 2013)..............................................................................5, 7

*Beraha v. Baxter Health Care Corp.,*
    956 F.2d 1436 (7th Cir. 1992)................................................................................9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...............................................................................4, 21, 22

*Bogina v. Medline Indus., Inc.,*
    11 C 05373, 2015 WL 1396190 (N.D. Ill. Mar. 24, 2015) .......................................12

*Borsellino v. Goldman Sachs Grp., Inc.,*
    477 F.3d 502 (7th Cir. 2007)...............................................................................20

*Bower v. Jones,*
    978 F.2d 1004 (7th Cir. 1992)..............................................................................18

*BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC,*
    664 F.3d 131 (7th Cir. 2011)...............................................................................19

*Breckenridge v. Cambridge Homes, Inc.,*
    246 Ill.App.3d 810 (2d Dist. 1993) ......................................................................8, 9

iii

*Camasta v. Jos. A. Bank Clothiers, Inc.,*
   761 F.3d 732 (7th Cir. 2014) ……………………………………………..……4

*Carlson v. CSX Transp., Inc.,*
   758 F.3d 819 (7th Cir. 2014)………………………………………………….4

*Cincinnati Life Ins. Co. v. Beyrer,*
   722 F.3d 939 (7th Cir. 2013) ………………………………………………...23

*City of Chicago v. Michigan Beach Housing Co-op,*
   297 Ill.App.3d 317 (1st Dist. 1998). ………………………………………….13

*City of Sterling Heights General Employees' Retirement System v. Hospira, Inc.,*
   No. 11 C 8332, 2013 WL 566805 (N.D. Ill. Feb. 13, 2013)…………………… …………..9

*Cohen v. American Sec. Ins. Co.,*
   735 F.3d 601 (7th Cir. 2013). ……………………………………………...…18

*Connick v. Suzuki Motor Co., Ltd.,*
   174 Ill.2d 482 (1996). …………………………………………...………....14, 16, 18

*Cowper v. Nyberg,*
   No. 117811, 2015 IL 117811 (March 19, 2015) …………………………………4, 30

*Crichton v. Golden Rule Ins. Co.,*
   576 F.3d 392 (7th Cir. 2009). …………………………………………….....17

*D.S.A. Finance Corp. v. County of Cook,*
   345 Ill.App.3d 554 (2003)……………………………………………….…...12

*Ennenga v. Starns,*
   677 F.3d 766 (7th Cir. 2012)………………………………………………...12

*Evanston Hospital v. Crane,*
   254 Ill.App.3d 435 (1st Dist. 1993) …………………………………………..8, 10

*Fortres Grand Corp. v. Warner Bros. Entm't Inc.,*
   763 F.3d 696 (7th Cir. 2014)………………………………………………….4

*Frye v. L'Oreal USA, Inc.,*
   583 F.Supp.2d 954 (N.D. Ill. 2008) ……………………………...…………...15, 16

*Galvan v. Northwestern Memorial Hosp.,*
   382 Ill.App.3d 259 (1st Dist. 2008)………………………………………….24

*Haywood v. Massage Envy Franchising, LLC,*
  887 F.3d 329 (7th Cir. 2018) ………………………………………….……..29

*Illinois Graphics Co. v. Nickum,*
  159 Ill.2d 469 (1994) …………………………………………………....…..4

*InQuote Corp. v. Cole,*
  No. 99 C 6232, 2000 WL 1222211 (N.D. Ill. Aug. 24, 2000)..…………………….………12

*Kim v. Carter's Inc.,*
  598 F.3d 362 (7th Cir. 2010) …………………………………………….15, 16

*Kim v. Riscuity,*
  No. 06 C 1585, 2006 WL 2192121 (N.D. Ill. July 31, 2006) ……………………………..25

*Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.,*
  946 F.Supp. 1358 (ND. Ill. 1996) …………………………………………….7

*Mackinac v. Arcadia National Life Insurance Co.,*
  271 Ill.App.3d 138 (1st Dist. 1995)……………………………………………..21

*Martis v. Grinnell Mut. Reinsurance Co.,*
  388 Ill.App.3d 1017 (3d Dist. 2009)……………………………………………..25

*Mulligan v. QVC, Inc.,*
  382 Ill.App.3d 620 (1st Dist. 2008) …………………………………….…….16

*Newman v. Metropolitan Life Insurance Company,*
  885 F.3d 992 (7th Cir. 2018) ……………………………………...……………..…6

*Oliveira v. Amoco Oil Co.,*
  201 Ill.2d 134 (2002) …………………………………………….....14, 20, 30

*Olson v. Champaign Cnty.,*
  784 F.3d 1093 (7th Cir. 2015)…………………………………………….4, 10

*Oshana v. The Coca-Cola Co.,*
  No. 04 C 3596, 2005 WL 1661999 (N.D. Ill. July 13, 2005). …………………….……..21

*Parsons v. Winter*
  142 Ill.App.3d 354 (1st Dist. 1986). …………………………………..……..10

*Pennington v. Travelex Currency Services,*
  114 F.Supp.3d 697 (N.D. Ill. 2015)…………………………………………….9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,*
    631 F.3d 436 (7th Cir. 2011). ................................................................9, 19, 20

*Price v. Philip Morris,* Inc.,
    219 Ill.2d 182 (2005)...............................................................................passim

*Rickher v. Home Depot,*
    535 F.3d at 661 (7th Cir. 2008). ...........................................................24

*Ringelestein v. Johnson & Johnson,*
    16 C 4970, 2017 WL 2362630 (N.D. Ill. May 31, 2017). ...........................7

*Robinson v. Toyota Motor Credit Corp.,*
    201 Ill.2d 403 (2002) ...........................................................................24

*Sabo v. Wellpet, LLC,*
    282 F.Supp.3d 1040 (N.D. Ill. 2017). ...............................................15, 17

*Siegel v. Shell Oil Co.,*
    656 F.Supp.2d 825 (N.D. Ill. 2009). ...............................................23, 24, 26

*Stanard v. Nygren,*
    658 F.3d 792 (7th Cir. 2011) ..............................................................23

*Tarin v. Pellonari,*
    253 Ill.App.3d 542 (1st Dist. 1993). ...................................................21

*Thomas v. Farley,*
    31 F.3d 557 (7th Cir. 1994).................................................................5

*Trustees of AFTRA Health Fund v. Bondi,*
    303 F.3d 765 (7th Cir. 2002). ............................................................12

*Tylka v. Gerber Products Co.,*
    1999 WL 495126 (N.D. Ill. 1999)......................................................8

*Universal Health Services, Inc. v. U.S.,*
    136 S.Ct. 1989 (2016) ......................................................................18

*Vicom, Inc. v. Harbridge Merchant Services, Inc.,*
    20 F.3d 771 (7th Cir. 1994)...............................................................5

*Wendorf v. Landers,*
    755 F.Supp.2d 972 (N.D. Ill. 2010) ..................................................25

*Wigod v. Wells Fargo Bank, N.A.*,
   673 F.3d 547 (7th Cir. 2012). ………………………………………………..17

*Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*,
   536 F.3d 663 (7th Cir. 2008)…………………………………………………23

**Statutes**

815 ILCS 505/1………………………………………………………………1

815 ILCS § 505/2………………………………………..……………………20, 21

815 ILCS § 505/2Z……………………………………..………………………25

815 ILCS § 505/10a…………………………………………..…………………20

815 ILCS 645/1………………………………………………………………1

815 ILCS 645/4……………………………………………………...……22

815 ILCS 645/6…………………………………………………………...…22

815 ILCS 645/10…………………………………………………………19

815 ILCS 645/11……………………………………………………...…19, 22

**Other Authorities**

Fed. R. Civ. P. 8……………………………………..……………………passim

Fed. R. Civ. P. 9… ……………………………..……………………...…… passim

Fed. R. Civ. P. 12(b)(6)………………………………………………… passim

Defendants, GLV, Inc. d/b.a. Sports Performance Volleyball Club and Great Lakes Center ("GLV"), Rick Butler ("Rick"), and Cheryl Butler ("Cheryl") respectfully submit this Memorandum in Support of their Motion to Dismiss all of Plaintiff Laura Mullen's ("Plaintiff's") claims set forth in Plaintiff's Class Action Complaint ("Complaint").[1]

## PRELIMINARY STATEMENT

The purpose of a complaint is to frame issues, not to make headlines. Plaintiff alleges that the action is brought pursuant to the Illinois Physical Fitness Services Act, 815 ILCS 645/1 *et seq.* (the "IPFSA"), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (the "ICFA"), common law fraud, common law fraudulent concealment, and unjust enrichment for Defendants' failure to disclose claims of sexual abuse made against Rick Butler regarding conduct that allegedly took place in the 1980s. Following 165 numbered paragraphs of so-called "factual" allegations spanning a time period from 1981 to 2017, it is not until page 49 of the 72-page Complaint that Plaintiff first pleads facts specific to Plaintiff. The factual allegations contained in the first 50 pages of the Complaint are almost all hearsay or hearsay within hearsay.

The Complaint contains inexcusably false accusations that are wholly unsupported by the factual allegations contained therein. For example, despite the fact that the Complaint does not include a single allegation of sexual misconduct taking place after 1990, the opening paragraph of the Complaint egregiously states, "Unfortunately, *for over three decades*, Rick has used his position of power to sexually abuse no fewer than six underage teenage girls, and likely many more." Further, the Complaint not only contains rambling narratives of which Plaintiff has no

---

[1] As they must under the applicable Federal Rules of Civil Procedure, Defendants assume, solely for purposes of its motion to dismiss Plaintiff's claims, that the allegations in Plaintiff's Complaint are true. Defendants reserve all rights and defenses with respect to Plaintiff's allegations in the event its motion to dismiss (or any portion thereof) is not granted.

personal knowledge, but includes cherry-picked excerpts from letters, transcripts, and court documents from the 1980s and 1990s, often void of any identifying information, that do nothing to advance or support Plaintiff's claims.

The crux of the case is Plaintiff's claim that, had she known "the full truth and depth of Butler's sexual, emotional, and physical abuse," she would not have allowed her daughters to attend Sports Performance and she would not have paid fees to Defendants. While the Complaint suffers from many deficiencies that require dismissal, its fundamental flaw is that Plaintiff simply cannot connect the alleged misconduct of Rick Butler from the 1980s to her dealings with Defendants between the years 2012-2017. No reasonable person expects a business to affirmatively disclose past allegations made against its employees before entering into a contract for services, yet that is precisely the injunctive relief Plaintiff requests.

Plaintiff cannot plausibly claim that she was damaged by Defendants omitting allegations of sexual abuse from the 1980s against Rick Butler from her 2012-2017 contracts with Defendants for her daughters' volleyball training. Plaintiff received the benefit of the bargain. She received the training she paid for, her daughter received a scholarship, and she admits to entering into multiple, successive contracts with Defendants. If the Defendants' statements regarding safety and quality of their program were false, Plaintiff surely would not have been a repeat customer over the course of five years. In the absence of any plausible claim of deception or damages caused by Defendants' statements, Plaintiff's Complaint must be dismissed with prejudice.

## STATEMENT OF FACTS

Plaintiff Laura Mullen is the parent of two daughters who played club volleyball. Compl. ¶ 166. Laura registered her oldest daughter for Club Fusion, a local competitor of GLV, but she and her daughter were not happy with the training and began looking elsewhere. *Id.* Based on

positive reviews Laura heard about the clinics at GLV, Laura entered into several contracts with

GLV for her daughter to attend multiple clinics with Coach Erik Vogt in July 2012. Compl. ¶ 167.

Vogt encouraged Laura to let her daughter join Sports Performance, telling her that the club had

the best coaches and training programs. *Id.* Based on the representations by Vogt, representations

from Defendants' website, as well as an email exchange with Rick Butler in August 2012 in which

he represented how much personalized and focused individual training her daughter would receive,

Laura's daughter joined Sports Performance in October 2012. Compl. ¶ 168.

Laura's daughter played at GLV for two years before briefly returning to Club Fusion in

2014, and then came back to GLV her junior year. Compl. ¶ 169. However, as a result of Butler's

coaching techniques, Laura pulled her daughters from the program in June of 2017. Compl. ¶ 171,

175. Also in June of 2017, Laura found links on the internet that lead her to substantial details of

the allegations of sexual abuse from the 1980s that were publicly made against Rick Butler in 1995

by former players. Compl. ¶ 169. Plaintiff claims that, had she known "the full truth and depth of

Butler's sexual, emotional, and physical abuse," she would not have allowed her daughters to

attend Sports Performance and she would not have paid fees to Defendants. Compl. ¶ 176.

## ARGUMENT

## I. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiff has failed to state a claim with respect to each cause of action set forth in Count I

– Count VI of the Complaint. Under Fed. R. Civ. P. 12(b)(6), a complaint that fails to plead facts

sufficient to "state a claim to relief that is plausible on its face" should be dismissed. *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

As the Supreme Court has often noted, "[a] complaint should be dismissed with prejudice under

section 2–615 only if it is clearly apparent that no set of facts can be proven that will entitle the

plaintiff to recover." *Cowper v. Nyberg*, 2015 IL 117811, ¶ 22 (citing *Illinois Graphics Co. v. Nickum*, 159 Ill.2d 469, 488 (1994)). Further, the Complaint contains factual admissions clearly showing that no set of facts can be proven that will entitle the plaintiff to recover, thereby justifying dismissal of the Complaint with prejudice.

## II.   LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A district court's analysis under Rule 12(b)(6) "rests on the complaint, and the court construes it in the light most favorable to the plaintiffs, accepting as true all well-pleaded facts alleged and drawing all permissible inferences in their favor." *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014).

Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "The plaintiff must include 'enough details about the subject-matter of the case to present a story that holds together.'" *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826–27 (7th Cir. 2014). A plaintiff's pleading burden "should be commensurate with the amount of information available" to him. *Olson v. Champaign Cnty.*, 784 F.3d 1093, 1100 (7th Cir. 2015).

Under Rule 9(b), a party pleading fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Moreover, in pleading fraud in federal court, Rule 9(b)

4

imposes a higher pleading standard than that required under Rule 8(a)(2). *See Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Specifically, Rule 9(b) requires a pleading to state with particularity, "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.*

## III.   PLAINTIFF'S FACTUAL ADMISSIONS PRECLUDE RECOVERY UNDER ANY THEORY SOUNDING IN FRAUD

Plaintiff's confusing, redundant, and seemingly interminable Complaint violates the letter and the spirit of Rule 8(a) and Rule 9(b). *See Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771 (7th Cir. 1994). Rather, Plaintiff seems to have confused the two Rules, as her Complaint is conspicuously lacking in particularity as to the factual circumstances giving rise to her fraud claims. However, Plaintiff managed to plead nearly 50 pages of slanderous, disputed, and unsubstantiated allegations wholly "on information and belief" while nevertheless representing them as "the true state of the facts" despite the Complaint containing factual allegations to the contrary.

Plaintiff's Complaint is plagued with deficiencies justifying dismissal in full for failure to meet the heightened pleading requirements of Rule 9(b). However, the factual allegations contained in the Complaint make it clear that Plaintiff's claims are flawed far beyond its failure to meet pleading requirements, and dismissal with prejudice is warranted. *See Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994) ("[I]f a plaintiff does plead particulars, and they show that he has no claim, then he is out of luck—he has pleaded himself out of court."). For example, while Plaintiff has not alleged with particularity how the alleged deception proximately caused her injury, it is Plaintiff's admission that she registered her daughter at GLV before ever seeing the

5

allegedly deceptive statements that expressly negates an essential element of the claim and supports dismissal with prejudice. *Id.*

Plaintiff's own characterization of her principal claim giving rise to this action contains significant variances, one of which likely implicates a condition to her recovery while the other does not. The Complaint states, "[h]ad Plaintiff known the full truth and depth of Butler's sexual, emotional, and physical abuse, she would not have allowed her daughters to attend Sports Performance and she would not have paid fees to Defendants." Compl. ¶ 176. On the other hand, the Plaintiff also states, "[h]ad she and members of the putative Class known that a child sexual predator would coach their teenage daughters, they never would have given money to Defendants and never would have sent their girls to Sports Performance." Compl. ¶ 4. Based on Plaintiff's inconsistent description of a critical allegation in her Complaint, it remains unclear whether Plaintiff is alleging that Rick Butler actually coaching her (and the putative class's) children is a condition of the right to recover fees paid to Defendant GLV.

The majority of Plaintiff's claims are rooted in fraud, and it is allegations of fraud to which Rule 9(b) applies. *See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). Plaintiff falls short of this standard in nearly every respect. Notably, while Plaintiff appears to have no problem providing an abundance of detail concerning allegations of which she has no personal knowledge, when it comes to her own experiences, the Complaint is remarkably devoid of the factual support required of Rule 9(b).

While the elements of each claim sounding in fraud are not identical, the elements of fraudulent misrepresentation largely overlap with those of a fraudulent concealment claim, a deceptive practices claim under the ICFA, and a deceptive practices claim under the IPFSA. *See, e.g., Newman v. Metropolitan Life Insurance Company*, 885 F.3d 992, 1003 (7th Cir. 2018). As

6

the overlapping elements do not require additional discussion, in the interests of judicial economy, Defendants will incorporate those arguments that overlap by reference only.

### A. Plaintiff Has Failed to Plead a Plausible Claim to Relief for Common Law Fraudulent Misrepresentation

To state a claim for fraudulent misrepresentation under Illinois law, a plaintiff must allege the following: (1) the representation was a statement of material fact, rather than a mere promise or opinion; (2) the statement was false; (3) the person making the statement knew or believed that the representation was false; (4) the person to whom the representation was made reasonably relied on the truth of the statement; (5) the statement was made for the purpose of causing the other party affirmatively to act; and (6) the reliance by the person to whom the statement was made led to his injury. *Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd,*. 946 F.Supp. 1358, 1363 (ND. Ill. 1996).

#### 1. *The Statements Set Forth In Plaintiff's Complaint Are Not Deceptive Because They Are Merely Subjective Descriptions Related to Quality*

Plaintiff's Complaint includes a list of allegedly false statements of material fact that she claims "misrepresented and omitted material facts in their interactions with parents and players regarding the quality of the services provided through the GLV's volleyball club, camps, and clinics." Compl. ¶¶ 161, 231-32. However, Plaintiff gives no indication as to which statements, if any, she actually relied on. Moreover, the Complaint entirely fails to establish, with any particularity, "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff" as required by Rule 9(b). *See Bank of America*, 725 F.3d at 818. Further, Rule 9(b) requires Plaintiff to describe how each of the statements is misleading, which Plaintiff has entirely failed to plead. *Ringelestein v. Johnson & Johnson*, 2017 WL 2362630 at *2 (May 31, 2017).

The Illinois Supreme Court has addressed the types of statements Plaintiff includes in her Complaint regarding the quality of services, holding, as a matter of law, that statements describing a product as 'quality' or as having 'high performance criteria' are the types of subjective characterizations that Illinois courts have repeatedly held to be puffing. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 174 (2005). In *Avery* court defined puffing as "the exaggerations reasonably to be expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined." *Id.* at 173. The allegedly false statements contained in Plaintiff's Complaint are precisely the types of subjective statements that Illinois courts have repeatedly characterized as mere puffing and, therefore, cannot form a basis of a fraud claim. *See id.* at 174 .To illustrate, Plaintiff's Complaint claims that Defendant GLV represented its volleyball services:

a) have the ***highest quality*** coaches. *See Evanston Hospital v. Crane,* 254 Ill.App.3d 435, 439 (1993) (holding that statement of "high-quality" is puffing and, hence, not actionable);

b) will "give you the ***finest*** coaching, teaching and training." *See Avery*, 216 Ill.2d at 174 (holding that puffing typically consists of "subjective descriptions relating to quality," such as "high quality," "perfect," and "best.");

c) have "***extremely qualified*** staff." *See id*; *Breckenridge v. Cambridge Homes, Inc.*, 246 Ill.App.3d 810, 823 (2d Dist. 1993)(finding statements to be inactionable puffing where plaintiffs were told their home would be built with "expert workmanship");

d) are a ***safe*** environment for underage girls to play volleyball. *Tylka v. Gerber Products Co.*, 1999 WL 495126 at *8 (N.D. Ill. 1999)(finding statements claiming to sell "most wholesome nutritious safe foods you can buy anywhere in the world" add little to the daily informational barrage to which consumers are exposed and cannot be the basis for liability);

e) are ***superior*** to their competitors. *See Avery*, 216 Ill.2d at 174 ("A general statement that one's products are best is not actionable as a misrepresentation of fact."); *August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616, 618 (7th Cir. 1995) ("A comparison to a mystery rival is just puffery; it is not falsifiable and therefore is not informative.");

f) have a "***commitment to Excellence***" *See City of Sterling Heights General Employees' Retirement System v. Hospira, Inc.,* 2013 WL 566805, at *25 (N.D. Ill. Feb. 13, 2013)(finding statements inactionable where defendant said it was "redoubling its commitment to quality");

g) include camps that are "***head and shoulders above*** the competition." *See Avery,* 216 Ill.2d at 174 ("Puffing denotes the exaggerations reasonably expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined.");

h) include camps that "provide ***elite, high quality*** training." *See id.* (holding that puffing typically consists of "subjective descriptions relating to quality," such as "high quality," "perfect," "Quality Replacement Part," and "best.").

i) will give its "***best effort*** to make sure that you feel that the experience was well worth the time, efforts and expense." *See Beraha v. Baxter Health Care Corp.,* 956 F.2d 1436, 1441 (7th Cir. 1992)(finding statement that defendant would "do [its] very best to make this project a success" was merely a vague expression of goodwill);

j) "will continue to ***strive for excellence.***" *See id; Pennington v. Travelex Currency Services,* 114 F.Supp.3d 697, 702 (N.D. Ill. 2015)(holding an offer of an "excellent rate" is promise belonging to the realm of puffery rather than misrepresentation); *See Hospira, Inc.,* 2013 WL 566805, at *25 (finding statements inactionable where defendant said it was "raising the bar internally").

k) have had "37 years of ***excellence.***" *See Anderson v. Abbott Laboratories,* 140 F.Supp.2d 894, 902-08 (N.D. Ill. 2001), *affirmed,* 269 F.3d 806 (7th Cir. 2001). (finding statements to be "incredibly vague puffery," where defendant stated he had a goal of reaching a "higher level of performance," and that the company was "building on the strength established over the decades"); *Breckenridge,* Ill.App.3d at 823 (home described as "perfect" is puffing and, hence, not actionable);

l) are "***specialists*** in training youth and junior volleyball athletes." *Breckenridge,* 246 Ill.App.3d at 823 (finding statements to be inactionable puffing where plaintiffs were told their home would be built with "expert workmanship");

m) "Only by having 'Elite Level' Master Coaches can any program guarantee that all athletes regardless of the team they are playing on will receive the same ***high quality*** instruction. Otherwise, each player is at the mercy of the level of their individual team coach who may or may not have the ability to teach at the highest levels and bring out the best in each athlete." *See Avery,* 216 Ill.2d at 174 ("Puffing denotes the exaggerations reasonably expected of a seller as to the degree of ***quality of his or her product,*** the truth or falsity of which cannot be precisely determined.")

n) "The ***#1 priority*** is the safety of the athletes, coaches, officials and our staff. We ask that you help us keep our facility a safe and a fun environment for all of us to enjoy the

9

game of volleyball." *See Evanston Hospital,* 254 Ill.App.3d at 439 (finding statement was an expression of opinion or puffing where hospital newsletter stated, "At our hospitals, your health is our major concern.").

Compl. ¶ ¶ 231-32. No phrase contained in Plaintiff's Complaint can establish a plausible claim of fraud. A plaintiff's pleading burden "should be commensurate with the amount of information available" to him. *Olson,* 784 F.3d at 1100. If Plaintiff cannot now point to a single material misstatement made by Defendants that raises a plausible claim of recovery, no amendment or amount of discovery will change that fact. As such, Plaintiff has failed to plead a crucial element of Fraudulent Misrepresentation, requiring Count IV of the Complaint to be dismissed.

### 2. *Plaintiff Has Not and Cannot Allege That Defendants Had Knowledge of the Falsity Because the Complaint Contains Numerous Facts Showing the Truth of the Statements*

To plead a claim of Fraudulent Misrepresentation, Plaintiff is required to show that the statement made by Defendant was known or believed to be untrue by the person making it, or made in culpable ignorance of its truth or falsity. *Parsons v. Winter*, 142 Ill.App.3d 354, 359 (1st Dist. 1986). As discussed in Part III(A)(1) above, which Defendants incorporate herein, the allegedly deceptive statements are immaterial because they fall within the exaggerations reasonably expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined. *See Avery,* 216 Ill.2d at 173. Therefore, Plaintiff cannot allege Defendants made the statements with knowledge of their falsity when the truth or falsity of the statements cannot be precisely determined. *See id.*

While all of allegedly deceptive statements constitute immaterial, subjective puffery, the most dubious "misstatement" listed is where Defendants claim the "#1 priority is the safety of the athletes, coaches, officials and [their] staff," which Plaintiff apparently found in the 2015 Great Lakes Center building rules. Compl. ¶ 232 fn. 29. To clarify, Plaintiff is attempting to use a

building rule, put in place by Defendants, asking the general public to help keep the facility safe, to support her claim that Defendants misled her about having a safe environment. Therefore, Plaintiff cannot possibly claim that the statement was made with knowledge of its falsity or with reckless indifference to its truth or falsity. Further, the Complaint contains allegations that demonstrate the truth of the allegedly deceptive statements, such as:

- "Sports Performance has won dozens of national titles and sent hundreds of students on to Division I schools with full scholarships." Compl. ¶ 14.

- "Sports Performance is considered a "feeder" club to many of the top volleyball programs in the country, including in the Mid-West." Compl. ¶ 15.

- "Rick Butler is a long-time youth volleyball coach based in Aurora, Illinois. Butler is the leader and creator of Sports Performance—a widely known training program that fields numerous youth volleyball teams for national competitions—and Great Lakes Volleyball Center, one of the sports facility centers that hosts Sports Performances programs and camps." Compl. ¶ 14.

- "Laura's daughter became heavily recruited after she was put onto Butler's team in November of 2016." Compl. ¶ 170.

Plaintiffs did not allege any facts that demonstrate the speaker of the alleged misrepresentations did not believe the statements they made. In light of the facts listed above that are contained in Plaintiff's Complaint and serve to establish the truth of the allegedly deceptive statements, Plaintiff cannot possibly claim to have demonstrated that Defendants believed the statements were false or made them with knowledge or reckless indifference of their falsity. As such, Plaintiff has failed to plead a crucial element of Fraudulent Misrepresentation, requiring Count IV of the Complaint to be dismissed.

### 3. *Plaintiff Was Not Justified In Relying on Subjective Statements of Program's General Safety As Fact and Was Further Not Justified Due To Her Failure to Conduct Any Reasonable Inquiry*

As part of its fraud claim, a plaintiff must show that its reliance on the misrepresentation was justified. *Adler v. William Blair & Co.*, 271 Ill.App.3d 117, 125 (1995). In other words, the

reliance must be reasonable. *Id.* "In determining whether reliance was justifiable, all of the facts which the plaintiff knew, as well as those facts the plaintiff could have learned through the exercise of ordinary prudence, are taken into account." *Id.* "[A] person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another." *D.S.A. Finance Corp. v. County of Cook*, 345 Ill.App.3d 554, 561 (2003).

Under Illinois law, justifiable reliance exists when it was "reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation." *InQuote Corp. v. Cole*, No. 99 C 6232, 2000 WL 1222211, at *3 (N.D. Ill. Aug. 24, 2000). Here, Plaintiff failed to plead any facts to show how the above-listed general, subjective statements, allegedly made by Defendants between 2012-2017 regarding the program's safety, quality of coaches, and superiority to its competitors, are at all related to the allegations from the 1980s, let alone how she was justified in believing that the statements constituted affirmative representations of fact concerning the allegations.

Further, Plaintiff failed to plead how she "could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection." *Trustees of AFTRA Health Fund v. Bondi*, 303 F.3d 765, 777 (7th Cir. 2002). Instead, the Complaint admits that the opposite is true. Plaintiff declares that she found links on the internet in June of 2017 that led her to "substantial details" of the allegations. Compl. ¶ 175. The details of the allegations were available on the internet long before Plaintiff's daughters played at GLV in 2012. Since 1995, the media has extensively covered the allegations of which Plaintiff claims to have been unaware. Courts may take judicial notice of public records, newspaper articles, and governmental documents not subject to reasonable dispute as to accuracy. *See Bogina v. Medline Indus., Inc.*, 11 C 05373, 2015 WL 1396190, at *3 n. 7 (N.D. Ill. Mar. 24, 2015) (citing *Ennenga*

12

*v. Starns*, 677 F.3d 766, 773–74 (7th Cir.2012)). Plaintiff had numerous sources available to her on the internet before first contracting with Defendants in 2012, and then even more after she left and returned in 2015. *See* Group Exhibit A, containing news articles published between 1995-2015 regarding the allegations against Rick Butler.

Plaintiff's Complaint entirely fails to plead facts showing that she could not have discovered the truth through a reasonable inquiry. Furthermore, Plaintiff cannot plead facts to show her reliance was reasonable due to the surplus of information available to her on the internet, particularly in light of Plaintiff's claim to have relied on statements she found on Defendants' website. Compl. ¶ 175. However, that Plaintiff expressly admits that the critical information was at her fingertips all along negates Plaintiff's claim of reasonable reliance, and, as it is an necessary element of Fraudulent Misrepresentation, Count IV of Plaintiff's Complaint should be dismissed with prejudice.

### 4. *Plaintiff Cannot Claim the Allegedly Deceptive Statements Proximately Caused Her Damages When She Admitted That She Incurred Alleged Damages Before Ever Being Exposed to Statements*

In the context of a fraud claim, cause-in-fact is "but for" cause. *Price v. Philip Morris*, Inc., 219 Ill.2d 182, 269 (2005). "That is, the relevant inquiry is whether the harm would have occurred absent the defendant's conduct." *Id.* Legal cause requires that the alleged injury be a foreseeable consequence of the alleged misrepresentation. *City of Chicago v. Michigan Beach Housing Co-op*, 297 Ill.App.3d 317, 326 (1st Dist. 1998).

The Complaint specifically admits that Plaintiff initially registered her daughter for several clinics at GLV based on "positive reviews of the clinics at GLV," and not based on any alleged statements or omissions of Defendants. Compl. ¶ 167. Plaintiff's admission shows that she incurred her "damages" of "fees paid to Defendants" based on the positive reviews of third parties

13

before she was ever exposed to the allegedly deceptive statements. Compl. ¶ 167. If the relevant inquiry is whether the harm would have occurred absent the defendant's conduct, the answer to that question is a resounding yes. *See Price*, 219 Ill.2d at 269.

Furthermore, to show that the Defendants' deceptive act was the proximate cause of Plaintiff's damages, all claims sounding in fraud require that Plaintiff be actually deceived by the defendant's statement or material omission. *Price*, 219 Ill.2d at 269. Plaintiff can state a valid claim of fraud only where premised upon statement made prior to their dates of purchase. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 502 (1996). Therefore, Plaintiff's alleged "damages" cannot be recovered, as she expressly admitted that she incurred such "damages" through no act of Defendants.

Moreover, Plaintiff cannot obtain relief based on her subsequent dealings with Defendants, because after her daughter participated in a clinic, she cannot plausibly allege that she was deceived regarding the safety and quality of Defendants' training. *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 155 (2002)(holding that those who "know the truth" do not have a valid ICFA claim). Plaintiff was made aware of the safety of the program, quality of coaching, and was even able to compare to Defendants' club to its competitors (Plaintiff admits to previously playing for Club Fusion prior to attending clinics at GLC) before encountering any statements made by Defendants. *Id.* Because she became aware of the truth or falsity of each and every allegedly deceptive statement when her daughter participated in her first clinic, Plaintiff cannot maintain a claim based on her subsequent contracts with Defendants. Since Plaintiff has failed to plead the element of proximate cause, which is required for all claims sounding in fraud, Count IV of her Complaint should be dismissed with prejudice.

14

**5. *Plaintiff Did Not Incur Actual Damages Because She Received the Benefit of the Bargain and Cannot Otherwise Allege the Existence of Tangible Economic Harm***

In *Sabo v. Wellpet, LLC*, the court noted that "conspicuously absent from the complaint are any straightforward assertions about the price of defendants' products; the price of comparable products...or any other measurable criteria for comparing the position plaintiff and the class would have been in absent the alleged fraud with the position they were in as a result of their reliance on defendant's...representation." 282 F.Supp.3d 1040, 1041-42 (N.D. Ill. 2017). "Such a comparison, however, is required to establish actual damages." *Id.* (citing *Frye v. L'Oreal USA, Inc.*, 583 F.Supp.2d 954, 957 (N.D. Ill. 2008)). The *Sabo* court stated that plaintiff's allegation that he would not have purchased the product at the price he paid is only part of the equation. *Id.* The court held that plaintiff was further required to show that he was placed in a worse financial position having bought defendants' products with allegedly deceptive labels than he would have been had he purchased alternate products. *Id.*

Damages for common law fraud and fraud under the ICFA are typically calculated using the benefit-of-the-bargain rule, where the plaintiff's recovery is limited to an amount needed to compensate for the loss occasioned by the fraud. *See Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). Under that rule, damages are determined by looking at the loss to the plaintiff, not the gain to the defendant. *Sabo,* 282 F.Supp.3d at 1041-42. Plaintiff is entitled to be placed in the same financial position she would have been absent the misrepresentation. *Id.* Plaintiff claims she was damaged in that she paid "annual enrollment fees and fees for other related services." Compl. ¶ 176. However, as discussed above in Part III(A)(4) regarding proximate cause, Plaintiff admitted she paid fees to Defendants before she was ever exposed to the alleged deception. Compl. ¶ 167. Actual damage cannot be the result of omissions and misrepresentations which are made after the

damage has already occurred. *Connick*, 174 Ill.2d 482. Therefore, Plaintiff has failed to plead the element of actual damages.

The admission that Plaintiff's daughter left GLV and then returned a year later further harms Plaintiff's claim of actual damages, because it indicates Plaintiff actually preferred GLV to its competitors. *Kim*, 598 F.3d at 365 (finding no actual damage where "plaintiffs agreed to pay a certain price…which they do not allege was defective or worth less than what they actually paid. Nor have the plaintiffs alleged that, but for [Defendant's] deception, they could have shopped around and obtained a better price in the marketplace").

That Plaintiff paid fees to Defendants in exchange for volleyball training does not support a claim of actual damages, because, absent allegations to the contrary, she received the full value of what she bargained for. *See id.* Nowhere in Plaintiff's Complaint does she state that she didn't receive the full benefit of her daughters being trained for multiple years by GLV, Inc. *Mulligan v. QVC, Inc.*, 382 Ill.App.3d 620, 629 (1st Dist. 2008)("If the plaintiff is not materially harmed by the defendant's conduct, however flagrant it may have been, there may be no recovery."). Further, the nature of the alleged material omissions are not of a kind that could impact the value of the training Plaintiff contracted for in a concrete, ascertainable way, particularly due to the admission that Plaintiff's daughter attended "several clinics" before Plaintiff was ever exposed to the allegedly deceptive statements. Compl. ¶ 167.

In order to plead actual damages, plaintiff must allege that she has been harmed in a concrete, ascertainable way. *Frye*, 583 F.Supp.2d at 957. Therefore, defendant's alleged deception must have affected plaintiff in a way that made her tangibly worse off. *Id.* "Theoretical harm is insufficient. Damages may not be predicated on mere speculation, hypothesis, conjecture or whim." *Price*, 219 Ill.2d at 275 (Karmeier, J., concurring). Absent any allegation and facts to show

16

how the alleged fraud caused Plaintiff a tangible, economic loss, Plaintiff has failed to plead any actual damages. Further, the nature of Plaintiff's claim prohibits her from ever being able to allege facts to show how she incurred concrete, actual damages. Therefore, Count IV of Plaintiff's Complaint should be dismissed with prejudice. *See Sabo,* 282 F.Supp.3d at 1043 (granting motion to dismiss with prejudice where complaint failed to raise the inference that plaintiff suffered an actual pecuniary loss "above the speculative level").

## B. Plaintiff Has Failed to Plead a Plausible Claim for Common Law Fraudulent Concealment

The heightened pleading standard of Rule 9(b) also applies to fraudulent concealment claims. *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 571 (7th Cir. 2012). To plead fraudulent concealment properly, in addition to meeting the elements of fraudulent misrepresentation, a plaintiff must allege that the defendant intentionally omitted or concealed a material fact that it was under a duty to disclose to the plaintiff. *Id.* Therefore, Defendants hereby incorporate all arguments concerning Plaintiff's Fraudulent Misrepresentation claim set forth above in Part III(A).

A duty to disclose may be based on a fiduciary relationship or a relationship of trust and confidence where the defendant is in a position of influence and superiority over plaintiff." *Wigod,* 673 F.3d at 571. A duty may also arise when a defendant tells a half-truth and then becomes obligated to tell the full truth. *Crichton v. Golden Rule Ins. Co.,* 576 F.3d 392, 398 (7th Cir. 2009). In *Wigod,* the Seventh Circuit examined a number of Illinois cases and concluded that "the defendant accused of fraudulent concealment must exercise overwhelming influence over the plaintiff ... and asymmetric information alone does not show the degree of dominance needed to establish a special trust relationship." *Id.* at 572–73.

The Complaint at issue contains conclusory allegations proclaiming the existence of an affirmative duty owed by Defendants to Plaintiff, however, the Complaint is devoid of any facts

to support such a claim. *See Connick*, 174 Ill.2d at 500 (where the complaint merely alleged that plaintiffs had made a purchase from defendant and did not allege that plaintiffs were in a confidential or fiduciary relationship with defendants or that defendants were in a position of superiority over them, plaintiffs' complaint did not allege a duty to disclose material facts which could give rise to a claim for common law fraudulent concealment). The relationship between the Parties is nowhere near the type of special, fiduciary relationship required to impose a duty to disclose. *See Cohen v. American Sec. Ins. Co.*, 735 F.3d 601, 614 (7th Cir. 2013).

Moreover, the statements set forth in the Complaint are not the type of half-truths triggering an obligation to disclose the allegations, particularly because the Complaint contains numerous admissions that tend to show the truth of Defendant's alleged statements. *See supra*, Part III(A)(1)-(2) and incorporated herein. None of the statements raise factual half-truths that can reasonably be associated with the nearly thirty-year-old allegations made against Rick Butler. Moreover, Plaintiff has not alleged, that a reasonable person would characterize allegations of sexual abuse from the 1980s made against one coach "critical qualifying information" pertaining to general statements about the success of Defendants' volleyball club, overall quality of their coaches, and the general safety of all athletes who enter the building. *Universal Health Services, Inc. v. U.S.*, 136 S.Ct. 1989, 2000 (2016)(defining half-truths as "representations that state the truth only so far as it goes, while omitting critical qualifying information").

Further, the existence of numerous, highly publicized media reports concerning the allegations refutes the intent element of fraudulent concealment. *See* Group Exhibit A. "In order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent—a scheme or device. *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992). There have been no facts that support the conclusory allegation that Defendants intended that

Plaintiff rely on the omission as a consequence of fact, and the mere fact that Defendants did not affirmatively disclose the information does not show how the Defendants intended Plaintiff to induce reliance. *Pirelli,* 631 F.3d 436 (Rule 9(b) requires Plaintiff to describe the 'who, what, when, where, and how' of the fraud).

Similarly, Plaintiff's claim that a "coordinated, systematic concealment" prohibited Plaintiff from learning of the allegations is baseless in light of the high publicity of the allegations and the lack of specificity contained in the allegedly deceptive statements contained in the Complaint. Plaintiff cannot reasonably state that the claims were systematically concealed in such a way that she could not access the information herself, while, at the same time, pointing to public forums such as social media as proof of her attempts to "conceal" the information. Compl. ¶ 151. Evidence of a scheme would include "a pattern of fraudulent statements, or one particularly egregious fraudulent statement." *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 136 (7th Cir. 2011). The Complaint lists various statements that cannot be reasonably construed as attempts to conceal the allegations from Plaintiff or anyone else. Compl. ¶ 151. As the Complaint contains numerous deficiencies that prohibit Plaintiff's relief for Fraudulent Concealment, Count V of the Complaint should be dismissed with prejudice.

### C. Plaintiff Has Failed to Plead a Plausible Claim for Deceptive Practices Under the Illinois Physical Fitness Services Act

Section 10(a) of the Fitness Act prohibits unfair or deceptive acts and practices. 815 ILCS 645/10(a) (West 2004). Section 10(b) of the Fitness Act provides: "(b) Any contract for physical fitness services entered into in reliance upon any false, fraudulent, or misleading information, representation, notice, or advertisement of the physical fitness center or any of its employees or agents shall be void and unenforceable." 815 ILCS 645/10(b). "Any customer injured by a violation of this Act may bring an action for the recovery of damages." 815 ILCS 645/11.

19

A claim that is premised upon a course of fraudulent conduct can implicate Rule 9(b)'s heightened pleading requirements. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). While case law on this cause of action is sparse, Rule 9(b) requires Plaintiff to describe the 'who, what, when, where, and how' of any claim sounding in fraud. *Pirelli,* 631 F.3d 441-42. As such, Defendants hereby incorporate the arguments set forth in Part III(A) regarding Fraudulent Misrepresentation. Further, while the statute does not address the omission of information, to the extent that this Court decides omissions are covered by the Act, Defendants further incorporate their arguments set forth in Part III(B) regarding Fraudulent Concealment. As the Complaint contains numerous deficiencies that prohibit Plaintiff's relief for Deceptive Practices under the Illinois Physical Fitness Services Act, Count I of the Complaint should be dismissed with prejudice.

### D.  Plaintiff Has Failed to Plead a Plausible Claim for Deceptive Practices Under the Illinois Consumer Fraud and Deceptive Business Practices Act

To allege a private cause of action under section 10a(a) of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 1994)), a plaintiff must plead: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception. *See Oliveira*, 201 Ill.2d at 149. To show that the defendant's deceptive act was the proximate cause of the plaintiff's damages, the ICFA requires the Plaintiff allege actual deception by a defendant's statement or material omission. *See id.* at 152. The materiality, proximate cause, and actual damage requirements of common law fraud are similarly required in deceptive practices claims for misrepresentation and omission claims under the ICFA. *See Avery*, 216 Ill.2d at 201-02. Therefore, Defendants incorporate the arguments set forth above in Parts III(A)(1),(4)-(5) and Part III(B).

An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud. 815 ILCS 505/2 (West 1994); *Mackinac v. Arcadia National Life Insurance Co.*, 271 Ill.App.3d 138, 141 (1st Dist. 1995). "The test for materiality is an objective one-whether a reasonable person could be expected to rely on the information." *Oshana v. The Coca-Cola Co.*, No. 04 C 3596, 2005 WL 1661999 at *8, 9 (N.D. Ill. July 13, 2005). Therefore, Plaintiff's contention that she subjectively would have expected to rely upon the information is not conclusive of whether a reasonable person would consider the omitted fact to be essential to the transaction between the Parties. In light of the foregoing arguments, the omissions at issue are not of a kind that a party would reasonably expect to rely upon when deciding on a volleyball program. As the Complaint contains numerous deficiencies that prohibit Plaintiff's relief for Deceptive Practices under the Illinois Consumer Fraud and Deceptive Business Practices Act, Count III of the Complaint should be dismissed with prejudice.

Lastly, to be eligible for injunctive relief under the Deceptive Practices Act, a plaintiff must show that the defendant's conduct will likely cause it to suffer damages in the future. *Tarin v. Pellonari*, 253 Ill.App.3d 542, 553 (1st Dist. 1993). Because Plaintiff is now aware of the allegations and her claim is predicated upon a contention that, in light of the information, she will not pay Defendants for services, Plaintiff has not and cannot allege that she is likely to suffer damages from the Defendants' conduct in the future. As such, her request for injunctive relief is improper and should be dismissed.

## IV. THE COMPLAINT IS INSUFFICIENT UNDER RULE 8(a)(2) AND CONTAINS FACTUAL ADMISSIONS THAT PRECLUDE RECOVERY UNDER EVERY THEORY SET FORTH THEREIN

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

21

requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do...." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Moreover, the Seventh Circuit has consistently held that a plaintiff can plead herself out of court by alleging facts, which show that she has no claim, even though she was not required to allege those facts. *Soo Line R. Co. vs. St. Louis Southwestern Ry. Co.,* 125 F.3d 481, 482 (7th Cir. 1997).

### A. Plaintiff Has Failed to Plead a Plausible Claim to Relief For an Alleged Violation of Contract Provisions Pursuant to the Illinois Physical Fitness Services Act

Plaintiff's Second Cause of Action is premised on alleged violations of the Illinois Physical Fitness Services Act, however, Plaintiff does not come close to alleging facts to show plausible right to relief under the cause of action. The single allegation made against Defendants in Plaintiff's Second Cause of Action states, "On information and belief, "Defendant GLV violated the following provisions of the IPFSA: (a) 815 ILCS 645/4; and (b) 815 ILCS 645/6." Compl. ¶ 199. These provisions, attached as Exhibit B in full, govern numerous general contract requirements, for example, 815 ILCS 645/4 requires contracts for physical fitness services to be in writing, and 815 ILCS 645/6 governs cancellation and refund terms to be included in the contract.

In order to recover damages under the IPFSA, Plaintiff cannot simply claim a violation of the Act took place. She must also allege that she suffered actual damages that were proximately caused by Defendant's alleged violation of the Act. 815 ILCS 645/11 ("A customer injured by a violation of the IPFSA may bring an action to recover damages, which may be entered in for three times the amount of actual damages, plus costs and reasonable attorneys' fees."). Under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiff has not and cannot state a plausible claim

that she suffered actual damages that were proximately caused by Defendant's alleged violations of the provisions listed above.

Plaintiff neither attaches a contract to her Complaint, nor does she make even a single factual allegation that could enlighten Defendants as to the factual basis of their allegedly illegal conduct. The primary purpose of Rule 8 is to give defendants fair notice of the claims against them and the grounds supporting the claims." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013)(citing *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011)). Further, that Plaintiff pleads the entire cause of action on information and belief and with zero factual allegations raises the question of whether Plaintiff has any factual basis for her claim at all. As such, the serious pleading deficiencies that plague Count II of Plaintiff's Complaint require dismissal for failure to plead a claim upon which relief could be granted.

### B. Plaintiff Has Failed to Plead a Plausible Claim to Relief For an Alleged Violation of Unfair Practices Under the Illinois Consumer Fraud and Deceptive Business Practices Act

Claims under ICFA as to unfair conduct are not subject to the heightened pleading standard and instead require conformance to Rule 8 standards. *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). Along with the elements of an ICFA claim for deceptive practices, as discussed in Part III(D)(incorporating Parts III(A)(1),(4)-(5) and Part III(B)) above and incorporating all arguments herein, courts consider the following factors when determining if a practice is unfair under the ICFA: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Siegel v. Shell Oil Co.*, 656 F.Supp.2d 825, 833 (N.D. Ill. 2009). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the

23

criteria or because to a lesser extent it meets all three." *Rickher v. Home Depot*, 535 F.3d at 661, 665 (7th Cir. 2008). As with deceptive practice claims, proximate cause is an element of an unfair practice claim under the Act. *See Avery*, 216 Ill.2d at 200.

In order to succeed on an unfair practices claim pursuant to the ICFA, a defendant's conduct must violate public policy, be so oppressive as to leave the consumer with little alternative except to submit to it, and injure the consumer. *See Galvan v. Northwestern Memorial Hosp.*, 382 Ill.App.3d 259, 265 (1st Dist. 2008). Here, Plaintiff admits that her "daughter played at GLV for two years before briefly returning to Club Fusion in 2014, and then came back to GLV her junior year," which undermines any notion that Defendants' conduct was so oppressive as to leave Plaintiff with little alternative except to submit to it. *Siegel*, 656 F.Supp.2d at 833 ("[Plaintiff's] own testimony that he could-and did-purchase gasoline from non-defendants undermines his claim that he 'had no meaningful opportunity to avoid paying the higher retail price,' and thus, whether or not a class member could have avoided the defendants' conduct is an individualized question of fact."); *see Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 420 (2002)(oppression not proved because plaintiffs could have "gone elsewhere" to lease a car and avoid defendant's penalty provisions).

Moreover, Plaintiff stated that she initially registered her daughter up for several clinics at GLV based on "positive reviews of the clinics at GLV," which further negates her claim that any injuries incurred were proximately caused by Defendants' unfair conduct. Compl. ¶ 167; *Siegel*, 656 F.Supp.2d at 833 (finding no proximate cause where plaintiff admitted that numerous factors influenced his purchase decision, which undermined any notion that Defendants' conduct caused him to purchase Defendants' product in the first instance). "Illinois courts have declined to find an ICFA violation in the total absence of the type of oppressiveness and lack of meaningful choice

necessary to establish unfairness." *Wendorf v. Landers*, 755 F.Supp.2d 972, 978 (N.D. Ill. 2010). As the Complaint contains numerous deficiencies that prohibit Plaintiff's relief for Deceptive Practices under the Illinois Consumer Fraud and Deceptive Business Practices Act, Count III of the Complaint should be dismissed with prejudice.

### C. Plaintiff Has Failed to Plead a Plausible Claim to Relief For an Alleged Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act For a "Knowing" Violation of Illinois Physical Fitness Services Act

The Consumer Fraud Act and the Fitness Act are interrelated in that "[a]ny person who knowingly violates the Physical Fitness Services Act commits an unlawful practice within the meaning of [the Consumer Fraud] Act." 815 ILCS 505/2Z (West 2004). A violation of the PFSA does not constitute a violation of the ICFA unless the PFSA violation was committed knowingly, meaning with the intent to disregard the law.

The court in *Wendorf* stated, "Although case law is sparse, it appears that violation of the PFSA does not constitute a violation of the ICFA unless the PFSA violation was committed knowingly, meaning with the intent to disregard the law." 755 F.Supp.2d at 978. Here, Plaintiff does not allege that Defendants intentionally violated the IPFSA, and there are no allegations from which this can be inferred. For these reasons, plaintiffs fail to state a claim that defendant violated section 2Z of the ICFA. *See Kim v. Riscuity*, No. 06 C 1585, 2006 WL 2192121, at *4 (N.D. Ill. July 31, 2006)("Without a knowing violation of the PFSA, there is no violation of the ICFA.").

### D. Plaintiff Has Failed to Plead a Plausible Claim to Relief Under a Theory of Unjust Enrichment

A claim of unjust enrichment "is not a separate cause of action that, standing alone, will justify an action for recovery." *Martis v. Grinnell Mut. Reinsurance Co.*, 388 Ill.App.3d 1017, 1024 (3d Dist. 2009). While Plaintiff has incorporated all other causes of action into her Unjust Enrichment claim by reference, it appears that her unjust enrichment claim is predicated on her

fraud claims. Compl. ¶ 263. For the reasons set forth above in Part III and incorporated herein, Plaintiff's common law fraud and statutory fraud claims must be dismissed for failure to state a claim, therefore the unjust enrichment claim must be dismissed as well. *See Siegel*, 656 F.Supp.2d at 833. Moreover, to state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit ***to the plaintiff's detriment***, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *See HPI Health Care Services, Inc. v. Mt. Vernon Hosp.,* 131 Ill.2d 145, 160 (1989). However, Plaintiff does not allege that she experienced any sort of detriment.

It appears that Plaintiff may be asking this Court to award damages to Plaintiff and the putative Class, because Rick Butler and Cheryl Butler have unjustly retained a benefit based upon Rick Butler's allegedly "improper conduct detailed above toward minors under his care and control, including but not limited to sexual, emotional, psychosocial, and physical abuse" and on Cheryl Butler allegedly facilitating "the concealment of Defendant Rick Butler's sexual misconduct with teenage youth volleyball players, as well as orchestrated a campaign of intimidation and suppression of victims and those that speak out against Rick, all in the name of Defendant GLV." Compl. ¶ 260. It is wholly improper and illogical for Plaintiff to request disgorgement of her fees based upon the Defendants' alleged misconduct towards third parties. Further, Plaintiff has not alleged to have suffered any sort of detriment that would entitle her to relief under a claim for unjust enrichment, and, as such, the claim should be dismissed.

## V.     PUBLIC POLICY PROHIBITS THIS COURT FROM GRANTING PLAINTIFF INJUNCTIVE RELIEF

Throughout her Complaint, Plaintiff continuously states that the "true" state of facts regarding the alleged sexual abuse were misrepresented or omitted, and, therefore, requests that the Court order an injunction "requiring Defendant GLV to prevent Defendants Rick and Cheryl

26

Butler from having further involvement in any of its youth volleyball programs" and requiring Defendants to "fully disclose the true nature of Butler's sexual abuse of underage girls" as standard prerequisite to all business transactions. Compl. ¶ 226, 3.

The Complaint's focus is clearly mistaken, as the truth of the allegations is, in fact, immaterial to Plaintiff's argument. Plaintiff's claims rest on her assertion that, had she known of the allegations made against Rick before she registered her daughters for Defendants' volleyball program, she never would have done so. Throughout her Complaint, Plaintiff continuously states that the "true" nature of the alleged sexual abuse was misrepresented. However, Plaintiff's version of the truth is not based on the truth at all and, rather, is based on her subjective interpretation of what she allegedly learned on the internet regarding the allegations. Compl. ¶¶ 3, 5, 160.

Despite the numerous inconsistencies and admissions made in her Complaint, Plaintiff urges that the Court require Defendants to disclose her version of the truth. Compl. ¶¶ 5, 174, 190. Plaintiff's argument concerning the Bremner polygraph questions illustrates why Plaintiff's request for injunctive relief is inappropriate. In discussing the set of polygraph questions Rick Butler truthfully answered concerning Julie Bremner, Plaintiff claims that "almost all the questions have nothing to do with Butler's sexual contact with Julie when she was a minor. Only one question addresses the real issue:"

6. Did you ever rape, physically force or intimidate Julie Bremner into having sexual intercourse with you?

Answered (No)

Compl. ¶ 146. Note that, according to the polygraph, Rick Butler *truthfully* denied ever raping, physically forcing, or intimidating Julie Bremner into having sexual intercourse with him. Compl. ¶ 146. Plaintiff fully accepts the polygraph result, stating that Rick Butler's answer was, in fact, truthful because he subjectively "believes he was in a consensual relationship with Julie." Compl.

¶ 147. Rick's truthful statement completely contradicts numerous allegations in the Complaint, which Plaintiff contends are the "true" nature of the facts, including, for example, that "Butler forced himself on" Julie, that Julie "tried to resist," "pleaded with him to stop," and that "Butler raped Julie." Compl. ¶ 96-99.

Plaintiff's Complaint overlooks the discrepancy, stating, "the question 'did you have sex with Julie when she was 17 years old?' is simply not asked."[2] Compl. ¶ 96-99. Because Plaintiff argues that Rick's truthful denials of rape are due to his subjective belief that he was in a consensual relationship, Plaintiff has expressly admitted that no rape could have taken place but, nevertheless, egregiously argues that it did. Plaintiff then alleges that Defendants should affirmatively disclose the stories of the five women in the Complaint and requests injunctive relief "requiring Defendants to fully disclose to current and prospective players and parents the true nature of Butler's sexual abuse of underage girls." Compl. ¶ 5, 174. In light of the conflicting allegations contained in the Complaint and the subsequent prayer for relief, Plaintiff's request for injunctive relief should be denied.

Further, if Plaintiff's is truly arguing that this Court should require Rick Butler to disclose details of disputed allegations that he truthfully denies, then she is asking this Court to create an entirely new cause of action that would have devastating consequences. According to Plaintiff's logic, doctors should be required to inform their patients of every complaint or allegedly deficient procedure, regardless of whether a court of law found the allegations to be legitimate. While the truth of the allegations is not even at issue in this litigation, Plaintiff's Complaint nevertheless improperly requests this Court force Rick to admit to a crime he has fervently denied for nearly

---

[2] The legal age of consent in Illinois was 16 years old until 1988, therefore, statutory rape laws are inapplicable. *See* P.A. 85-651, § 1, eff. Jan. 1, 1988 (changing the legal age of consent in Illinois from 16 years old to 17 years old; *see also* Illinois Pattern Jury Instructions, Criminal, No. 11.59, (last visited April 17, 2018) http://www.illinoiscourts.gov/CircuitCourt/CriminalJuryInstructions/Criminal_Jury_Instructions.pdf.

three decades and prohibit Rick and Cheryl Butler from being involved in the business they own. As a practical matter, the injunctive relief is impossible to grant without conducting multiple trials on the merits of the underlying allegations. Doing so would be entirely unreasonable, since the objective truth of the allegations bears no consequence on Plaintiff's claim that she would not have allowed her daughters for play for Defendants based on her subjective belief that the allegations are true.

## VI. THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE IT IS CLEARLY APPARENT THAT NO SET OF FACTS CAN BE PROVEN THAT WILL ENTITLE THE PLAINTIFF TO RECOVER

In light of the absence of allegations identifying any allegedly fraudulent communication or omission, the Amended Complaint fails to plausibly establish a claim for fraud, but even if the complaint satisfied Rule 8's plausibility standard, it plainly falls well short of the heightened pleading standard required for fraud claims under Rule 9(b). At no point does Plaintiff state the "who, what, when, where, and how" of the alleged fraud. Rather, she points to general, subjective statements regarding the quality of the program, and even for those few statements mentioned, she fails to include any specific details identifying the alleged misrepresentations. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018)(stating that Plaintiff's "failure to cite a specific deceptive representation that caused her to pay for something she did not receive is particularly problematic in light of Rule 9(b)'s heightened standard").

It is well-settled that a statement incorporated by a plaintiff into her complaint is a binding judicial admission. *See Soo Line*, 125 F.3d at 482. Judicial admissions are formal concessions in pleading by party or its counsel that are binding upon the party making them. The Seventh Circuit Court of Appeals has consistently held that a plaintiff can plead herself out of court by alleging facts, which show that she has no claim, even though she was not required to allege those facts.

*Id.*. Further, when the representative plaintiff has not sufficiently pled her claim to withstand a motion to dismiss, the count is dismissed as to the entire class. *See, Oliveira*, 201 Ill.2d at 156–57.

As the Supreme Court has often noted, "a complaint should be dismissed with prejudice under section 2–615 only if it is clearly apparent that no set of facts can be proven that will entitle the plaintiff to recover." *Cowper*, 2015 IL 117811, ¶22. Thus, even where dismissal is appropriate under section 2–615, a plaintiff should be given leave to replead unless doing so would be futile. *Abazari v. Rosalind Franklin University of Medicine and Science*, No. 2–14–0952, 2015 IL App (2d) 140952 (June 29, 2015). If Plaintiff cannot now point to a single material misstatement or omission made by Defendants to meet the pleading requirements, no amendment or amount of discovery will change that fact. As such, the Complaint should be dismissed with prejudice.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court enter an Order dismissing Plaintiff's Complaint in its entirety with prejudice and granting any other relief that this Court deems just and proper.

Date: May 14, 2018

> Respectfully Submitted,
> GLV, INC., RICK BUTLER, and
> CHERYL BUTLER
>
> By: */s/ Danielle D'Ambrose*
> One of Their Attorneys

Danielle D'Ambrose
*Ddambrose@amwolawil.com*
ANGELINI & ORI, LLC
155 North Michigan Ave., Suite 400
Chicago, Illinois 60601
T: (312) 621-0000
F: (312) 621-0001

*Attorney for Defendants*