```
 1              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3

 4   LAURA MULLEN, et al.,              )  Docket No. 18 C 1465
                                        )
 5                      Plaintiffs,     )
                                        )
 6              vs.                     )
                                        )
 7   GLV, INC., et al.,                 )  Chicago, Illinois
                                        )  April 17, 2018
 8                      Defendants.     )  9:45 o'clock a.m.

 9
             TRANSCRIPT OF PROCEEDINGS - MOTION
10         BEFORE THE HONORABLE MATTHEW F. KENNELLY

11
     APPEARANCES:
12

13   For the Plaintiffs:    EDELSON PC
                            BY:  MR. JAY EDELSON
14                               MR. ALFRED KIRKLAND MURRAY, II
                                 MS. SYDNEY M. JANZEN
15                          350 North LaSalle Street, 14th Floor
                            Chicago, IL  60654
16                          (312) 589-6375

17
     For the Defendants:    ANGELINI & ORI, LLC
18                          BY:  MR. DONALD JOHN ANGELINI, JR.
                                 MS. DANIELLE C. D'AMBROSE
19                          155 North Michigan Avenue, Suite 400
                            Chicago, IL  60601
20                          (312) 621-0000

21

22

23
     Court Reporter:        MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
24                          Official Court Reporter
                            219 S. Dearborn Street, Suite 2102
25                          Chicago, Illinois  60604
                            (312) 435-5639
```

1    (The following proceedings were had in open court:)
2             THE CLERK:  Case No. 18 C 1465, Mullen v. GLV, Inc.
3             THE COURT:  Good morning.
4             MR. ANGELINI:  Good morning, your Honor.
5             MR. EDELSON:  Good morning, your Honor.  Jay Edelson
6    for the plaintiffs.
7             MR. MURRAY:  Alfred Murray for the plaintiffs.
8             MS. JANZEN:  Sidney Janson for the plaintiffs.
9             MR. ANGELINI:  Donald Angelini, A-n-g-e-l-i-n-i, and
10   Danielle D'Ambrose on behalf of all the defendants.
11            THE COURT:  The reason I mentioned in the order --
12   this just got reassigned from Judge Bucklo.  The reason I
13   mentioned the thing in the order about I'm not part of the
14   mandatory discovery whatever they call it is that it looked --
15   there was something that had been filed earlier in the case
16   that kind of suggested that a ruling had been made on the
17   assumption that that was going to be followed.  I wanted to
18   flag that for you so that you would know that, you know, maybe
19   there was something you needed to think about revising, but
20   I'd just leave it at that.
21            Anyway, so I looked at the complaint.  So do you have
22   any kind of a clue as to, ballpark, how big the potential
23   class is?  How many years back are you proposing to go?
24            MR. MURRAY:  Well, the two acts that we have filed
25   under, the fitness -- Illinois Fitness Services Act --

1     THE COURT:  Right.
2     MR. MURRAY:  -- as well as the consumer fraud act,
3  those contemplate three-year --
4     THE COURT:  Three-year statutes.
5     MR. MURRAY:  -- three-year statute of limitations.
6  However, the issue that has given rise to the
7  misrepresentation, false representation as we have alleged in
8  the complaint, really go back to the beginning of Mr. Butler's
9  coaching career.
10    THE COURT:  Yes, like 30 years or something like
11 that.
12    MR. MURRAY:  Correct.
13    THE COURT:  So the theory, if I'm getting this
14 right -- you will correct me if I'm wrong -- the theory, as I
15 understand it, is that the parents or the families would not
16 have put their kids in the program if they had known the truth
17 essentially?
18    MR. EDELSON:  Correct, your Honor.
19    THE COURT:  What does it cost to be part of this
20 thing?
21    MR. EDELSON:  A few thousand dollars a year.
22    THE COURT:  Okay.  So how many people are in it at
23 any given time?  Do you have a sense of that at all?  Does
24 anybody?
25    MR. ANGELINI:  A couple thousand.

1 THE COURT: So lots. All right. That gives me a
2 little bit --
3 MR. ANGELINI: That used the services in one form or
4 another, whether it's full time...
5 THE COURT: Okay. So what should I be doing in terms
6 of setting schedules and whatnot?
7 MR. EDELSON: Your Honor, so as your Honor suggested,
8 we filed an early motion seeking expedited discovery on two
9 issues. Really, one is the thing that's most on our mind
10 which is that we have fears that the defendant and the
11 defendants' attorneys are improperly communicating with
12 putative class members. Judge Bucklo denied our motion and
13 said we're likely to get that information through the pilot
14 program.
15 THE COURT: Yeah.
16 MR. EDELSON: We're happy to file a renewed motion,
17 but we'd like to get that before the Court, and then we'd also
18 like discovery to start. They have asked for a second
19 extension of time to file a responsive pleading. One of their
20 arguments, I believe, was under the discovery pilot program,
21 they had to file -- they're filing a motion to dismiss. They
22 told us that under the pilot program --
23 THE COURT: Still have to file an answer.
24 MR. EDELSON: Right, because they don't have to do
25 that, I wonder if they really need this much time.

1  THE COURT: Okay. So that motion hadn't gotten ruled
2 on by Judge Bucklo.
3  MR. EDELSON: They have.
4  MR. ANGELINI: Their motion was denied.
5  THE COURT: No, no, the motion for extension of time.
6  MR. ANGELINI: It was.
7  MS. D'AMBROSE: It was granted.
8  MR. ANGELINI: It was granted, your Honor.
9  THE COURT: Until May 14th.
10  MR. ANGELINI: May 14th.
11  THE COURT: Okay. And the motion that -- what are
12 you expecting to file then, is it a motion to dismiss?
13  MR. ANGELINI: Motion to dismiss, yes.
14  THE COURT: Can you give me any kind of a preview; I
15 am not asking for a binding admission of everything it's going
16 to say, but what it's likely to include.
17  MS. D'AMBROSE: It will be a combined motion to
18 strike and motion to dismiss. It will be essentially based on
19 not being able to meet the pleading requirements.
20  THE COURT: Is it a 9(b) motion or something like
21 that or what exactly?
22  MS. D'AMBROSE: It will be I believe 12(b) and 12(f).
23  THE COURT: Okay. So it's going to be inadequacy of
24 pleading. Are there other issue that are more substantive, is
25 there like statute of limitations issues or anything like that

1  that you're expecting to write?

2  MS. D'AMBROSE: Not necessarily statute of
3  limitations.

4  THE COURT: Okay. All right. And that's due on the
5  14th of May.

6  So my own practice is not to set briefing schedules
7  on motions to dismiss until I see them because there's a
8  significant percentage of them that at least in my own view
9  when I see them I say, I don't agree, the complaint does what
10  it needs to do, or I say to the plaintiff, you got a problem
11  here; rather than responding to this, you should go back and
12  try to shore up that part of your complaint or the whole
13  complaint or whatever.

14  So I don't have a problem with sticking with the May
15  14th date on that, but I am going to have you come in within
16  like a couple of days of that so I have a chance to eyeball
17  the motion.

18  So you have -- discovery hasn't -- is there some
19  reason why I shouldn't say discovery can proceed now?

20  MR. EDELSON: We --

21  THE COURT: Nobody is going to have to respond to any
22  discovery requests before May the 14th or the 16th or whenever
23  I have you come in.

24  MR. ANGELINI: The original discovery that was
25  requested was seeking --

1  THE COURT: I am not talking about anything
2  expedited. Mr. Edelson said we would like to be able to begin
3  discovery. Why shouldn't I just say discovery can begin?
4  MR. ANGELINI: If he wants to propound discovery in
5  the normal course, then we wouldn't have any objection.
6  THE COURT: Discovery can begin. We are onto that.
7  MS. D'AMBROSE: I would also say, too, one issue is
8  that the complaint as it stands, I think our motion to dismiss
9  may make it a little bit easier to narrow down the issues and
10 figure out what exactly is the problem. So I mean --
11 THE COURT: That's why I am going to look at it
12 really fast when I get the motion.
13 All right. In terms of the -- just in sort of an
14 overview sense, the stuff that you were looking to get
15 expedited was what, basically?
16 MR. EDELSON: We had --
17 THE COURT: I am not going to decide this today.
18 MR. EDELSON: Of course. So we had two requests, but
19 we're foregoing the other one which had to do with concerns
20 about transferring their assets, so forget about that. It was
21 just whether they were improperly communicating with class
22 members. We had a single interrogatory. It's our
23 understanding that one of the defendants uses false profiles
24 on social media sites, message boards, and disseminating false
25 information, and we believe that the attorneys also are

1  disseminating information to the putative class members.
2      THE COURT: I'm looking at your motion for expedited
3  discovery. Which attachment to the motion?
4      MS. JANZEN: It's the last exhibit.
5      MR. MURRAY: Exhibit 4, your Honor.
6      THE COURT: All right. I got to get through the
7  instruction. The instructions are 11 pages.
8      Okay. So the document request is the last one. It
9  just says, All documents referenced in responding to the
10 interrogatories. I should probably be looking at the previous
11 exhibit for the interrogatories. Nope. I'm missing
12 something.
13     MS. JANZEN: I think it's in the same exhibit. It's
14 just later after the document request.
15     THE COURT: There it is. There are four
16 interrogatories.
17     MR. EDELSON: As I --
18     THE COURT: It's really just one. Number one,
19 identify all non-privileged communications the defendant or
20 defendants' counsel have had with potential class members
21 since the filing of the action relating to the allegations,
22 blah, blah, blah?
23     MR. EDELSON: Correct. The other three we are not --
24     THE COURT: When you say "expedited," what were you
25 asking for? How quick of a response were you looking for?

```
 1                MR. EDELSON:  Within two weeks.
 2                THE COURT:  Okay.
 3                MR. ANGELINI:  Judge, I can say on the record nobody
 4    from my office or I have ever communicated with any family
 5    member.
 6                THE COURT:  I don't think you are the people they are
 7    worried about.
 8                MR. ANGELINI:  Any class member at all, no family
 9    member or anyone who has a child involved or participating.  I
10    have never talked to anybody.
11                THE COURT:  I don't think you're the person they are
12    worried about.
13                MR. ANGELINI:  Okay.
14                THE COURT:  So what you said a minute ago.
15                MR. ANGELINI:  He said defense lawyers are
16    communicating.
17                THE COURT:  Fair enough.  Fair point.
18                What you said a minute ago, Mr. Edelson, about people
19    using social media and whatnot, can you just give me a sense
20    of what your basis is for thinking that.
21                MR. EDELSON:  Cheryl Butler, one of the defendants
22    and the wife of Rick Butler, what we have been told is that
23    she uses -- part of our allegations is that she's engaged in
24    years of harassment online and she uses --
25                THE COURT:  I am talking about current.
```

1  MR. EDELSON: Yes, I understand. I apologize. So we
2  have been told that she uses fake names on a message board
3  called Volley Talk which is something that the volleyball
4  community and class members look at regularly. They have been
5  discussing this case.
6  THE COURT: Okay.
7  MR. EDELSON: But other things too. We believe she
8  has spoken directly to class members.
9  THE COURT: So Mr. Angelini, we are talking about
10 interrogatory number one. Tell me why I shouldn't say that
11 you have to respond to that or your clients have to respond to
12 that in two weeks, just interrogatory one.
13 MR. ANGELINI: I don't think it has anything to do
14 with the complaint at issue, Judge. I think what they're
15 saying is that we are interfering with class members or
16 potential class members. If they want -- if you want to enter
17 an order that prevents Cheryl Butler or anyone from
18 communicating on Volley Talk, we can enter that order right
19 now. If that's what they're seeking, you can enter an order
20 that states that she is no longer or any of the defendants are
21 no longer able to communicate with any of the potential class
22 members about this litigation and we wouldn't have any problem
23 with it.
24 THE COURT: Okay. Full stop. Anything else?
25 MR. ANGELINI: No.

THE COURT: Okay. Serve interrogatory one today. Respond -- the defendants have to answer it within 14 days. When I say answer, I mean answer; I don't mean object. It's perfectly clear on its face.

I am not going to do the document request right now. We are just talking about the interrogatory answer. If the answer is none, then it's none. Then we move on.

So what I'd like you to do is sit down and talk about and try to agree on a schedule for pretrial stuff. You include in it what you want to include in it, and I'd like to see you in about ten days or so, maybe more like two weeks for a status, and then you'll tell me what you've agreed on and haven't agreed on, and I will enter a schedule then.

Could you come in -- it's kind of a crowded day because it's between a bunch of spots where I have to be away. Could you come in at like 8:30 on Wednesday May the 2nd?

MR. EDELSON: Yes, your Honor.

MS. D'AMBROSE: Yes.

THE COURT: That's the status in chambers at 8:30. You don't have to file anything. Just come prepared to talk. Okay?

MR. EDELSON: Thank you, your Honor.

THE COURT: See you. Take care.

MR. ANGELINI: Thank you, Judge.

(Which were all the proceedings had in the above-entitled cause on the day and date aforesaid.)

1   I certify that the foregoing is a correct transcript from
2   the record of proceedings in the above-entitled matter.

3   Carolyn R. Cox                                    Date
    Official Court Reporter
4   Northern District of Illinois

5   /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR