**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

LAURA MULLEN, individually and on
behalf of all others similarly situated,

                *Plaintiff,*

v.

GLV, INC., d/b/a SPORTS
PERFORMANCE VOLLEYBALL CLUB
and GREAT LAKES CENTER, an Illinois
corporation, RICKY BUTLER, an individual,
and CHERYL BUTLER, an individual,

                *Defendants.*

Case No. 18-cv-1465

Honorable Matthew F. Kennelly

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
## MOTION AND MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION

Dated:  October 26, 2018

Danielle D'Ambrose
D'AMBROSE P.C.
500 North Michigan Avenue, Suite 600
Chicago, IL 60611
(312) 6396-4121
ARDC No. 6323782

Attorney for Defendants
*Rick Butler, Cheryl Butler, and*
*GLV, Inc. d/b/a/ Sports Performance Volleyball Club*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**................................................................................................iii

**INTRODUCTION**.........................................................................................................1

**PLAINTIFF'S CLAIMS AND CLASS ALLEGATIONS**.................................................4

**ANALYSIS**.................................................................................................................5

I.      **PLAINTIFF'S CLASS DEFINITION IS OVERBROAD AND VIOLATES THE STANDING REQUIREMENTS OF ARTICLE III**.............................................6

II.     **THE PROPOSED CLASS CANNOT BE CERTIFIED BECAUSE MULLEN IS NOT AN ADEQUATE OR TYPICAL CLASS REPRESENTATIVE AND THE CLASS IS NOT ASCERTAINABLE**.............................................................7

    A.    **The Proposed Class Cannot be Certified Because Mullen's Experience and Interests Are Not in Line With Those of the Proposed Class**.........................8

        1.    **There Is a Fundamental Conflict Between Mullen's Requested Relief and the Interests of the Proposed Class**.........................................8

        2.    **The Proposed Class Cannot be Ascertained and Mullen's Claims Do Not Share the Same Basic Characteristics as the Claims of Her Proposed Class**.........................................................................9

    B.    **Mullen is Subject to Unique Defenses Which Requires Denial of Certification**..............................................................................................12

        1.    **Mullen Signed a Waiver Releasing All Claims Against Defendants During the Pendency of This Litigation**.................................................12

        2.    **Mullen's Conflicting Claims and Factual Allegations Prove She Is Not Credible**................................................................................13

    C.    **The Misconduct of Plaintiff's Counsel Requires Denial of Class Certification**..............................................................................................16

III.    **THE PROPOSED CLASS CANNOT BE CERTIFIED BECAUSE MULLEN FAILS TO MEET COMMONALITY AND PREDOMINANCE STANDARDS FOR EVERY CAUSE OF ACTION**...............................................................18

    A.    **The Common Questions Proposed by Plaintiff Fail to Meet the Commonality Standard Set Forth in *Wal-Mart, Inc. v. Dukes***.........................18

i

  **B.**  <u>**Individualized Issues Control Any Common Questions**</u> ...............................20

    **1.**  **The Overlapping Elements of Plaintiffs Claims Present Individualized Questions Which Prohibit Class Certification for Every Cause of Action**........................................................................21

    **2.**  **Plaintiff's Claims Under the Illinois Physical Fitness Services Act Require Individualized Assessments Prohibiting Certification**...........23

    **3.**  **Plaintiff's Claims Under the Illinois Consumer Fraud and Business Practices Act Require Individualized Assessments Prohibiting Certification**.........................................................................24

**IV.** **A CLASS ACTION IS NOT THE SUPERIOR METHOD FOR ADJUDICATION BECAUSE THE PROPOSED CLASS IS NOT MANAGEABLE OR SUFFICIENTLY NUMEROUS**................................................25

<u>**CONCLUSION**</u>......................................................................................................27

# TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ......................................................................................18

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
    431 U.S. 395 (1977) ........................................................................................6

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982) ........................................................................................6

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ........................................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...............................................................................*passim*


**United States Court of Appeals Cases:**

*Allison v. Citgo Petroleum Corp.*,
    151 F.3d 402 (5th Cir. 1998) ........................................................................26

*Arreola v. Godinez*,
    546 F.3d 788 (7th Cir. 2008) ..........................................................................6

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) ........................................................................11

*J.H. Cohn & Co. v. American Appraisal Associates, Inc.*,
    628 F.2d 994 (7th Cir. 1980) ........................................................................12

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ..................................................................10, 21

*Messner v. Northshore Univ. HealthSys.*,
    669 F.3d 802 (7th Cir. 2012) ....................................................................5, 11

*Mintz v. Mathers Fund, Inc.*,
    463 F.2d 495 (7th Cir. 1972) ..........................................................................7

*Nagel v. ADM Investor Servs., Inc.*,
    217 F.3d 436 (7th Cir. 2000) ........................................................................21

*Pastor v. State Farm Mut. Auto. Ins. Co.*,
    487 F.3d 1042 (7th Cir. 2007) .......................................................25

*Randall v. Rolls-Royce Corp.*,
    637 F.3d 818 (7th Cir. 2011) ..........................................................8

*Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*,
    704 F.3d 489 (7th Cir. 2013) ........................................................16

*Robinson v. Sheriff of Cook Cty.*,
    167 F.3d 1155 (7th Cir. 1999) .........................................................8

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ........................................................21

*Szabo v. Bridgeport Machs., Inc.*,
    249 F.3d 672 (7th Cir. 2001) .............................................5, 18, 25

**United States District Court Cases:**

*Aliano v. Louisville Distilling Co., LLC*,
    115 F. Supp. 3d 921 (N.D. Ill. 2015) ...........................................19

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    302 F.R.D. 240 (N.D. Ill. 2014) ...................................................26

*Birnberg v. Milk Street Residential Assoc. L.P.*,
    No. 02 C 978, 02 C 3436, 2003 WL 21267103 (N.D. Ill. May 29, 2003) ..........22

*Clark v. Experian Info., Inc.*,
    233 F.R.D. 508 (N.D. Ill. 2005) ...................................................22

*Ellis v. Elgin Riverboat Resort*,
    217 F.R.D. 415 (N.D. Ill. 2003) ...................................................26

*Fields v. Maram*,
    No. 04 C 0174, 2004 WL 1879997 (N.D. Ill. Aug. 17, 2004) ......................6, 26

*In re Fluidmaster, Inc., Water Connector Components Products Liability Litigation*,
    No. 14-cv-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) ...........12, 18, 20, 21

*Fox v. Riverview Realty Partners*,
    No. 12 C 9350, 2014 WL 1613022 (N.D. Ill. Apr. 22, 2014) .......................10

*Jamison v. First Credit Services, Inc.*,
    290 F.R.D. 92 (N.D. Ill. 2013) .....................................................13

*Kaplan v. Pomerantz*,
    132 F.R.D. 504 (N.D. Ill. 1990) ...............................................................15

*In re McDonald's French Fries Litig.*,
    257 F.R.D. 669 (N.D. Ill. 2009) ...............................................................11

*Murray v. E\*Trade Fin. Corp.*,
    240 F.R.D. 392 (N.D. Ill. 2006) ..........................................................17, 25

*Oshana v. Coca-Cola Bottling Co.*,
    225 F.R.D. 575 (N.D. Ill. Jan.14, 2005) ...............................................8, 9, 11

*Streeter v. Sheriff of Cook Cty.*,
    256 F.R.D. 609 (N.D. Ill. 2009) ...............................................................16

*Village of Bedford Park v. Expedia, Inc.* (WA),
    309 F.R.D. 442 (N.D. Ill. 2015) .................................................................5

*Williams v. Balcor Pension Investors*,
    150 F.R.D. 109 (N.D. Ill. 1993) .........................................................12, 13, 22

**State Cases:**

*Galvan v. Northwestern Memorial Hosp.*,
    382 Ill.App.3d 259 (1st Dist. 2008) ...........................................................24

*JP Morgan Chase Bank, N.A. v. East-West Logistics, LLC*,
    9 N.E.3d 104 (Ill. App. Ct. 2014) .............................................................24

**Rules and Statutory Authorities:**

815 ILCS 505......................................................................................4, 8

815 ILCS 645.....................................................................................4, 23

Fed. R. Civ. P. 23 ............................................................................ *passim*

**Other Authority**

Christine Hauser, *Top Volleyball Coach Raped Teenage Athletes, Lawsuit Alleges*, The New
    York Times, March 2, 2018, https://www.nytimes.com/2018/03/02/sports/volleyball-
    coach-rape-rick-butler.html (last visited Oct. 25, 2018) .....................................1

Christian Red, *New Federal Class-Action Suit Against Rick Butler Seeks to Prevent Him From Interacting With Minors*, New York Daily News, March 1, 2018, http://www. nydailynews.com/sports/more-sports/new-suit-rick-butler-seeks-protect-minors-article-1.3850082 (last visited October 26, 2018) ...........................................................17

Shaun Assael, *Questions About Volleyball Coach's Past Prompt His Removal Amid Review*, ESPN, July 28, 2015, http://www.espn.com/espn/otl/story/_/id/13311608/aau-launches-review-policies-volleyball-coach-rick-butler-steps-aside (last visited April 16, 2018) .................................................................................................................2

## INTRODUCTION

Plaintiff filed her Complaint in February of this year, and this case instantly became one of the most publicized lawsuits in the country. The front-page headlines grabbed reflected Plaintiff's most egregious claims.[1] News stations swarmed the Great Lakes Center while players were running to their parents' vehicles. However, despite the headlines and the allegations, putative class members continued to bring their children to practice every day. Putative class members have continued to seek out Defendants' services, with over 5,800 registrations for camps, lessons, clinics, and programs in 2018 alone.

Plaintiff claims that she and the proposed class have been misled as to the quality and safety of GLV programs. (Compl. ¶¶ 161, 231-32.) Plaintiff claims that she never would have trusted her children with the Defendants had she known about the abuse allegations from the 1980s. (Compl. ¶ 4.) However, these claims are at odds with the actions of the putative class members. For example, in June of 2018, four months after the filing of Plaintiff's Complaint, approximately 800 mothers and fathers of girls between 13-18 years old, playing on 40 different Sports Performance teams, entrusted Defendants with the responsibility of caring for their daughters in Florida while competing in the AAU Girls' Junior National Volleyball Championships. It remains clear that Plaintiff's interests are at odds with those of the class, as Plaintiff pursues her claims as a disgruntled former customer while hundreds of putative class members continue to seek out GLV for volleyball instruction.

Laura Mullen is unable to avoid the wide-ranging problems inherent to her putative class action, which are glaringly obvious in every document she has submitted to this Court. She is an outlier. The Sports Performance Volleyball program is known for its intense training and

---

[1] *See, e.g.,* Christine Hauser, *Top Volleyball Coach Raped Teenage Athletes, Lawsuit Alleges*, The New York Times, March 2, 2018, https://www.nytimes.com/2018/03/02/sports/volleyball-coach-rape-rick-butler.html (last visited Oct. 25, 2018).

unparalleled success. Families sacrifice time, money, and energy so their children can compete at the highest level. The members of the program, the putative class, often refer to the program as "the Sports Performance family," which is evidenced hundreds of times in the attached *Exhibit A*. Many putative class members are former players from the 1980s and 1990s who have personal knowledge of the allegations contained in Plaintiff's Complaint, and many others have had their children in the program for nearly two decades.

Defendants have attached over 600 pages of communications from current and former players and parents showing their knowledge of the allegations, support of the Butlers, and commitment to the GLV program. Putative class members with personal knowledge of Mullen's claims have offered to testify *against Laura Mullen* in this matter. The relief Plaintiff seeks is contrary to the interests of her proposed class. Aware of the conflicts between Mullen's claims and those of the proposed class, Plaintiff's counsel nevertheless falsely declares to this Court that Mullen represents the interests of those class members.

Plaintiff counsel's *ad hominem* attacks upon Defendants is a product of systematic employment of falsehood. Defendants will isolate a few examples to expose Plaintiff's tactics unbecoming of the legal profession.

Despite overwhelming evidence to the contrary, Plaintiff's counsel continues to push the narrative that "[p]rior to these [2018] bans, Butler's scandalous past was covered up by GLV." (Pl.'s Mot. in Supp. of Class Certification, p. 1.) In Plaintiff's Complaint she refers to an ESPN article[2] from July 2015 which states that "[v]arious media reports over the past two years have detailed the allegations, and even a simple Google query of Butler's name and 'volleyball'

---

[2] Shaun Assael, Questions About Volleyball Coach's Past Prompt His Removal Amid Review, ESPN, July 28, 2015, http://www.espn.com/espn/otl/story/_/id/13311608/aau-launches-review-policies-volleyball-coach-rick-butler-steps-aside (last visited April 16, 2018).

produces the allegations associated with him." The article also discusses, *inter alia*, the 1995 USA Volleyball lifetime ban and findings, the 1995 DCFS investigation and findings, a 1996 Illinois appellate court decision, and Rick Butler's separation from the AAU.

Plaintiff's contradictory factual allegations intentionally distort reality. For example, Plaintiff cites to the 2018 USA Volleyball ("USAV") ban as the event which made the allegations public and, presumably, alerted parents to "Butler's scandalous past." (Pl.'s Mot. in Supp. of Class Certification, p. 1.) In reality, GLV had not sent a girls Sports Performance team to a USAV-sponsored event since 2007, therefore, the ban had absolutely no impact on the program. Furthermore, Rick Butler had repeatedly indicated to USAV that he was not planning to renew his membership, which lapsed in October of 2017. Despite that, USAV banned Mr. Butler for life on December 11, 2017 based on a claim that he violated a "protective order" when he issued a statement to the media denying claims that his accusers had already made public. *See* USAV media statement attached hereto as *Exhibit B.*

Plaintiff centers her arguments around a January 2018 ban, where USAV decided to hold a second hearing against Mr. Butler in Colorado to somehow ban him for life for a second time. *Id*. Rick Butler chose not to participate in the second hearing which was again related to the allegations from the 1980s, as it was clear the purpose was not to remove Mr. Butler from the organization, because that had already been accomplished, but rather to provide a forum to attack Mr. Butler and harm his reputation and business. Plaintiff nevertheless argues that the 2018 USAV ban somehow legitimizes her claims. USAV was aware that there had not been a single accusation made against Rick Butler as to misconduct occurring in the last 30 years. USA Volleyball's 2018

ban was nothing more than a spectacle produced by social media pressure spearheaded by the women referenced in Plaintiff's Complaint.[3]

For over two decades, the putative class members have witnessed repeated attacks on the Butlers from the women in Plaintiff's Complaint. For example, in 2015, when ESPN's Outside the Lines ran an episode dedicated to the allegations against Rick Butler, many putative class members organized a social media campaign supporting the Defendants. Similarly, after the AAU launched a review of Rick Butler's membership, the putative class members sent emails to other parents seeking letters supporting Defendants. *See Exhibit C*. With each attack, class members rally around the Butlers and the program and offer support in many different ways, each of which provides Defendants with a defense to the claims set forth by Plaintiff in this matter. *See Exhibit A*.

Plaintiff's class claims should not be certified. Plaintiff fails to meet the requirements for Class Certification under Rule 23(a), and, even if she could meet those requirements, individualized issues will overwhelm any questions common to the class. As such, Plaintiff's Motion in Support of Class Certification should be denied.

## PLAINTIFF'S CLAIMS AND CLASS ALLEGATIONS

Laura Mullen filed this action on behalf of a putative class, pursuant to the Illinois Physical Fitness Services Act, 815 ILCS 645/1 *et seq.* (the "IPFSA"), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (the "ICFA"), common law fraud, common law fraudulent concealment, and unjust enrichment for Defendants' failure to disclose claims of sexual abuse made against Rick Butler regarding conduct that allegedly took place in the 1980s. Mullen claims that Rick Butler, Cheryl Butler, and GLV have concealed Rick's alleged abuses by pressuring his victims to remain silent, intimidating and attempting to discredit them,

---

[3] Notably, Plaintiff references Cheryl's "attacks" on this social media campaign as factual support of her dubious argument that it is somehow possible to suppress information that has already been made public. (Compl. ¶¶ 62, 151.)

and by misrepresenting or failing to fully disclose his conduct. (Compl. ¶¶ 2, 3.) Mullen says that had she (and other class members) known of Rick's "true" history, they would not have paid GLV or sent their daughters to Sports Performance. (*Id*. ¶ 4.) Plaintiff alleges that during the class period, she paid substantial money to Defendants for volleyball instruction and claims she is entitled to a return of monies paid to Defendants in reliance on their failure to disclose those details. (*Id*. ¶ 264.)

<u>**ANALYSIS**</u>

Plaintiff must "affirmatively demonstrate compliance" with the requirements of Federal Rule of Civil Procedure 23. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Rule 23(a) requires the party seeking certification to demonstrate that the class is so numerous that joinder of all members is impracticable (numerosity); there are questions of law or fact common to the proposed class (commonality); the class representatives' claims are typical of the claims of the class (typicality); and the representative will fairly and adequately represent the interests of the class (adequacy)." *Village of Bedford Park v. Expedia, Inc.* (WA), 309 F.R.D. 442, 445 (N.D. Ill. 2015). Additionally, one of the three subsections of Rule 23(b) must be satisfied in order to maintain a class action. Fed.R.Civ.P. 23(b). Plaintiff seeks certification under Rule 23(b)(3). Rule 23(b)(3) permits class certification if "questions of law or fact common to class members predominate over any questions affecting only individual members" (predominance) and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority). *Id*. at 445-46.

Plaintiffs bear the burden of proving that they are entitled to class certification. *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 811 (7th Cir. 2012). Although class certification proceedings are not "a dress rehearsal for the trial on the merits," the Court does not presume that all well-pleaded allegations are true for purposes of deciding the certification question. *Szabo v.*

*Bridgeport Machs., Inc.*, 249 F.3d 672, 676–77 (7th Cir. 2001)). Rather, before the Court allows a case to proceed as a class action, it should make whatever factual and legal inquiries are necessary under Rule 23. *Id.* "Nonetheless, a class action 'may only be certified if the trial court is satisfied, after rigorous analysis, that the prerequisites of the rule governing class actions have been satisfied.'" *Fields v. Maram*, No. 04 C 0174, 2004 WL 1879997, at *2 (N.D. Ill. Aug. 17, 2004)(quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

## I.    PLAINTIFF'S CLASS DEFINITION IS OVERBROAD AND VIOLATES THE STANDING REQUIREMENTS OF ARTICLE III

The Seventh Circuit has found that it is best to confine the term "standing" to the Article III inquiry and thus to keep it separate from the plaintiff's entitlement to relief or her ability to satisfy the Rule 23 criteria. *Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008), To have standing to sue as a class representative, the plaintiff must possess the same interest and suffer the same injury as the class members. *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). Plaintiff proposes a class of all individuals who, between February 27, 2013, and January 20, 2018, paid money to Defendants for youth volleyball instruction provided by or through GLV in the State of Illinois. (Pl.'s Mot. in Supp. of Class Certification, p. 6.)

The only claims contained in Plaintiff's Complaint which fall within the class period are those related to her daughter's participation in the Sports Performance Girls High School Program. However, the proposed class definition allows Plaintiff to bring claims on behalf of parents who (1) paid money to GLV for a girls clinic which her daughters did not attend, (2) paid money to GLV for a girls camp which her daughters did not attend, (3) paid money to GLV for a lesson which her daughters did not attend, (4) paid money to GLV for their sons to participate in the boys' Sports Performance High School Program, (5) paid money to GLV for their sons to participate in the boys' Sports Performance Junior High Program, (6) paid money to GLV for their sons to

participate in a boys camp, (7) paid money to GLV for their sons to participate in a boys clinic, (8) paid money to GLV for their sons to participate in a boys lesson, (9) paid money to GLV for their children to attend a GLV program held in a location other than Great Lakes Center, (10) paid money to GLV for their children to participate in sessions of the Great Lakes Center Youth Academy which her daughter did not attend, (11) paid money to GLV for their children to participate in the Volley Tots program, or (12) paid money to GLV for their children to participate in the Volley Tikes program.

Each subgroup involves different coaches, different training, different facilities, different marketing, different durations, different contracts, and different registration procedures. These are not minor factual differences. Rather, the differences between the experiences of each subgroup are crucial to evaluating the claims Plaintiff pursues. Because Mullen has never participated in the enumerated programs, she cannot allege to have been injured by them. A plaintiff cannot predicate standing on injury which she does not share. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Therefore, certification should be denied.

## II. THE PROPOSED CLASS CANNOT BE CERTIFIED BECAUSE MULLEN IS NOT AN ADEQUATE OR TYPICAL CLASS REPRESENTATIVE AND THE CLASS IS NOT ASCERTAINABLE

A plaintiff who is unable to secure standing for herself is certainly not in a position to "fairly insure the adequate representation" of those alleged to be similarly situated. *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 499 (7th Cir. 1972). Rule 23(a)(4) requires a plaintiff to show that "the representative parties will fairly and adequately protect the interests of the class." To satisfy adequacy, Plaintiff must demonstrate: (1) the class representative lacks conflicting or antagonistic interests compared with the class; (2) the class representative is sufficiently interested in the outcome of the case to ensure vigorous advocacy; and (3) class counsel is experienced,

competent, qualified, and able to conduct the litigation vigorously. *See Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011). In some ways, typicality overlaps with adequacy. If a named plaintiff's "claim is atypical, he is not likely to be an adequate representative; his incentive to press issues important to the other members of the class will be impaired." *Robinson v. Sheriff of Cook Cty.*, 167 F.3d 1155, 1157 (7th Cir. 1999).

### A. The Proposed Class Cannot be Certified Because Mullen's Experience and Interests Are Not in Line With Those of the Proposed Class

Mullen's class definition has erroneously included hundreds of members to which her claims have no connection, which poses problems with adequacy, typicality, and ascertaining the class. These requirements are meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large. *See, e.g., Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)

#### 1. There Is a Fundamental Conflict Between Mullen's Requested Relief and the Interests of the Proposed Class

Plaintiff's requested relief is at odds with the interests of the putative class, because she is attempting to void the very contracts upon which they rely. (Compl. ¶ 200.) For example, since the filing of this action, putative class members have paid for approximately 5,000 Illinois summer camps, clinics and/or group lessons and, of the 800 players who registered for tryouts and programs for 2019, nearly 600 are returning customers.[4] Moreover, Plaintiff seeks an order, under 815 ILCS 505/10a, requiring Defendant GLV to prevent Defendants Rick and Cheryl Butler from having further involvement in any of its youth volleyball programs. (Compl. ¶ 226.) The documents

---

[4] While Plaintiff refers to Defendants' Supplemental Interrogatory Answers to illustrate the number of class members included in her proposed class, however, she neglects to inform this Court that the Defendants noted in their Answers the program's high retention rate of approximately 75-80% each year. In addition, Defendants noted that returning players make up approximately 30% of in-state campers each year and approximately 70% of players in clinics and group lessons participate in a GLV program. In addition are those players who have participated in multiple GLV camps, clinics, or lessons, but have not participated in a Sports Performance program..

attached as *Exhibit A* and *Exhibit C* clearly indicate that putative class members desire to continue having their children coached by Rick and Cheryl. Nevertheless, Plaintiff maintains that these putative class members need her protection from the Butlers and is attempting to ban them from coaching. That relief is not sought by the alleged class but only by a very few – non-numerous – outlying individuals, at most.

### 2. The Proposed Class Cannot be Ascertained and Mullen's Claims Do Not Share the Same Basic Characteristics as the Claims of Her Proposed Class

The Plaintiff carries the burden to show that the class is indeed identifiable as a class. *Oshana*, 472 F.3d at 514. Class definitions must be definite enough that the class can be ascertained. *Id*. "To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id*. Mullen's class definition has erroneously included hundreds of members to which her claims have no connection, many of which have not suffered an injury. The Seventh Circuit's analysis of *Oshana* is particularly relevant in this matter, where the court found:

> Membership in Oshana's proposed class required only the purchase of a fountain Diet Coke from March 12, 1999, forward. Such a class could include millions who were not deceived and thus have no grievance under the ICFA. Some people may have bought fountain Diet Coke *because* it contained saccharin, and some people may have bought fountain Diet Coke *even though* it had saccharin. Countless members of Oshana's putative class could not show any damage, let alone damage proximately caused by Coke's alleged deception.

*Id*.

The crux of Plaintiff's case is that, "[h]ad she and members of the putative Class known" that Rick Butler "would coach their teenage daughters, they never would have given money to Defendants and never would have sent their girls to Sports Performance." (Compl. ¶ 4.) Plaintiff's claim implies that her claim is specific to (1) class members with daughters (2) who were coached by Rick Butler (3) in the Sports Performance program. However, of the various groups which are

encompassed by Plaintiff's class definition, Rick Butler has absolutely no participation coaching players in the Great Lakes Center Youth Academy, the Sports Performance Boys Programs, the Volley Tot program, the Volley Tikes program, all group lessons, all individual lessons, and all camps other than the Sports Performance summer evaluation camp and the Coaches School where he provides instruction to other youth volleyball coaches, which may fall within the parameters of the class definition. The only group that has been directly coached by Rick Butler throughout the class period is the Sports Performance Girls 18 Elite team. Currently, Rick Butler serves as the "master coach" of the Sports Performance Girls High School program, where he is responsible for overseeing the training of approximately 24 teams that each have their own team coach.

Moreover, the alleged class contains members who have never been in the same building as Rick Butler, have never been coached by Rick Butler, and have never stepped inside the Great Lakes Center, such as those who paid GLV for off-site team camps, certain summer camps, or the sand volleyball program. Similarly, the Great Lakes Center Youth Academy, the Volley Tot program, and the Volley Tikes program all take place in a separate gym from the High School and Junior High programs. The factual circumstances in this matter distinguish this case from other cases such as *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 594 (9th Cir. 2012) and *Fox v. Riverview Realty Partners*, No. 12 C 9350, 2014 WL 1613022 (N.D. Ill. Apr. 22, 2014), where the defendants argued that the proposed class could theoretically include those who had not suffered any harm, but had given no indication how many unnamed individuals had not suffered harm. Here, the Defendants are not arguing that unharmed class members may hypothetically exist, but instead have been able to affirmatively set forth the various programs which are not in line Plaintiff's factual allegations.

The class contains both parents and players, as there are many players who contribute financially to their volleyball training, as well as aunts, uncles, grandparents, and more. The proposed class likely contains hundreds of class members who paid Defendants for volleyball instruction based on the recommendation of others, the Defendants' reputation of success in the volleyball community, the proximity of the club to their homes or schools, the parent's own experience playing in the program, etc. *See Exhibit A.* Further, Plaintiff has excluded employees of GLV, which creates yet another obstacle to identifying who falls within the class. The majority of summer camp coaches and coaches in the Great Lakes Center Youth Academy, the Volley Tots program, and the Volley Tikes program are current and former players or parents. For example, there were approximately 50 current and former players or parents who coached for GLV in 2018.

Plaintiff's proposed class definition and Motion fail to consider of these issues, and instead sweep in countless people who were not deceived. *See Oshana*, 472 F.3d at 514 (denying class certification where proposed class definition was "not sufficiently definite" because it included "millions who were not deceived and thus have no grievance under the ICFA"); *Messner*, 669 F.3d at 825 (distinguishing "between class members who were not harmed and those who could not have been harmed," and explaining that "a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant"); *In re McDonald's French Fries Litig.*, 257 F.R.D. 669, 673 (N.D. Ill. 2009)(denying certification for class that "is both overinclusive and too indefinite for certification").

Plaintiff has plead a five-year class in order to maximize potential exposure, however, her statutory claims are subject to a three-year limitations period. The Fourth Circuit has noted that even when the limitations period analysis has the mere potential for giving rise to individual inquiries, class certification is erroneous. As the court noted in *Broussard v. Meineke Discount*

11

*Muffler Shops, Inc.*, if a defendant's limitations period defense "depend[s] on facts peculiar to each plaintiff's case," such as what each plaintiff "knew about Meineke's operation . . . and when he knew it," then "class certification is erroneous." 155 F.3d 331, 342 (4th Cir. 1998). Many class members have been involved in the program for well over three (or five) years and were informed by GLV of the allegations prior to their involvement in the program or very shortly thereafter. *See Exhibit A*. Moreover, due to the public nature of the claims, hundreds of class members had actual knowledge of the claims when they contracted with GLV. Therefore, the claims of nearly every class member would turn on facts individual to each plaintiff's case. *See In re Fluidmaster, Inc., Water Connector Components Products Liability Litigation*, No. 14-cv-5696, 2017 WL 1196990 at *44 (N.D. Ill. Mar. 31, 2017).

### B.   Mullen is Subject to Unique Defenses Which Requires Denial of Certification

A class representative is neither typical nor adequate if she is subject to a unique defense that is likely to become a major focus of the litigation. *See Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 112 (N.D. Ill. 1993). "The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation." *J.H. Cohn & Co. v. American Appraisal Associates, Inc.*, 628 F.2d 994, 998-99 (7th Cir. 1980).

### 1.   Mullen Signed a Waiver Releasing All Claims Against Defendants During the Pendency of This Litigation

Despite Plaintiff's Complaint stating that, "[h]ad parents and players been aware of the true state of the facts regarding Butler's sexual abuse…they would not have participated in any GLV associated volleyball programs and would not have paid substantial money to Defendants" (Compl. ¶ 160) Mullen nevertheless enrolled her daughter in a GLV program ***in the middle of this litigation*** and allowed her daughter to play volleyball at GLV under the Butlers' care and control.

On July 10, 2018, Laura Mullen signed a waiver with GLV, Inc. for her daughter to participate in the GLV high school summer league which expressly (1) Releases GLV, Inc. from **all claims** arising out of or connected with her child's participation in **any** GLV, Inc. program; (2) Grants GLV, Inc. permission to treat her child or arrange for medical care or treatment for her child in any situation deemed reasonably necessary by GLV, Inc.; and (3) Permits GLV, Inc. to communicate with her directly via telephone as an emergency contact for her child. *Exhibit D*.

Following her July 10, 2018 waiver, Plaintiff did, in fact, allow her daughter to play volleyball in GLV's summer league, which is held at the Great Lakes Center, multiple times in July of 2018. Plaintiff's intentional waiver of her claims against GLV in the middle of this litigation, and her decision to leave her daughter in Defendants' care, is direct evidence of the absolute lack of merit of her claim against Defendants. The enforceability of the waiver will likely become an immediate, significant focus of this case, diverting attention away from issues common to the class. *See Williams*, 150 F.R.D. at 113-14.

### 2. Mullen's Conflicting Claims and Factual Allegations Prove She Is Not Credible

Certification should be denied because Laura Mullen, the only named Plaintiff, lacks credibility. Courts have denied class certification because the class representative generally lacked credibility or the class representative's credibility was severely strained with respect to the claims in the lawsuit. *See Jamison v. First Credit Services, Inc*., 290 F.R.D. 92, 105 (N.D. Ill. 2013). Multiple putative class members with personal knowledge of Plaintiff's claims have indicated that Plaintiff lacks credibility. For example:

> "I am beyond pissed after reading the crap in this BS lawsuit being filed by Laura. Let me know if there is anything I can do to help. She was crazy whether [REDACTED] was playing at SPRI or Fusion and now appears to have gone full cra-cra." (*Exhibit E*, (Feb. 28, 2018 text message exchange between putative class member J. Shook and Rick Butler))

I would also like to add that with the lawsuit, I know for a fact that she's lying about certain points (we all do)…They are questioning my parenting and think I don't know how to keep my kids safe! Granted, I am sooo far from a perfect parent but I know 100% my kids are safe, protected, and cared for at SP…They (the crazies) have no knowledge of today's club that's for sure. They also have no knowledge of what I experienced in the 80's/90's. I have made an extremely informed decision. I do not regret it for a second." (*Exhibit F* (June 21, 2018 text message exchange between putative class member L. Slavik and GLV employee Troy Gilb) *Exhibit O* (Declaration of Troy Gilb))

Furthermore, the Complaint states that Plaintiff learned "substantial details" of the allegations in June of 2017. (Compl. ¶ 175.) Despite her claim that she would never have allowed her daughters to play for Defendants had she known of the allegations, Laura Mullen paid GLV on August 30, 2017, for her daughter, Josie, to participate in a group lesson at GLV on September 3, 2017, and then again paid GLV on September 15, 2017 for Josie to participate in a clinic at GLV on September 16, 2017. *Exhibit G*. Even Plaintiff's own witnesses have contradicted her claims in this case. In 2016, Sarah Powers-Barnhard sent a demand letter to AAU threatening to file suit against the organization for its failure to ban Butler. Powers-Barnhard's suit was based upon the following contention:

"[T]he AAU represented and warranted to its subscribing and paid membership that upon a reasonable showing any individual who was believed to have engaged in sexual misconduct was to be denied participation in the AAU. That is a false and deceptive statement. Butler's sexual misconduct is very well documented, starting over 20 years ago. Some of it is documented in formal, published proceedings before the congressionally-sanctioned governing body of women's volleyball, USA Volleyball…Butler's criminal misconduct was widely reported in the media. Sports Illustrated Story of the year 1995; See ESPN broadcast on July 28, 2015…"

*Exhibit H*. Later in her letter, Powers-Barnhard directly contradicts the Laura Mullen's entire claim, stating "None of these facts were buried but rather broadly publicized in 1995 and again in 2015." *Id*. To be clear, in this matter Laura Mullen claims that Powers-Barnhard, her key witness, has "attested to the lengths the Butlers went to in order to prevent the story of Rick's behavior from becoming public knowledge." Plaintiff's false claims warrant the denial of her Motion. *See*

*Kaplan v. Pomerantz*, 132 F.R.D. 504, 510 (N.D. Ill. 1990)(false testimony during deposition warranted decertification of the class). Plaintiff and her "witnesses" are merely using this litigation as yet another attack on the Defendants in a decades-long battle in order to dismantle their business and destroy their reputations.

Plaintiff's factual allegations are often contradictory and fall far short of reflecting reality. For example, she refers to the third-party allegations as "unconfirmed rumors" in her Motion, but her Complaint contains a heading titled "Rick Butler's Conduct Has Been Confirmed Through Multiple Official Proceedings." (Compl. ¶ 117.) The Declarations of Plaintiff's witnesses contradict Plaintiff's claims more than they support them. Plaintiff advances the theory that Defendants fraudulently concealed and suppressed information related to the third-party allegations, claiming that "five women have attested to the lengths the Butlers went to in order to prevent the story of Rick's behavior from becoming public knowledge." (Pl.'s Mot. in Supp. of Class Certification, p. 10.) However, each Declaration undermines Plaintiff's contention that the Defendants prevented the allegations from going public. (Pl.'s Mot. in Supp. of Class Certification, Exhibit 1-A.) For example, Sarah Powers-Barnhard, Christine Tuzi, Julie Romias, and Beth Rose do not claim to have ever actually withheld information from the public. *Id.* Jane Doe's Declaration is lacking in credibility and reliability due to its anonymous nature, which effectively shields her from potential liability for defamation or prosecution for perjury, thus defeating one of the purposes of the testimonial oath she took. Moreover, her claim that "Cheryl Butler called me and threatened me to keep quiet" is void of any actual facts which from which Cheryl's alleged "threat" could possibly be construed. *Id.*

Notably, each Declaration relates to acts that allegedly took place in 1994 and thereafter – well after the expiration of the applicable statute of limitations. *Id.* According to the witnesses'

own Declarations, the Defendants did nothing to prevent these women from coming forward prior to 1994, when the women made these claims for the first time to DCFS in order to interfere with Rick and Cheryl's adoption of their son. Courts do not adopt a "mere pleading standard" to evaluate evidence submitted with a class certification motion. *Comcast*, 133 S. Ct. at 1432. Instead, courts must engage in a "rigorous analysis" to evaluate if Mullen has affirmatively demonstrated compliance with Rule 23's requirements by a preponderance of the evidence. *Wal-Mart*, 564 U.S. at 350. In light of the foregoing, it is clear that Plaintiff and her witnesses cannot be deemed credible and appropriate to represent the interests of the proposed class.

**C. The Misconduct of Plaintiff's Counsel Requires Denial of Class Certification**

In assessing adequacy, the Court must determine whether Mullen has counsel who is competent, qualified, experienced, and able to vigorously conduct the litigation. *Streeter v. Sheriff of Cook Cty.*, 256 F.R.D. 609, 613 (N.D. Ill. 2009). Unethical conduct by class counsel implicates class certification because class counsel serves as a fiduciary for the unnamed plaintiffs. *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489, 495 (7th Cir. 2013). Misconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification. *Id.*

Throughout the course of this matter, Plaintiff and her counsel have made it clear they are abusing the judicial system as a means to dismantle a business and destroy the reputations of the Defendants. Now, Plaintiff's counsel has engaged in misconduct which came to light since the filing of Plaintiff's Motion. Lead attorney for Plaintiff, Jay Edelson, has repeatedly stated to the press how badly he wants to depose Rick Butler, for example, "We want him under oath. We want to see what he says. We are very eager to get that done as quickly as possible, and the same thing

with his wife."[5] After this Court denied Plaintiff's request to depose Rick Butler (Dkt. 78.), Edelson resorted to more devious methods.

A defendant in a DuPage County case is currently being represented by Edelson, again pro bono, in a lawsuit for defamation filed by the birth mother of the Rick and Cheryl Butler's adopted son. (*See Murphy-Pierce v. Horvath*, DuPage Case No. 2017 L 887.) Before even filing an Answer in that matter, Edelson, through attorney Alfred Murray who is also counsel in this matter, issued a subpoena on August 29, 2018 (*Exhibit I*) and another on September 19, 2018 for Rick Butler's deposition. *Exhibit J*. After a review of the complaint in that matter, it became clear that there was no legitimate purpose for the deposition. *Exhibit K*. Even worse, Edelson pled an erroneous affirmative defense, which he in fact knows to be false based on documents he has received in this matter, in order to implicate Rick Butler's involvement in the DuPage case. In the affirmative defense, Edelson asserts that Rick Butler could be the biological father of his adopted son. *Exhibit L*, ¶ 33. This assertion is clearly false, as Edelson has received the attached Decree of Adoption (*Exhibit M*) and Guardian Ad Litem Report (*Exhibit N*), which were attached to a Rule 11 letter sent to him by counsel for Defendants. (Dkt. 59, Exhibit 1, ¶ 11.) Both documents contain information about the child's biological father which clearly establish that Rick Butler could not possibly be the natural father of his adopted son. Notwithstanding the conflict of interest Edelson's dual-representation poses, his pattern of behavior throughout the course of this litigation raises serious doubt that he will represent the class loyally. Thus, certification should be denied.

Lastly, the Complaint states in its introduction, "Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to her and her own acts and experiences, and as to all other

---

[5] Christian Red, *New Federal Class-Action Suit Against Rick Butler Seeks to Prevent Him from Interacting With Minors*, New York Daily News, March 1, 2018,  http://www.nydailynews.com/sports/more-sports/new-suit-rick-butler-seeks-protect-minors-article-1.3850082 (last visited October 26, 2018).

matters, upon information and belief, including investigation conducted by her attorneys." As such, Edelson has subjected itself to the advocate-witness rule, which disqualifies the attorney(s) involved in the "investigation" at any trial in this matter. *See* Ill. Rule of Prof. Conduct 3.7.

## III. THE PROPOSED CLASS CANNOT BE CERTIFIED BECAUSE MULLEN FAILS TO MEET COMMONALITY AND PREDOMINANCE STANDARDS FOR EVERY CAUSE OF ACTION

This court should deny Plaintiff's Motion because, *inter alia*, the requirements of Rule 23(b)(3) are not satisfied. Rule 23(a)(2) requires there to be "questions of law and fact common to the class." Fed.R.Civ.P. 23(a)(2). Rule 23(b)(3) requires this court to determine whether there are "questions of law or fact common to the members of the class that predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Rule 23(b)(3)'s "predominance inquiry is far more demanding than Rule 23(a)'s commonality requirement." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997). If individual issues predominate, then certification is not the superior method for resolving the controversy, as management of such issues by a court will not be efficient. *Szabo*, 249 F.3d at 675.

### A. The Common Questions Proposed by Plaintiff Fail to Meet the Commonality Standard Set Forth in *Wal-Mart, Inc. v. Dukes*

While Plaintiff sets forth several "common questions" in her Motion, the dissimilarities within subgroups of the proposed class impede the generation of common answers. *See Wal-Mart*, 564 U.S. at 350. As previously discussed, Plaintiff's class definition includes numerous subgroups, each of which involves major factual differences such as different coaches, different training, different facilities, different marketing, different durations, different contracts, and different registration procedures. *See Fluidmaster*, 2017 WL 1196990 at *43 (holding that claims lack the

"same essence" and did not "stand or fall together" where each defect involved different parts, materials, flaws, environments, and labels).

The questions proposed by Plaintiff are overly general, which makes it impossible to provide a single answer to any question. In *Wal-Mart v. Dukes*, the Supreme Court gave examples of the types of questions that do not meet the commonality standard set by Rule 23, such as "Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get?" 564 U.S. at 349. Much like the flaws in *Wal-Mart v. Dukes*, Plaintiff has presented general questions which are impossible to answer in one broad stroke. *Id*. To illustrate, while proximate causation is an element of each claim in Plaintiff's Complaint, it would be answered differently for fraud claims in comparison to claims that Defendants violated contract requirements of the IPFSA. Nevertheless, Plaintiff's sets forth the following question: "Did Defendants' conduct proximately cause class members' injuries?" While proximate cause is quite literally a common question, it gives no cause to believe that all of the claims can be productively litigated at once. *See id*. The same can be said for the remaining common questions presented by the Plaintiff, due to the varying subgroups of putative class members and the differences in each of the claims brought on behalf of the putative class. As such, Plaintiff has fallen far short of affirmatively demonstrating compliance with Rule 23 and her Motion should be denied. *See id.* at 349-50.

Plaintiff states in her motion that "proximate causation is synonymous with deception and may be inferred when there are no events that break the causal chain between the omission and payment." (Pl.'s Mot. in Supp. of Class Certification, p. 14.)(citing *Aliano v. Louisville Distilling Co.*, LLC, 115 F. Supp. 3d 921, 932 (N.D. Ill. 2015)). However, there are many individualized events that break that causal chain, such as when Plaintiff admitted to registering her daughter based on the recommendations of third parties. (Compl. ¶¶ 167.)

Moreover, despite the *Dukes* Court holding that "commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," Plaintiff does not even attempt to prove that the class suffered a similar injury or actual damages caused by Defendants' alleged violations of § 4 and § 6 of the IPFSA. *Wal-Mart*, 564 U.S. at 350. If Defendants indeed failed to provide Plaintiff with a copy of a contract, Plaintiff is still required to show that her claims are common to those of the class, which Plaintiff has failed to accomplish. *See id.* at 350.

Proof of commonality necessarily overlaps with Plaintiff's merits contention that the Butlers engaged in a scheme to suppress information about third-party allegations of abuse from the 1980s. *See id.* at 349-50. The documents attached to Plaintiff's Motion are of suspect evidentiary value. Plaintiff provides no evidence establishing either: (1) when any putative class members allegedly saw any of the allegedly misleading statements, or (2) if any putative class member relied on any of the allegedly misleading statements when choosing GLV for volleyball instruction. While Mullen did submit a declaration, it does nothing to advance her claims. The fact that Ms. Mullen fails to state in her declaration that she ever received or relied upon any of the Defendants' statements or omissions speaks volumes. The court may not presume something is true merely because one party asserts it to be. *Fluidmaster,* 2017 WL 1196990 at *43. Plaintiff has failed to provide sufficient support of her claims to affirmatively demonstrate compliance with Rule 23, and her Motion should be denied.

**B.  Individualized Issues Control Any Common Questions**

The nature of Plaintiff's claims require an individualized person-by-person evaluation of what the potential class members viewed on GLV's website or heard in meetings, the potential class member's understanding of and reliance on this information, whether the Defendants' conduct proximately caused injury to the individual class member, and what damages, if any,

resulted. *See Nagel v. ADM Investor Servs., Inc*., 217 F.3d 436, 443 (7th Cir. 2000)(noting that consumer fraud claims are plaintiff specific and therefore not likely to have common class issues that predominate over individual issues).

**1. The Overlapping Elements of Plaintiff's Claims Present Individualized Questions Which Prohibit Class Certification for Every Cause of Action**

Plaintiff attempts to overcome the individualized issues which prohibit certification by advancing a theory in her Motion that is vastly different than the theory set forth in her Complaint. Plaintiff's Motion has conspicuously reframed her fraud claims against Defendants. The Complaint contains numerous statements that Plaintiff claims she and every member of the putative class relied upon. (Compl. ¶ 162-63.) Even Plaintiff's fraudulent concealment claim depends on the statements allegedly made by the Defendants. (Compl. ¶ 241-43.)

For purposes of class certification, Plaintiff is now silent as to any statements allegedly made by Defendants. The reason for this is obvious. Plaintiff simply cannot show that the same conduct or practice by the same defendant gives rise to the same kind of claims for each and every class member. *Suchanek v. Sturm Foods, Inc*., 764 F.3d 750, 756 (7th Cir. 2014). Plaintiff is unable to establish that the Defendants made any statements to the class, let alone the same type of statements. *Fluidmaster,* 2017 WL 1196990 at *43 (citing *Mazza*, 66 F.3d at 595–96)("While Plaintiffs assert that all Class members were injured in the same way when they were relieved of their money by Defendant's deceptive conduct that presumes that (1) all class members were exposed to Defendant's conduct and (2) this conduct caused their alleged loss.").

Furthermore, reliance cannot be presumed in this matter, as Plaintiff has pointed to several statements made in meetings, the Defendants' website, and on marketing materials that purportedly constitute false "representations." (Comp. ¶ 162-63.). There is no single uniform omission (or misrepresentation) in this case and no basis to assume that the alleged

misrepresentations reached the class members in any event, which means that reliance cannot be presumed on a classwide basis and individual proof is required. *See Williams*, 150 F.R.D. at 112.

Individual questions also predominate as to the issue of actual damages, which are required for every cause of action in Plaintiff's Complaint. *See Clark v. Experian Info., Inc*., 233 F.R.D. 508, 511 (N.D. Ill. 2005). Plaintiff claims that Defendants "misrepresented and omitted material facts in their interactions with parents and players regarding the quality of the services provided through the GLV's volleyball club, camps, and clinics." (Compl. ¶¶ 161, 231-32.) The vast majority of potential class members have paid for multiple programs, camps, clinics, and programs run by GLV.

Moreover, according to Plaintiff's Declaration, the amounts she allegedly paid for "volleyball instruction" include "season dues, uniform fees, travel for tournaments, lessons, and camps." (Pl.'s Mot. in Supp. of Class Certification, Ex. 1-C, Mullen Dec. ¶ 6.) Plaintiff's calculation highlights an important obstacle to calculating damages in this matter, because travel costs and uniform fees are not, in fact, paid to GLV for volleyball instruction. This Court would need to perform an individualized calculation of each potential class member's recovery since individual factors will impact what amount of recovery, if any, is proper for each potential class member. *Birnberg v. Milk Street Residential Assoc. L.P*., No. 02 C 978, 02 C 3436, 2003 WL 21267103, at *7 (N.D. Ill. May 29, 2003).

The Defendants also have asserted affirmative defenses, and these affirmative defenses will require a person-by-person evaluation of conduct to determine whether an individual potential class member's action precludes individual recovery. *Clark*, 233 F.R.D. at 512. Plaintiff's argument in support of class certification fails to address the major issues presented in this case, namely, the putative class members' close relationship with the Defendants and their knowledge

of the third-party allegations. *Id.* ("The plaintiffs' argument for class certification in sum is that the defendants' website is deceptive and that fact by itself, according to plaintiffs' counsel, is enough to allow for class certification…plaintiffs' position is incorrect because in a consumer fraud case such as this, this court must examine actions by both the defendants as well as the putative class members to determine liability."). Defendants have attached over 600 pages of communications of class members which undermine essential elements of Mullen's claim. *Exhibit A.* Each communication provides direct evidence in support of Defendants' affirmative defenses, and these individualized issues are precisely the type which defeat certification.

2. **Plaintiff's Claims Under the Illinois Physical Fitness Services Act Require Individualized Assessments Prohibiting Certification**

In addition to individualized questions of reliance and damages discussed above, whether the IPFSA applies to GLV will depend on which specific camp, clinic, lesson, or program the putative class member attended. Section 10 of the IPFSA only applies to "physical fitness centers," which are defined as "business entit[ies] offering physical fitness services to the public." *See* 815 ILCS 645/2(a). As previously noted, the class definition encompasses programs with different coaches, different training, different facilities, different marketing, different durations, different contracts, and different registration procedures. Whether a GLV camp, clinic, lesson, or program fits within the parameters of the statute is an issue that must be resolved for each class member.

Moreover, whether a putative class member was harmed by a lack of contract provisions required by the statute (e.g., disclosing that the contract may be cancelled within 3 days of signing for a full refund, that a customer may cancel the contract after relocating somewhere further than 25 miles from the physical fitness center, or after death or disability, and informing customers of cancellation procedures) will vary between the different forums in which GLV provides volleyball instruction. For example, a week-long overnight camp located at Benedictine University will be

evaluated in light of Benedictine's facilities, and the absence of a required contract provision regarding relocation would likely cause little to no damage, as the camp is an overnight camp which does not require daily commute. On the other hand, if a putative class member registers her child 30 minutes prior to a one-hour lesson at GLV, the absence of contract provisions concerning a three-day cancellation period and cancellation procedures after death could not possibly cause a plaintiff damage. Similarly, whether a contract violated the Act is a question that can only be answered by reviewing each contract program by program. Plaintiff glosses over her admission that she received contracts which are different from those received by a majority of the putative class members, and then she fails to provide any support to show how she could otherwise meet the requirement of commonality. (Pl.'s Mot. in Supp. of Class Certification, p. 20.)

### 3. Plaintiff's Claims Under the Illinois Consumer Fraud and Business Practices Act Require Individualized Assessments Prohibiting Certification

The ICFA applies only where deception occurs in a course of conduct involving trade or commerce. *JP Morgan Chase*, 9 N.E.3d 104, 121 (Ill. App. Ct. 2014). Whether a GLV camp, clinic, lesson, or program fits within the parameters of the statute is an issue that must be resolved for each class member. In order to succeed on an unfair practices claim pursuant to the ICFA, a defendant's conduct must violate public policy, be so oppressive as to leave the consumer with little alternative except to submit to it, and injure the consumer. *See Galvan v. Northwestern Memorial Hosp.*, 382 Ill.App.3d 259, 265 (1st Dist. 2008). Defendants have attached numerous documents as part of *Exhibit A* which contain communications from putative class members discussing competitors or discussing their move between GLV and a competitor. These documents provide evidentiary support of affirmative defenses against an unfair practices claim and, as such, they establish that individual issues predominate Plaintiff's unfair practices claim under the ICFA.

**IV.    A CLASS ACTION IS NOT THE SUPERIOR METHOD FOR ADJUDICATION BECAUSE THE PROPOSED CLASS IS NOT MANAGEABLE OR SUFFICIENTLY NUMEROUS**

In addition to the numerous deficiencies in the proposed class definition set forth above, Plaintiff has failed to overcome issues with manageability and numerosity. The vast majority of putative class members have repeatedly paid GLV for volleyball instruction in a variety of forums, which poses numerous manageability issues that Plaintiff has left unaddressed. To certify a class under Rule 23(b)(3), a plaintiff must prove that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Issues relevant to superiority include (1) the class members' interests in individually controlling their cases; (2) "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class"; (3) whether it is desirable to concentrate "litigation of the claims in the particular forum"; and (4) "the difficulties likely to be encountered in the management of a class action." *Szabo*, 249 F.3d at 676. When a separate evidentiary hearing is required for each class member's claim, the aggregate expense may swamp the benefits of class-action treatment. *Pastor v. State Farm Mut. Auto. Ins. Co*., 487 F.3d 1042, 1047 (7th Cir. 2007). Plaintiff has failed to prove that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy, and therefore certification should be denied.

Courts rely on "common sense" to determine whether an estimate of class size is reasonable. *Murray v. E\*Trade Fin. Corp*., 240 F.R.D. 392, 396 (N.D. Ill. 2006). Plaintiff was highly involved in the program from 2012-2017 and personally knows dozens of class members, however, she has not pointed to a single other putative class member who supports her arguments. On the other hand, Defendants have produced an abundance of evidence from class members expressing their support for the Defendants against Plaintiff's claims. Here, the common-sense

conclusion is that Plaintiff does not represent the interests of anyone besides herself. *C.f.*
*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 252 (N.D. Ill. 2014)(where the plaintiff
had indicated to the court that "other putative class members who do appear in those records have
indicated that they are interested in, and willing to, serve as named plaintiffs in this case.").

Considering the nature of Plaintiff's claim and the varying interests of the putative class
members, Plaintiff has failed to meet her burden to prove that joinder of all interested members
would be impracticable. To warrant certification, the class must be "so numerous that joinder of
all members is impracticable." Fed. R. Civ. P. 23(a)(1). "To determine whether joinder is
impracticable courts must consider the circumstances unique to each case." *Ellis v. Elgin Riverboat
Resort*, 217 F.R.D. 415, 421 (N.D. Ill. 2003). "When determining whether joinder is impracticable,
the court considers not only the size of the class, but also its geographic dispersion, the relief
sought, and the ability of individuals to bring their own claims." *Fields*, 2004 WL 1879997, at \*3.
Joinder would not cause the litigation to be difficult or inconvenient, as all putative class members
are likely to live within a reasonable distance from the Great Lakes Center.

Furthermore, the claims of Plaintiff and the putative class are significant enough to warrant
individual action – in the span of four years, Plaintiff claims she paid Defendants approximately
$25,000.00. Furthermore, courts have consistently held that the availability of punitive or statutory
damages and fee-shifting can demonstrate the viability of "individual actions in the absence of a
class action." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 420 (5th Cir. 1998)(finding statutory
damages and attorney's fees eliminated financial barriers that might make individual lawsuits
unlikely). Therefore, individual plaintiffs have ample motivation to initiate their own lawsuits if
they so choose. In light of the numerous obstacles to certification Plaintiff faces, denial of
Plaintiff's Motion is warranted.

## **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that this Court enter an

Order denying Plaintiff's Motion in Support of Class Certification and granting any other relief

that this Court deems just and proper.

Date: October 26, 2018

Respectfully Submitted,
GLV, INC., RICK BUTLER, and
CHERYL BUTLER

By: */s/ Danielle D'Ambrose*
One of Their Attorneys

Danielle D'Ambrose
D'AMBROSE P.C.
500 North Michigan Avenue, Suite 600
Chicago, IL 60611
P: (312) 6396-4121 | F: (312) 574-0924
Danielle@DambrosePC.com
ARDC No. 6323782

*Attorney for Defendants*

## CERTIFICATE OF DELIVERY

The undersigned, an attorney, certifies that pursuant to Section X (E) of the General Order on Electronic Case Filing for the Northern District of Illinois, service of Defendants' First Amended Affirmative Defenses to Plaintiff's Complaint on all attorneys of record was accomplished through the Court's Electronic Notice for Registrants on October 26, 2018.

_/s/ Danielle D'Ambrose_