## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| LAURA MULLEN, individually and on behalf of all others similarly situated, | Case No. 1:18-cv-1465 |
| *Plaintiff,* | Honorable Matthew F. Kennelly |
| v. | |
| GLV, INC., d/b/a SPORTS PERFORMANCE VOLLEYBALL CLUB and GREAT LAKES CENTER, an Illinois corporation, RICKY BUTLER, an individual, and CHERYL BUTLER, an individual, | |
| *Defendants.* | |

## REPLY IN SUPPORT OF PLAINTIFF'S
## <u>MOTION FOR CLASS CERTIFICATION</u>

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

ARGUMENT ........................................................................................................................2

I.    **Defendants Have Not Shown that the Class Is Insufficiently Cohesive so as to Prevent Adjudication by Representation**.................................................................2

    A.    **Reliance and proximate cause do not create individualized issues that predominate over common resolution** .....................................................3

    B.    **The class definition's inclusion of various volleyball programs does not create individualized issues**.................................................................5

II.    **There Are No Other Issues with Representation of the Class** .........................9

    A.    **Mullen's claims are typical of the class**................................................9

        *1.    Mullen's claims have the same basic characteristics as those of the class* .................................................................................9

        *2.    There are no defenses unique to Mullen that would defeat typicality* .......10

    B.    **Mullen and her counsel will adequately represent the class**...............11

        *1.    Defendants have not produced any evidence that undermines Mullen's credibility*.................................................................................12

        *2.    Mullen's interests are aligned with those of the class* .............................12

        *3.    Edelson PC is adequate class counsel that will vigorously prosecute this case*.................................................................................14

III.    **A Class Action Is the Superior Method of Adjudication Despite the Potentially Significant Amount of Damages at Issue**.......................................14

CONCLUSION ..................................................................................................................15

## TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Gratz v. Bollinger*,
539 U.S. 244 (2003)................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)..................................................................6

**United States Court of Appeals Cases:**

*CE Design Ltd. v. King Arch. Metals, Inc.*,
637 F.3d 721 (7th Cir. 2011) .....................................................12

*In re IKO Roofing Shingle Prods. Liab. Litig.*,
757 F.3d 599 (7th Cir. 2014) ......................................................9

*Keele v. Wexler*,
149 F.3d 589 (7th Cir. 1998) ......................................................9

*Morrison v. YTB Int'l, Inc.*,
649 F.3d 533 (7th Cir. 2011) .....................................................13

*Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*,
704 F.3d 489 (7th Cir. 2013) .....................................................14

**United States District Court Cases:**

*Anderson v. Cornejo*,
199 F.R.D. 228 (N.D. Ill. 2000)..................................................15

*Arwa Chiro., P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*,
322 F.R.D. 458 (N.D. Ill. 2017)...............................................9, 10

*Basheeruddin v. Advocate Health & Hosp. Corp.*,
2016 WL 3520160 (N.D. Ill. June 27, 2016) ..................................7

*Baxter v. Kawaski Motors Corp.*,
259 F.R.D. 336 (N.D. Ill. 2009)..................................................13

*Birchmeier v. Caribbean Cruise Line, Inc.*,
302 F.R.D. 240 (N.D. Ill. 2014)..................................................15

*Fox v. Riverview Realty Partners*,
2014 WL 1613022 (N.D. Ill. Apr. 22, 2014) .............................12, 14

ii

*Galvan v. NCO Fin. Sys., Inc.*,
    2012 WL 3987643 (N.D. Ill. Sept. 11, 2012) ...................................................9

*In re ConAgra Foods Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) .........................................................4

*In re Fluidmaster, Inc. Prods. Liab. Litig.*,
    2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) ...............................................3, 4

*Le v. Kohl's Dep't Stores, Inc.*,
    160 F. Supp. 3d 1096 (E.D. Wis. 2016) .....................................................13

*Martino v. Ecolab, Inc.*,
    2016 WL 614477 (N.D. Cal. Feb. 16, 2016) ...............................................15

*Rivera v. Allstate Ins. Co.*,
    140 F. Supp. 3d 722 (N.D. Ill. 2015) ........................................................14

*Russell v. Ill. Bell Tel. Co.*,
    721 F. Supp. 2d 804 (N.D. Ill. 2010) ..........................................................6

*Scholes v. Moore*,
    150 F.R.D. 133 (N.D. Ill. 1993) ...............................................................15

*Streeter v. Sheriff of Cook Cty.*,
    256 F.R.D. 609 (N.D. Ill. 2009) .................................................................8

**State Court Cases:**

*Murphy-Pierce v. Horvath*,
    No. 17 L 887 (Cir. Ct. DuPage Cty., Ill.) ....................................................14

*Offord v. Fitness Int'l., LLC*,
    2015 IL App (1st) 150879 .......................................................................11

*Phillips v. Ford Motor Co.*,
    2003 WL 23353492 (Cir. Ct. Madison Cty., Ill., Sept. 15, 2003) .......................5

**Miscellaneous Authorities:**

815 ILCS 645 ........................................................................................8, 11

Fed. R. Civ. P. 23 .......................................................................... *passim*

## INTRODUCTION

Plaintiff Laura Mullen's basis for class certification is simple: she and thousands of others who paid for their children to receive volleyball instruction from Defendants GLV, Inc. and Rick and Cheryl Butler were uniformly deceived by Defendants' failure to disclose that coach Rick Butler has a history of sexually abusing young girls. Defendants lodge a wide-ranging opposition to certification, but nearly all of their arguments center on two underlying points: (1) several hundred pages of unauthenticated emails voicing past support for Defendants' volleyball programs show that Mullen is an outlier and at odds with the class, and (2) the class is too varied to be certified because it encompasses different programs. Neither argument is sound.

First, the emails upon which Defendants rely raise no obstacle to certification. Despite claiming that they've produced an "abundance of evidence" in support of their position, the vast majority of those communications are irrelevant, unauthenticated hearsay. Those objections aside, the substance of the emails does nothing to advance Defendants' arguments that class members knew about the allegations and nevertheless continued to support the Butlers. Not a single email even remotely suggests that any class members would still send their children to Defendants' programs if the sexual abuse allegations are true. The reason is obvious: every parent would do their best to keep their children away from a man with a history of sexual abuse. And the fact that Defendants felt compelled to send out emails to class members addressing the abuse allegations at all actually supports *Mullen's* argument that this information is material enough to warrant a classwide inference of causation and reliance.

Second, the inclusion of various volleyball programs within the class does not create any impediment to certification because all class members were subject to the same conduct: Defendants' omission and concealment of material information regarding Butler's history of

1

sexual abuse. And, with respect to Mullen's claims under the Illinois Physical Fitness Act, Defendants have conceded that only one form contract existed for all programs, making certification of that claim appropriate, as well.

Defendants' remaining challenges to class certification fare no better. As for typicality, the argument that Mullen signed a waiver of liability, enrolling her daughter in one of Defendants' programs during the pendency of this litigation, is entirely misleading. The "waiver" was in fact a generic document presented to Mullen by her daughter's *high school* volleyball coach for a *high school* summer league, which is completely unaffiliated with Defendants save for the games occurring at Defendants' facility.

Defendants' arguments that Mullen and her counsel will not adequately represent the interests of the class are similarly unavailing. They attack Mullen's credibility but provide no evidence that she was lying, and contend that proposed class counsel's attempt to depose Rick Butler in a separate lawsuit is disqualifying but don't explain how subpoenaing a third party witness is improper or acknowledge that no objection has been raised with the issuance of the subpoena in that matter. Plainly, neither argument prevents a finding of adequacy.

And finally, Defendants' argument that a class action isn't superior because class members may be able to recover significant actual damages ignores that courts routinely certify classes even if significant individual damages are recoverable when, as here, the claims for relief present overlapping legal questions. The motion for class certification should be granted.

## ARGUMENT

### I. Defendants Have Not Shown that the Class is Insufficiently Cohesive so as to Prevent Adjudication by Representation.

Defendants' primary argument is that the "evidence" appended to their Response raises individualized issues with respect to (i) the reliance and proximate cause analysis, and (ii) the

existence of purported "subgroups" within the class. Neither argument defeats certification.

**A.    Reliance and proximate cause do not create individualized issues that predominate over common resolution.**

Defendants contend that Mullen's proposed class is too varied to be certified. They identify several purported differences in the volleyball programs class members sent their children to, arguing that these differences prevent a jury from assessing reliance and causation on a classwide basis. Further, Defendants claim that individual variability among class members means that reliance cannot be inferred. Defendants dress up these contentions in the language of each of Rule 23's prerequisites, but these arguments bear most directly on the requirement that common issues predominate. (*See, e.g.*, Dkt. 87 at 19.)

The evidence adduced by Defendants does not undermine Mullen's proposal. To recap, Mullen submits that class certification of her claims for common-law fraud and under the Illinois Consumer Fraud Act is proper because (1) the full truth about Rick Butler's abusive sexual past was concealed from class members, (2) this information is material to class members' decision to enroll their children in GLV instructional volleyball programs, and (3) a jury should be permitted to assess Mullen's contention that reasonable parents would not patronize GLV if they knew about Butler's past. Defendants attack each link in this chain, but these attacks fail.

Take first the compendium of emails and texts attached to Defendants' Response. (*See* Dkts. 89-1, 87-3, 87-5, 87-6.) As an initial matter, the obviously self-serving nature of this production is cause to give the "evidence" little weight. These emails were not produced in discovery, haven't been vetted, and on the whole seem to be an incomplete picture of how parents reacted to the news of Mullen's lawsuit. The communications are also not properly authenticated and are hearsay. *See In re Fluidmaster, Inc. Prods. Liab. Litig.*, 2017 WL 1196990, at *43 (N.D. Ill. Mar. 31, 2017) (giving, at class certification, evidence "appropriate weight" in

3

light of evidentiary objections). But even beyond these glaring problems, these emails are most striking for how they do not support Defendants' contentions. First, *none* say that class members would still be comfortable sending their children to Defendants' programs if the allegations about Butler's history of sexual abuse are true. Defendants have not contested the truth of those allegations for purposes of this motion. The emails demonstrate only that certain class members continue to believe Defendants' fraud and thus support Butler in the face of a lawsuit. The emails do *not* demonstrate that this same handful of parents disagree with the premise of Mullen's claims—that parents naturally would want to keep children away from a proven sexual predator. Indeed, despite touting that the emails demonstrate unequivocal "support of the Butlers" in light of the allegations, very few of the nearly 700 pages appended to the Response actually refer to Butler's sexual misconduct at all. (*See, e.g.*, Dkt. 89-1 at 17 ("[T]hank you for having us as part of your club."), 301 ("[T]he two camps put on by your coaches were top-notch!!").)

Second, this evidence in many ways *supports* Mullen's argument. The communications within Defendants' production that are responsive to Mullen's motion include two separate email blasts that Defendants sent to parents of certain Sports Performance girls teams, which contain vehement denials and omit material facts regarding the sexual abuse allegations. (*Id.* at 38, 140, 150, 639, 640.) The fact that Defendants felt the need to send out emails to parents denying the allegations highlights the materiality of their omission: they understood that such information is important enough to parents that it would make a difference in their decision to attend or stay at GLV. This evidence is enough to infer reliance and proximate cause on a classwide basis. *See, e.g.*, *In re ConAgra Foods Inc.*, 90 F. Supp. 3d 919, 997-98 (C.D. Cal. 2015) ("[I]n cases like this one where the . . . omissions being challenged were made to all putative class members, Illinois courts have concluded that causation is susceptible to classwide proof and that

individualized inquiries concerning causation do not predominate if plaintiffs are able to adduce sufficient evidence that the representation was material."); *Phillips v. Ford Motor Co.*, No. 99 L 1041, 2003 WL 23353492, at *6 n.8 (Cir. Ct. Madison Cty., Ill., Sept. 15, 2003) (noting that "[n]umerous courts have inferred or presumed reliance in omissions cases (or other common scheme cases)[.]"). This analysis is particularly straightforward for Mullen's ICFA claim, which does not require reliance as an element. (*See* Dkt. 83-1 at 14.) Under the ICFA, proximate causation is susceptible to classwide proof in cases such as this one, where the omission being challenged was uniform as to all putative class members. (*Id.*)

The evidence also undermines Defendants' bewildering assertion that "[t]here is no single uniform omission (or misrepresentation) in this case" and thus no basis for a classwide presumption of reliance and causation. (Dkt. 87 at 21-22.) (Defendants' argument about misrepresentations is, of course, beside the point, given that Mullen's class proposal turns on a theory of fraudulent concealment.) Indeed, the emails underscore the fact that as a result of Defendants' actions, putative class members did not, and still do not, know the truth regarding Rick Butler's past. (*See* Dkts. 89-1, 87-3, 87-5, 87-6.) If the allegations against Butler are true, as the evidence will show once this case reaches the merits, then one would think that those parents would withdraw their support for the Butlers. If not, then those few class members would of course have the option to opt out of the class. Thus, Defendants' assertion that "there are many individualized events that break th[e] causal chain" (Dkt. 87 at 19) has no merit.

### B. The class definition's inclusion of various volleyball programs does not create individualized issues.

Next, Defendants contend that the various volleyball programs offered by GLV "involve[] different coaches, different training, different facilities, different marketing, different durations, different contracts, and different registration procedures." (*Id.* at 7, 18.) These

differences, Defendants say, create the kind of "[d]issimilarities within the proposed class" that "have the potential to impede the generation of common answers." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation omitted). Defendants are incorrect.

First, unlike in *Wal-Mart v. Dukes*, in which the plaintiffs failed to proffer evidence of a general policy that was applicable to the class as a whole, 564 U.S. at 359, Mullen has identified a single common course of conduct—i.e., Defendants' failure to disclose the nature of Butlers' sexual abuses—that uniformly affected all putative class members here. *See, e.g.*, *Russell v. Ill. Bell Tel. Co.*, 721 F. Supp. 2d 804, 821 (N.D. Ill. 2010) (Kennelly, J.) (finding common issues predominated when plaintiff and proposed class were "subject[] to common practices and policies"). Defendants' "common conduct" imposed on the entire class supports certification, despite surface-level differences between class members.

Second, Defendants' evidence again undermines their own premise. Defendants suggest that participation in different programs matters to class certification because different programs had different interactions with Rick Butler. Indeed, Defendants contend that Butler only has direct contact with the Sports Performance Girls Program (Dkt. 87 at 9-10), but the evidence produced through additional discovery following the filing of Defendants' response brief doesn't appear to support that statement. Instead, it appears that Rick Butler at times filled in as a coach for various other teams and programs, and had direct involvement in some way or another in all of the programs included within the class definition. (*See* GLV's Ans. 3d Set Interogg., attached as Exh. A, at 6; Butler's Ans. 3d Set Interogg., attached as Exh. B, at 3 (stating that "Rick may have filled in in areas which he does not typically have a direct role. For example, if a coach was late to a practice or tournament, Rick might have filled in until he/she arrived." ).)

In any event, Rick Butler's involvement with various programs, or any resulting direct

contact class members' children might have had with him, is not the relevant "common conduct" here, despite Defendants' contentions. (*See* Dkt. 87 at 9-10.) Rather, the common conduct at the crux of Plaintiff's claims is Defendants' uniform omission of material information about the truth of Butler's past sexual abuse from all class members, regardless of which program they paid for at GLV. (*See* Dkt. 83-1 at 10-13.) Defendants' discovery responses essentially concede that any supposed differences between purported "subgroups" are irrelevant to this common practice. And, although Defendants identify nine different programs that putative class members could have paid to have their children attend,[1] Defendants concede that the representations made to all class members were materially the same throughout the class period. (*See, e.g.*, Dkt. 83-3 at 3-5 (responding to interrogatory requesting "all written and oral representations" made to class members by producing materials generally representative of all "the types of . . . representations made to proposed class members"); GLV 005–22, attached as Exh. C (marketing materials omitting mention of Butler's history of sexual abuse). Thus, whether Defendants omitted the *truth* of the abuse allegations is clearly a common question that generates a common answer.[2]

Even if Defendants were correct that Butler's direct interaction with only certain players impacts the certification analysis (they're not), then class certification need not be denied. The Court could certify, as an alternative to the class Mullen proposed, a class limited to "individuals

---

[1]    Defendants identify ten categories of programs that fall within the class definition, though there appear to be subcategories within those programs based on age or grade-level: (1) Sports Performance Girls Program; (2) Sports Performance Boys Program; (3) Great Lakes Center Youth Academy; (4) Great Lakes Center Junior High Academy; (5) Summer Camps; (6) Team Camps; (7) Coaches School; (8) Girls Sand Volleyball Program; (9) Boys Sand Volleyball Program; and (10) Clinics and Lessons. (*See* Exh. A, at 1-4.) Defendants' category (7), Coaches School, has adult participants so that necessarily falls outside of the proposed class definition. (*See* Dkt. 83-1 at 6.)

[2]    Defendants also make the undeveloped arguments that whether (i) their deception occurred in the course of trade or commerce as required under the ICFA, and (ii) they engaged in unfair practices in violation of the ICFA create individualized issues. (Dkt. 87 at 24.) Failure to develop an argument results in waiver, *Basheeruddin v. Advocate Health & Hosp. Corp.*, 2016 WL 3520160, at *6 (N.D. Ill. June 27, 2016), but in any case neither contention is valid. As explained in Mullen's Motion, both are common questions capable of resolution through common proof. (*See* Dkt. 83-1 at 13, 19-20.)

who paid for volleyball instruction through the Sports Performance program"—the program with, by Defendants' reckoning, the greatest amount of direct contact with Rick Butler. That narrower class brings into sharp relief the question of whether knowledge of Butler's past is a material factor in class members' decision making. Of course, the Court can also defer the question, or narrow the class definition at a later juncture. *See Streeter v. Sheriff of Cook Cty.*, 256 F.R.D. 609, 611 (N.D. Ill. 2009) ("A district court has broad discretion to certify a class and may modify a proposed class definition if modification will render the definition adequate.").

With respect to Mullen's IPFSA claims, Defendants suggest that these different programs defeat predominance because (i) whether GLV qualifies as a "physical fitness center" under the Act supposedly changes with each program offered, be it a camp, clinic, lesson, etc., (Dkt. 87 at 23); (ii) whether a class member was harmed by a violation of the IPFSA will depend on which program they were involved with, (*id.* at 23-24), and (iii) "whether a contract violated the Act is a question that can only be answered by reviewing each contract program by program." (*Id.* at 24.) None of these attempts to manufacture individualized issues are persuasive.

First, the IPFSA defines "physical fitness center[s]" as "business entit[ies] offering physical fitness services to the public." 815 ILCS 645/2(a). Whether that definition applies to Defendants is a question to be answered down the road, but the capacity in which Defendants offered volleyball instruction to class members—whether that instruction came in the form of camps, clinics, or lessons—did not change from class member to class member. In all instances, GLV was a club that offered training to young athletes.

Second, Defendants have already conceded that only *one* form contract existed, and that was for class members involved in the Sports Performance program. (*See* Dkt. 83-1 at 5 n.3.) Defendants have not produced a single contract for any other program encompassed within the

class definition, and the one they did does not contain any of the required provisions under the IPFSA. (*Id.*) Claims based on form contracts are particularly suitable for class certification. As such, Defendants' contention that violations of the IPFSA would disparately harm class members depending on which program they participated in is, at most, a damages issue that can be resolved in post-trial proceedings. *See, e.g.*, *In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 602 (7th Cir. 2014) (damages need not be common across the class); *Galvan v. NCO Fin. Sys., Inc.*, 2012 WL 3987643, at *8 (N.D. Ill. Sept. 11, 2012) (Kennelly, J.) (determination of damages "is not the sort of individualized inquiry that will make common issues less than predominant or that would render a class action . . . less-than-superior[.]").

## II.    There Are No Other Issues with Representation of the Class.

Defendants next assert that Mullen cannot meet the typicality or adequacy requirements for many of the same reasons, (Dkt. 87 at 12-16), but those attempts to shoehorn imagined differences among class members into the other elements of Rule 23 are equally unavailing.

### A.    Mullen's claims are typical of the class.

#### 1.    *Mullen's claims have the same basic characteristics as those of the class.*

Defendants first appear to suggest that the class is so diverse that no single individual, much less Mullen, can represent it, turning again to the fact that the proposed class encompasses various different programs or "subgroups." (Dkt. 87 at 9-12.) But all Rule 23(a) requires is that the named plaintiffs' claims "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members" and "are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). The typicality requirement is thus satisfied when "the named representative['s] claims have the same essential characteristics as the claims of the class at large." *Arwa Chiro., P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 322 F.R.D.

458, 464 (N.D. Ill. 2017). Here, the essential characteristics of Mullen's claims are the same as those of the class: Defendants failed to comply with Illinois law requiring truthful disclosures to customers of Butler's history of abuse. Evidence produced by Defendants demonstrates that all representations made to the class related to Defendants' volleyball activities were substantially the same throughout the entire class period, and all failed to disclose Rick Butler's history of abuse. (*See* Dkts. 83-5, 83-7.) Nothing more is required under Rule 23.

>    2.    *There are no defenses unique to Mullen that would defeat typicality.*

Defendants also argue that Mullen cannot represent her proposed class because she waived her claim by "enroll[ing] her daughter in a GLV program ***in the middle of this litigation*** and allowed her daughter to play volleyball at GLV under the Butlers' care and control." (Dkt. 87 at 12) (emphasis in original).[3] This is false. Contrary to Defendants' assertions, Mullen did not "enroll[ ] her daughter in a GLV program" or put her daughter "under the Butlers' care and control" by completing a form provided by and returned to her daughter's high school coach. Rather, as a condition of participating in her Batavia High School summer league, Mullen was required by the high school coach to complete a generic form entitled "2018 High School Summer League." (*See* Dkt. 87-4; Mullen Declaration, attached as Exh. D, at ¶ 6.). Summer league games occurred at Defendants' facility (Mullen Decl. ¶ 7), but this summer league was not identified as one of the volleyball programs operated by Defendants in GLV's interrogatory responses, (*see* Exh. A) so it isn't clear why Defendants are convinced that the form is relevant.

Regardless, Defendants haven't even attempted to establish that this supposed "waiver" is enforceable here, and it isn't under Illinois law. The IPFSA applies to this "waiver" because

---

[3]    The irony of Defendants' point in this respect is not lost on Mullen. While claiming Rick Butler has no contact or participation in a large swath of volleyball activities occurring at GLV's building (Dkt. 87 at 9-10), Defendants argue at the same time that signing a boilerplate form required for a high school volleyball summer league puts Mullen's daughter "under the Butlers' care and control." (*Id.* at 12.)

Defendant GLV is a "physical fitness center" offering "physical fitness services," which are defined to include "use of the facilities of a physical fitness center[.]". *See* 815 ILCS 645/2(a)-(b). Just like the contracts for volleyball services at issue in this case, the "waiver" does not include any of the provisions mandated by the IPFSA, *see* 815 ILCS 645/4-6, and violates the IPFSA's prohibition against Defendants engaging in deceptive practices, such as omitting material information regarding Rick Butler's past. *See* 815 ILCS 645/10(a). Any one of these violations of the IPFSA renders the "waiver" void and unenforceable. 815 ILCS 645/9(c), 10(b).

Further, the overbroad language of the "waiver" also renders it unenforceable. Under the section titled "Release Permission to Treat & Emergency Information," the "waiver" is focused entirely on the medical risks inherent in volleyball. It clearly relates only to the possibility that a person may get injured while playing in an *unaffiliated program* on Defendants' premises. (*See* Dkt. 87-4). This language is plainly insufficient to encompass the claims in this case, which have nothing to do with the chance that a player could, for instance, sprain an ankle on the court. *See, e.g.*, *Offord v. Fitness Int'l., LLC*, 2015 IL App (1st) 150879, ¶ 20 ("[E]xculpatory clauses must contain clear, explicit, and unequivocal language referencing the type of activity . . . that it encompasses and for which the plaintiff agrees to relieve the defendant from a duty of care.")[4] In short, Mullen's execution of an unrelated waiver cannot overcome typicality here.

**B.    Mullen and her counsel will adequately represent the class.**

Defendants next argue that Mullen and her counsel cannot adequately represent the class

---

[4]    Mullen previously filed a motion for entry of protective order and issuance of corrective notice related to Defendants' communications with class members (Dkt. 48), which the Court granted, in part. (Dkt. 70.) Defendants supposedly produced the entirety of communications they had with class members regarding this lawsuit, and none of those communications contained this purported "waiver." Had Mullen and her counsel known that Defendants were seeking to secure waivers from class members after the lawsuit had been filed, they would have presented this issue to the Court with a request for remedial action, such as striking the "waivers," requiring issuance of corrective notice, and imposing an injunction against Defendants' further attempts to seek release of claims from potential represented class members.

because (i) Mullen's allegations lack credibility, (ii) Mullen's interests conflict with those of the class and she lacks Article III standing to represent certain absent class members, and (iii) proposed class counsel's advocacy in a separate case creates a conflict with representing the class here. None of these arguments are sufficient.

>    1.    *Defendants have not produced any evidence that undermines Mullen's credibility.*

Defendants' attack on Mullen's credibility, supported by nothing more than a few self-serving text messages, does nothing to seriously challenge Mullen's ability to represent the class. "Serious challenges to typicality and adequacy must be distinguished from petty issues manufactured by defendants to distract the judge from his or her proper focus under Rule 23(a)(3) and (4) on the interests of the class[.]" *CE Design Ltd. v. King Arch. Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011). "For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *Id.* No such evidence exists here. Rather, all Defendants' evidence shows is that one putative class member simply does not like Mullen. (*See* Dkt. 87-6.) That is not enough to find Mullen an inadequate class representative. *See, e.g.*, *Fox v. Riverview Rlty. Ptnrs.*, 2014 WL 1613022, at *8 (N.D. Ill. Apr. 22, 2014) (Kennelly, J.) (declining to disqualify plaintiff as class representative when "defendants provide[d] no evidence that she was lying[.]").

>    2.    *Mullen's interests are aligned with those of the class.*

Citing again to evidence purporting to show dissimilarities in the proposed class, Defendants suggest that Mullen cannot constitutionally represent her proposed class, and, in any event, has interests antagonistic to certain class members.

Defendants' constitutional challenge is misguided because Mullen's adequacy has nothing to do with the constitution. The constitutional framing is understandable, as the Supreme Court has admitted that its own precedent in this area features some loose language. *See Gratz v. Bollinger*, 539 U.S. 244, 263 n.15 (2003). But the Seventh Circuit has been clear that the issue is one rooted in Rule 23, not Article III. *See Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011). Regardless, there is no issue here. Defendants' actions towards each of the purported "subgroups" does not "implicate a significantly different set of concerns" than the conduct Mullen herself challenges. *Gratz*, 539 U.S. at 265. That is sufficient to show that no issue of "Article III standing" prevents Mullen from representing her proposed class. *See Le v. Kohl's Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1113-14 (E.D. Wis. 2016).

Defendants' citations to communications from a handful of parents over the years (and many prior to when the lawsuit was filed) about the quality of Defendants' program also are misguided. (Dkt. 87 at 8-9.) The relevant inquiry is not whether parents feel their children developed skills by participating in Defendants' programs, but simply whether "the named plaintiff's interests [are] aligned with those of the proposed class in such a way that the representative, in pursuing his own claims, will also advance the interest of the class[.]" *Baxter v. Kawaski Motors Corp.*, 259 F.R.D. 336, 342 (N.D. Ill. 2009). Defendants have not identified any scenario where Mullen, in pursuing her own claims, would not also advance the interests of the class. Indeed, the emails relied upon by Defendants underscore Mullen's theory that Defendants concealed material information about Butler's past sexual abuse, as the vast majority of those emails never once reference the abuse allegations and were sent prior to the filing of this suit. In any event, if certain class members disagree with the relief sought then they can simply opt out.

        3.     *Edelson PC is adequate class counsel that will vigorously prosecute this case.*

As their last-ditch attempt, Defendants argue that proposed class counsel is not adequate because Edelson PC has engaged in misconduct in the separate lawsuit, *Murphy-Pierce v. Horvath*, No. 17 L 887, in DuPage County. (Dkt. 87 at 16-17.) This, however, is exactly the type of "petty issue[] manufactured by defendants to distract the judge from his or her proper focus" that courts are warned against. *See Fox*, 2014 WL 1613022, at *9. That case involves a defamation claim brought by the birth mother of the Butlers' adopted son, a woman who formerly played for Rick Butler in high school, against an individual who suggested that Rick was the biological father of the child. Edelson PC represents the defendant in that lawsuit, and in the process of litigating the case, issued a subpoena to depose Rick Butler to, *inter alia*, determine whether his statement was truthful. *See Rivera v. Allstate Ins. Co.*, 140 F. Supp. 3d 722, 730 (N.D. Ill. 2015) ("Truth is an absolute defense to a defamation action."). Neither counsel for the plaintiff in that lawsuit, nor counsel for Rick Butler, has sought to quash the deposition subpoena, moved for a protective order, or taken any other adverse action toward the subpoena. Seeking a key witness's deposition who has relevant information about the subject matter of a lawsuit is not unethical conduct; to the contrary, it is necessarily diligent advocacy and a hallmark of good lawyering. None of the actions raised by Defendants in this case comes close to warranting denial of certification. *See Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489, 495 (7th Cir. 2013) (stating that "[o]nly the most egregious misconduct on the part of [a plaintiff's] lawyer could ever arguably justify denial of class status[.]").

## III. A Class Action Is the Superior Method of Adjudication Despite the Potentially Significant Amount of Damages at Issue.

Finally, Defendants argue that a class action is not the superior method of resolving this

14

dispute, primarily because of the potentially large amount of damages recoverable by each class member. But "[e]ven if each class member does seek substantial damages, class adjudication is still superior." *See Martino v. Ecolab, Inc.*, 2016 WL 614477, at *10 (N.D. Cal. Feb. 16, 2016) (finding class action superior, even involving up to $255,000 in individual damages when the number of class members "suggest[ed] that it would be too burdensome for each of them to file suit individually" and "their claims for relief raise legal questions that overlap considerably."); *Scholes v. Moore*, 150 F.R.D. 133, 138 (N.D. Ill. 1993) (finding class action superior, even where plaintiff and class members suffered large amounts of actual damages). Moreover, the amount of damages at issue will be smaller for those who did not pay for as many programs or seasons of volleyball instruction as others, making "a class action . . . the most practical means for resolving these issues." *See Anderson v. Cornejo*, 199 F.R.D. 228, 243 (N.D. Ill. 2000). That, combined with the benefits of resolving all claims in a single action, generates economies of time and expense and promotes uniformity of decision, without risking procedural unfairness. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 255 (N.D. Ill. 2014) (Kennelly, J.)[5]

## CONCLUSION

The Court should certify the proposed class, appoint Laura Mullen as its proposed representative, and appoint Edelson PC as class counsel under Fed. R. Civ. P. 23(g).

---

[5]    Defendants also make undeveloped arguments that the class is not ascertainable and not sufficiently numerous, (Dkt. 87 at 9-12, 26), but their own brief contradicts these arguments. Defendants' concern about ascertainability seems to be that the class would contain parents, players, and various other family members who had paid for Defendants' volleyball services. (*Id.* at 11.) The very fact that Defendants know who paid for the volleyball services demonstrates that there would not be an ascertainability problem, as Defendants must have consulted records indicating who paid for their services to make such a statement. Defendants' brief also concedes numerosity. (*Id.* at 8 ("class members have paid for approximately 5,000 Illinois summer camps, clinics and/or group lessons and, of the 800 players who registered for tryouts and programs in 2019, nearly 600 are returning customers.").)

Respectfully submitted,

**LAURA MULLEN,** individually and on behalf of
the class of similarly situated individuals,

Dated: December 7, 2018      By: /s/ Eve-Lynn J. Rapp_____
         One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Eve-Lynn J. Rapp
erapp@edelson.com
Christopher L. Dore
cdore@edelson.com
Alfred K. Murray II
amurray@edelson.com
Sydney M. Janzen
sjanzen@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

<u>**CERTIFICATE OF SERVICE**</u>

I, Eve-Lynn J. Rapp, an attorney, hereby certify that on December 7, 2018, I caused to be served the above and foregoing ***Reply in Support of Plaintiff's Motion for Class Certification***, by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system.

/s/ Eve-Lynn J. Rapp

17