# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAURA MULLEN, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) vs. ) ) GLV, INC., RICKY BUTLER, and ) CHERYL BUTLER, ) ) Defendants. ) | Case No. 18 C 1465 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Laura Mullen sued GLV, Inc., also known as the Sports Performance Volleyball Club and Great Lakes Center, and its two co-owners, Rick and Cheryl Butler. Mullen alleges that the defendants committed fraud by failing to disclose and affirmatively concealing that Rick Butler raped and sexually abused at least six underage women in the 1980s. She has asserted claims for common-law fraud, fraudulent concealment, and unjust enrichment, as well as violations of the Illinois Consumer Fraud Act and the Illinois Physical Fitness Services Act. Mullen has moved to certify a class of similarly situated plaintiffs.

## Background

Rick Butler is a volleyball coach in the Chicago suburbs. He and his wife Cheryl co-own GLV, Inc., which does business under the name Sports Performance Volleyball Club and Great Lakes Center. GLV offers a wide variety of camps and clinics in Illinois

and nationwide, and it is known for outstanding athletic achievement and its record of placing participants into top-tier college volleyball programs.

Several women have accused Rick Butler of sexual abuse and rape when he coached them in the 1980s. They also allege that Rick and Cheryl Butler used threats and intimidation to prevent them from speaking out about their experiences. In January 2018, after investigating the allegations, USA Volleyball (the national governing body of volleyball) banned Rick Butler from participating in the sport for life. For his part, Rick Butler has admitted that he had sexual relationships with some of his accusers, but he denies that the women were underage and denies the allegations of rape and abuse.

Laura Mullen brought this case against Rick Butler, Cheryl Butler, and GLV, alleging that their attempts to conceal and failure to disclose Rick Butler's alleged misconduct constitute fraud. Mullen's two daughters participated in volleyball programs at GLV. She brought claims for common-law fraud, fraudulent concealment, and unjust enrichment, as well as unlawful deception under the Illinois Consumer Fraud Act (ICFA) and the Illinois Physical Fitness Services Act (IPFSA). In addition to her fraud claims, Mullen also alleges that GLV's physical fitness contracts fail to comply with certain requirements of the IPFSA, which renders the contracts void and entitles her to statutory damages.

Mullens proposes to represent a class consisting of "[a]ll individuals who, between February 27, 2013, and January 20, 2018, paid money to Defendants for youth volleyball instruction provided by or through GLV in the State of Illinois." Pl.'s Mot. for Class Cert., dkt. no. 83-1, at 6. For the reasons stated below, the Court grants Mullen's motion for class certification but narrows the proposed class definition.

## Discussion

A party seeking class certification must first show that the putative class meets the four requirements of Federal Rule of Civil Procedure 23(a): "numerosity, typicality, commonality, and adequacy of representation." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018). Because Mullen seeks certification under Rule 23(b)(3), she must also show that questions of law or fact common to the class members predominate over individualized issues and that a class action is the superior method of adjudicating the case. Fed. R. Civ. P. 23(b)(3); *Beaton*, 907 F.3d at 1025.

At the class certification stage, the Court does not "adjudicate the case," but rather "select[s] the method best suited to adjudication of the controversy fairly and efficiently." *Amgen, Inc. v. Conn. Retirement Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (internal quotation marks omitted). The Court does not assume the truth of the plaintiff's allegations, however, and makes findings regarding factual disputes as necessary to rule on class certification. *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017).

### A. Ascertainability

At the threshold, the members of a proposed class must be ascertainable, which means that the class must be "defined clearly and based on objective criteria." *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 659 (7th Cir. 2015). The proposed class in this case is clearly defined and does not incorporate impermissible criteria, such as subjective mental states or entitlement to relief on the merits. *See id.* at 659-60. It therefore satisfies the ascertainability requirement.

3

**B.    Numerosity**

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable."  "Although there is no 'magic number' of class members for numerosity purposes, when a class numbers at least 40, joinder will be considered impracticable."  *Hale v. AFNI, Inc.*, 264 F.R.D. 402, 404 (N.D. Ill. 2009).  According to the defendants' written discovery responses, in 2018 alone several thousand individuals participated in GLV's youth volleyball programs in Illinois, which suggests that a comparable number of individuals likely paid to participate.  Because joinder of even a fraction of those individuals would plainly be impracticable, the class is sufficiently numerous.  *Cf. Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014) ("[A] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable . . . .").

**C.    Commonality**

A party moving for class certification must show that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The Supreme Court has clarified that commonality requires "not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  To satisfy Rule 23(a)'s commonality requirement, however, common questions need not predominate; "for the purposes of Rule 23(a)(2) [e]ven a single [common] question will do."  *Id.* at 359 (internal quotation marks omitted) (alterations in original).

The proposed class easily meets the commonality requirement because there

are several key issues regarding liability that are capable of class-wide resolution. Five of the six counts in the complaint depend on allegations of fraud. Each of these claims requires plaintiffs to prove that the defendants deceived the putative class members. *See* 815 Ill. Comp. Stat. 645/10 (IPFSA); *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1000 (7th Cir. 2018) (ICFA); *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 496, 675 N.E.2d 584, 591 (1996) (common-law fraud). Proving deceit in this case necessarily requires Mullen to show that the underlying sexual-abuse allegations against Rick Butler are true, an issue which can be resolved for the class as a whole. In addition, to prevail on a fraud claim, the misrepresentation or omission must be material, which under Illinois law is determined by an objective standard common to the entire class. *See Kitzes v. Home Depot, USA, Inc.*, 374 Ill. App. 3d 1053, 1061, 872 N.E.2d 53, 60-61 (2007).

The remaining claim also depends on class-wide proof. In count two, Mullen alleges that the defendants violated the IPFSA, 815 Ill. Comp. Stat. 645/4, which requires contracts for physical fitness services to comply with certain requirements. The defendants' written discovery responses show that they executed substantially identical contracts with parents and players at all relevant times. *See* Defs.' Answers to Pl.'s Interrogatories, dkt. no. 83-6, at 2-5. Whether that agreement comports with the IPFSA is an essential question of liability shared by the entire class.

The defendants point to several issues they contend cannot be resolved for the class as a whole. Although these arguments are relevant to the predominance element under Rule 23(b)(3), they do not defeat commonality because there is at least one significant issue whose resolution is essential to the claims of entire putative class. *See*

5

*Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) ("[A] court need only find a single common question of law or fact . . . .").

**D.    Typicality**

A named representative's claims are typical of the proposed class if they "arise from the same events or course of conduct that gives rise to the putative class members' claims." *Beaton*, 907 F.3d at 1026. Mullen's claims are typical of the claims of the class as a whole because they all arise from a common course of conduct—that is, the defendants' alleged fraud and their allegedly unlawful contracts for physical fitness services. The defendants' arguments ostensibly challenging the typicality of Mullen's claims are better understood as challenges to Mullen's adequacy as a class representative or the predominance of common issues, which the Court discusses below.

The defendants also argue that Mullen lacks standing to represent the class because her claims differ from those of the class members. As the Seventh Circuit has explained, however, a plaintiff need not satisfy any additional or more stringent standing requirements in order to serve as a class representative. *See Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008) ("[T]he inherent problem with the idea of 'standing to bring a class action' is that it 'conflates the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative.'"); *see also Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011). Instead, a class representative need only meet the ordinary standing requirements of Article III: injury, traceability, and redressability. *Morrison*, 649 F.3d at 536. Because Mullen alleges that she suffered a particularized injury directly traceable to the defendants' conduct that can be redressed

through a judicial decision, she has standing to litigate this case.

**E.     Adequacy of representation**

The defendants argue that Mullen is not an adequate class representative for three reasons: her interests in the litigation conflict with those of the class, she is subject to a unique waiver defense, and she lacks credibility. The defendants also argue that alleged misconduct on the part of one of Mullen's attorneys precludes him from serving as class counsel.

### 1.     Common interest in the litigation

The defendants argue that Mullen's interest in the litigation conflicts with the interests of the putative class members. Conflicts of interest are a bar to class certification because "[a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Riffey v. Rauner*, 873 F.3d 558, 563-63 (7th Cir. 2017), *rev'd on other grounds*, 138 S. Ct. 2708 (2018). But this prohibition on conflicts of interest does not foreclose class certification if there is only "the mere possibility that a trivial level of intra-class conflict may materialize." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013).

The defendants cite evidence that thousands of people have registered for GLV programs since the onset of this litigation, suggesting that they wish to maintain their existing contracts with GLV despite the allegations against Rick Butler. They also point to hundreds of e-mails and other electronic communications that they contend show that the putative class members continue to support the Butlers and participate in GLV programs. This evidence, they contend, shows that Mullen is one of only a few "outlying individuals" who support this litigation. Defs.' Resp. Br., dkt. no. 87, at 9.

7

This argument is unavailing. The vast majority of the electronic communications discuss only the quality of the training at GLV, and most do not reference or even imply awareness of the sexual abuse allegations. And the communications that do refer to those allegations suggest that the individuals who continue to contract with GLV and express support for the Butlers credit their denials of wrongdoing—in other words, they believe the defendant's allegedly fraudulent, ongoing misrepresentations and omissions. *See, e.g.*, Defs.' Ex. A, dkt. no. 89-1, at 641 (Furey E-Mail); *id.* at 650-51 (Malloy E-Mail); *id.* at 660 (Kuizenga E-Mail); *id.* at 666-67 (Schuberth E-Mails); *id.* at 671-72 (Vlietstra E-Mail). By contrast, there is no evidence indicating that these individuals would continue to patronize GLV and the support the Butlers if they were to cease the alleged fraud. As Mullen argues, the fact that some putative class members apparently continue to believe the Butlers' alleged fraud does not suffice to show that they "will actually be harmed by [the] relief" that Mullen seeks. *Spano v. Boeing Co.*, 633 F.3d 574, 587 (7th Cir. 2011). To the extent the defendants' evidence on this issue is relevant at all, therefore, it does not undermine Mullen's adequacy as a named plaintiff.

### 2. Unique defense

The defendants next contend that Mullen is not an adequate class representative because she is subject to a unique defense. "A representative might be inadequate if [s]he is subject to a substantial defense unique to [her]." *Beaton*, 907 F.3d at 1027. The Seventh Circuit has clarified, however, that a named plaintiff is not an inadequate representative when a defendant seeks "to derail legitimate class actions by conjuring up trivial credibility problems or insubstantial defenses to the class representative." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011).

The defendants argue that Mullen is subject to a waiver defense because, after the onset of this litigation, she signed a waiver of all claims against GLV so that her daughter could participate in a volleyball league that took place at a GLV facility. The Court concludes that this defense is insubstantial and therefore presents no bar to class certification. Although Illinois courts enforce unambiguous contracts releasing legal claims, "a release will not be construed to include claims that were not within the contemplation of the parties." *Miller v. Lawrence*, 2016 IL App (1st) 142051, ¶ 26, 61 N.E.3d 990, 997. "In many cases, a release makes clear on its face what claims were within the contemplation of the parties at the time the release was given." *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 21, 799 N.E.2d 756, 762 (2003). When the scope of a release agreement is ambiguous, Illinois courts consult extrinsic evidence to determine which claims it encompasses. *Bank of Commerce v. Hoffman*, 829 F.3d 542, 547 (7th Cir. 2016).

Though seemingly broad, the general release in question is ambiguous in scope. Despite its language putatively releasing all claims against GLV, the waiver document strongly implies that is a prospective exculpatory agreement concerning Mullen's daughter's future participation in a volleyball league, not a backward-looking liability release that would bar Mullen's claims in this suit. The document is entitled "2018 High School Summer League," and the relevant clause appears under the heading "Release Permission to Treat & Emergency Information." Defs.' Ex. D, dkt. no. 87-4. Following an expansive clause releasing "all claims arising out of or connected with Child's participation in any GLV, Inc. Program," the waiver states, "I provide this release because I am mindful that Athletics, Physical Training, and competition can be a

9

dangerous under-taking regardless of how careful or prudent any person, firm or facility might be." *Id.* These statements show that the document plainly contemplates future physical injury to Mullen's daughter in the upcoming volleyball league and that it is narrower in scope than the general liability release clause might imply. These narrower provisions affect the interpretation of the general release language and make the waiver ambiguous on its face. *See Hoffman*, 829 F.3d at 547.

Extrinsic evidence further shows that the parties did not contemplate waiver of Mullen's claims in this case and that the waiver defense is therefore insubstantial. Mullen submitted an affidavit attesting that she signed the waiver so that her daughter could participate in the summer volleyball league. Ex. D to Pl.'s Reply Br. (Mullen Decl.), dkt no. 94-4, at 2. The defendants have pointed to no evidence suggesting that either they or Mullen understood this agreement to encompass her claims in this case. The fact that the waiver itself instructed Mullen to return the document to the team's coach before the summer league started—rather than submit it to GLV—confirms its limited purpose. *See* Defs.' Ex. D, dkt. no. 87-4 ("Please give to your high school coach before the 1st league date or bring it to your first league date and give it to them. Do not send this to the Great Lakes Center . . . .").

The language of the waiver and the context in which Mullen signed it make plain that this waiver is not a liability release at all, but rather an exculpatory clause designed to limit GLV's liability for possible future injuries. Under Illinois law, an exculpatory clause is valid only if it "spell[s] out the intention of the parties with great particularity," and the clause "will not be construed to defeat a claim which is not explicitly covered by [its] terms." *Hamer v. City Segway Tours of Chi., LLC*, 402 Ill. App. 3d 42, 45, 930

10

N.E.2d 578, 581 (2010). The waiver plainly cannot satisfy that stringent requirement with respect to the claims in this case, which are not referenced in the document at all.

Although the Court does not rule out the possibility that the defendants may ultimately prevail on their waiver defense when they litigate its merits, for the purposes of the class certification motion the Court finds that the defense is insufficiently substantial to preclude Mullen from serving as an adequate representative because it "would only minimally, if at all, distract Plaintiff from representing the interests of the broader class." *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 322 F.R.D. 458, 466 (N.D. Ill. 2017).

### 3. Mullen's credibility

The defendants also argue that Mullen is insufficiently credible to serve as a class representative. A named plaintiff who lacks credibility may be inadequate to represent the class, but only "if the evidence is so severely undermining [of] plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *CE Design*, 637 F.3d at 728.

The defendants point to the waiver discussed in the preceding section as evidence that Mullen does not genuinely believe the allegations in the complaint. They argue that Mullen's decision to allow her daughter to participate in a volleyball league hosted at a GLV facility after this litigation began contradicts her claim that she was defrauded by the defendants' alleged misrepresentations. This argument is unpersuasive, however, because the defendants have presented no evidence that the summer league was affiliated with Rick or Cheryl Butler in any way except that the games took place at a GLV facility. The defendants' allegation that Mullen "allowed her

11

daughter to play volleyball at GLV under the Butlers' care and control" is therefore unfounded. Defs.' Resp. Br., dkt. no. 87, at 12.

The defendants also argue that Mullen lied in her declaration about the circumstances of the waiver. They cite discrepancies between her account and that of her daughter's high school volleyball coach, Lori Trippi-Payne, as related in an affidavit. *See* Ex. to Defs.' Sur-Reply Br. (Trippi-Payne Decl.), dkt. no. 99-1. But the differences between their accounts concern insignificant characterizations, such as whether Trippi-Payne "strongly suggested" that Mullen's daughter play in the summer league or merely "invited" her to do so. None of the alleged falsehoods in Mullen's declaration approach the seriousness required to disqualify her from serving as a named plaintiff.

Finally, the defendants cite statements from other putative class members stating that they disbelieve Mullen's allegations or find her untrustworthy. These conclusory statements indicate at most that two class members disbelieve the allegations against Rick Butler and therefore dislike or distrust Mullen. They do not prove that she is lying, however, nor do they suggest she cannot adequately represent the class.

### 4. Edelson's conduct

The defendants' final argument regarding adequacy of representation concerns Mullen's attorney Jay Edelson. Edelson represents the defendant in an unrelated case in which the birth mother of Rick Butler's adopted son sued Edelson's client for defamation because his client allegedly stated that Rick Butler was the child's biological father. Edelson served Butler with a subpoena to take his deposition in that case.

The defendants' argument apparently relies on an implicit claim that Edelson abused the legal process or otherwise committed professional misconduct. This

contention is meritless; Butler's deposition testimony is potentially relevant to the legal issues in that case. The Court finds no basis to conclude that Edelson's conduct was even objectionable, let alone sufficiently wrongful to make him inadequate to serve as class counsel. *See Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 495 (7th Cir. 2013) (noting that misconduct is disqualifying only if it "creates a serious doubt that counsel will represent the class loyally"). The Court further concludes, consistent with previous cases, that the attorneys at Edelson PC are qualified to serve as class counsel. *See, e.g.*, *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 252 (N.D. Ill. 2014).

**F.     Predominance**

"The predominance requirement is met when common questions represent a significant aspect of a case and can be resolved for all members of the class in a single adjudication." *Riffey*, 873 F.3d at 565. The Court reviews the evidence "pragmatically in order to decide whether class-wide resolution would substantially advance the case." *Id.* (internal quotation marks omitted).

As explained above with respect to the commonality element, multiple key aspects of Mullen's claims can be resolved on a class-wide basis. In response, the defendants point to a litany of issues they contend require individualized proof. The Court concludes that common issues do not predominate for the proposed class in light of the differences among GLV's programs, but that Mullen's alternative proposed class satisfies Rule 23(b)(3)'s predominance requirement.

### 1. Reliance and proximate causation

The defendants argue that the elements of reliance and proximate causation for Mullen's fraud claims require individualized proof. First, they contend that Mullen has not shown that the defendants made the allegedly deceptive statements to the class as a whole and that her claims therefore require particularized evidence about what statements they made to various class members at different times. This argument is unconvincing; even if it were true that the defendants' statements, including those published on their website and sent by e-mail, were made to class members at different times, Mullen also alleges that the defendants fraudulently concealed Rick Butler's alleged sexual misconduct. The evidence suggests that they committed this same alleged omission equally with respect to all the putative class members; that is, there is no evidence that they selectively disclosed his alleged wrongdoing. The related question of whether the defendants had an affirmative duty to disclose his alleged misconduct may similarly be resolved for the entire class at once. *See, e.g.*, *Issen v. GSC Enters., Inc.*, 522 F. Supp. 390, 402 (N.D. Ill. 1981) ("Common questions include . . . the duty to disclose[.]").

Second, the defendants argue that reliance and proximate causation are inherently individualized questions that cannot be resolved class-wide. Although the Seventh Circuit has not spoken unequivocally on this question in the context of fraud claims, Judge Robert Dow's opinion in *Rowe v. Bankers Life & Cas. Co.*, No. 09-cv-491, 2012 WL 1068754 (N.D. Ill. Mar. 29, 2012), summarizes the relevant case law and describes the appropriate standard: a court may infer reliance or proximate causation on a class-wide basis when "potential members have been subject to standardized

14

misrepresentations" and there is a "clear and logical connection" between the misrepresentation and the class members' conduct that suggests that no rational class member would have acted as they did absent the misrepresentation. *Id.* at *10-11.

Mullen's claims satisfy this standard, subject to the limitations the Court identifies in the following section. As discussed above, the defendants engaged in the alleged fraudulent concealment with respect to the class as a whole, which would constitute a standardized misrepresentation. There is also a clear and logical connection between this alleged misrepresentation and the class members' reliance. The inference of reliance is straightforward: no reasonable parent would knowingly send their child into the care of an adult who admitted to a pattern of rape and sexual abuse against minors.

The defendants rely on *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006), in which the Seventh Circuit held that the district court did not abuse its discretion by denying class certification in a case alleging a fraudulent failure to disclose the presence of a particular chemical in Diet Coke. The Court explained that the proposed class encompassed people who may have bought Diet Coke despite knowing about the chemical, and even some who bought it *because* of the chemical. *Id.* at 514. The present case presents a considerably stronger argument for class-wide reliance because people generally take more seriously their prerogative to protect their children from sexual predation than they do their desire for a particular soft drink. *Rowe* also furnishes a useful comparison because it concerned consumers' decisions to buy particular annuities for which there was "more than one logical explanation." *Rowe*, 2012 WL 1068754, at *11. Here, by contrast, the seriousness of the allegations against Rick Butler makes an inference of class-wide reliance appropriate.

15

The Court concludes that Mullen's claims would permit a reasonable inference of class-wide reliance, and that the issues of reliance and proximate causation therefore do not constitute individualized questions that defeat predominance.

### 2. Differences among GLV programs

The defendants contend that the proposed class encompasses a disparate variety of programs. In particular, they emphasize that the proposed class would include members who paid for all-boys programs, programs hosted at different facilities, and programs in which Rick Butler has little or no personal involvement. The unstated conclusion of the defendants' argument is that certain legal and factual issues would require separate proof for programs at different levels of remove from Rick Butler.

Although the putative class members share some common issues of law and fact, including those discussed above with respect to the commonality element, the Court concludes that the differences among the GLV programs prevent the class from being "sufficiently cohesive to warrant adjudication by representation." *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 925 (7th Cir. 2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Resolving the issue of materiality, for example, may depend on the nature of the program. Whereas the alleged fraud may have been directly material for a young woman playing on a team coached by Rick Butler, there is good reason to believe that it may have been less salient for (by way of example) a young man participating in an off-site program with which Rick Butler had no direct involvement. The issue of reliance may be similarly context-dependent because the "clear and logical connection required" to sustain the inference is likely weaker for programs in which parents did not anticipate that their child would come in contact with

Butler. *Rowe*, 2012 WL 1068754, at *11. These differences mirror the proposed class *Oshana*, where class certification was rejected because the proposed class included numerous putative members who were indifferent to the alleged fraud. *Oshana*, 472 F.3d at 514. Taken together, the variation among GLV programs would prevent common issues from predominating in the litigation were the class defined as broadly as Mullen proposes.

In response to these concerns, Mullen suggests that the Court could certify a narrower class limited to individuals who paid for volleyball instruction through the Sports Performance program that Rick Butler supervised. This amendment would resolve problems related to the predominance element because the class would be limited to individuals who paid for programs in which Butler was directly involved. Questions of materiality and reliance could therefore be answered on a class-wide basis. For this reason, the Court concludes that only the narrower proposed class satisfies the predominance requirement in light of the differences among GLV programs.

### 3. Statute of limitations

The defendants next argue that this case will require individualized analysis of whether a subset of the putative class members' claims are time-barred. They contend that because the class period is five years and Mullen's statutory claims are subject to a three-year limitations period beginning with the discovery of the alleged fraud, class members who discovered the fraud more than three years would not be entitled to relief. Mullen has alleged fraudulent concealment, however, which "tolls the statute of limitations under the ICFA" for five years. *Karpowicz v. Gen. Motors Corp.*, No. 97 C

17

1390, 1997 WL 285943, at *5 (N.D. Ill. May 23, 1997). If Mullen successfully establishes that the alleged fraudulent concealment tolls the statute of limitations, there will be no need for individualized proof on this question. The Court retains discretion to narrow the class if significant individualized questions regarding the statute of limitations ultimately arise.

### 4. Damages

Finally, the defendants challenge the predominance element by arguing that damages calculations for each class member will require individualized proof. This argument is insufficient to defeat class certification, however, because "[i]t is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 815 (7th Cir. 2012). The Court may elect to bifurcate the case into separate liability and damages phases if it becomes necessary to do so. *See McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 876 (7th Cir. 2015).

## G. Superiority

Finally, the Court concludes that a class action is superior to other methods of adjudicating this case. The predominance of common issues means that "a class action would achieve economies of time, effort, and expense . . . ." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Given that the underlying conduct took place in Illinois and Illinois law governs the suit, it is desirable to concentrate the litigation in this forum. *See* Fed. R. Civ. P. 23(b)(3)(C). And the Court is aware of no parallel litigation already being brought by other putative class members. *See id.* 23(b)(3)(B).

The defendants argue that class certification is inappropriate because the

18

potential damages owed to putative class members are sufficiently large to make individual litigation viable.  As the defendants elsewhere acknowledge, however, the damages vary across the class, and it is possible that a significant number of putative class members will have only a small stake in the outcome.  Class certification in this case would therefore serve a central purpose of the class-action mechanism.  *See Amchem Prods.*, 521 U.S. at 616  (noting that class actions are appropriate when "the amounts at stake for individuals may be so small that separate suits would be impracticable").

The defendants also argue that class certification would make the litigation unmanageable.  All they offer in support, however, is the conclusory explanation that "putative class members have repeatedly paid GLV for volleyball instruction in a variety of forums."  Defs.' Resp. Br., dkt. no. 87, at 25.  It is far from clear that this case in fact presents significant manageability problems.  But even if the Court were to accept the defendants' contention, it conflicts with the "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns."  *Mullins*, 795 F.3d at 659.

**Conclusion**

For the foregoing reasons, the Court grants the plaintiff's motion for class certification [dkt. no. 83] but modifies the proposed class definition.  The Court certifies the following class under Rule 23(b)(3):  all individuals who paid money to the defendants for youth volleyball instruction through the Sports Performance program provided by or through GLV Inc. in the State of Illinois between February 27, 2013 and January 10, 2018.  The Court also appoints the following attorneys as class counsel:

19

Jay Edelson, Eve-Lynn J. Rapp, Christopher L. Dore, Alfred K. Murray II, and Sydney M. Janzen.  The status hearing set for February 12, 2019 is advanced to January 31, 2019 at 9:30 a.m.  Class counsel are directed to provide a draft class notice to defendants' counsel by no later than January 23, 2019, and defendants' counsel are directed to provide comments and objections to class counsel by January 28, 2019.  Counsel are likewise directed to confer regarding the information needed to send notice.  A joint status report regarding these matters is to be filed by January 30, 2019.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  January 18, 2019