# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| LAURA MULLEN, individually and on behalf of all others similarly situated, | Case No. 1:18-cv-1465 |
| *Plaintiff*, | Honorable Matthew F. Kennelly |
| *v.* | |
| GLV, INC., d/b/a SPORTS PERFORMANCE VOLLEYBALL CLUB and GREAT LAKES CENTER, an Illinois corporation, RICKY BUTLER, an individual, and CHERYL BUTLER, an individual, | |
| *Defendants*. | |

## PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT FOR SANCTIONS

## TABLE OF CONTENTS

I.   History of Defendants' Communications with Potential Class Members ................... 1

II.  Communications with Class Members During Notice and Opt-Out Period .............. 3

    A.   *March 19, 2019: Defendants initiated communications immediately after class members began receiving notice* ........................................................................ 4

    B.   *The Facebook Page* ...................................................................................... 8

    C.   *The March 29, 2019 hearing* ......................................................................... 10

    D.   *Actions taken after the March 29, 2019 hearing* .............................................. 10

III. The Conduct of Defendants' and Their Counsel Warrants Sanctions ..................... 11

CONCLUSION .................................................................................................... 15

<u>**TABLE OF AUTHORITIES**</u>

**United States Supreme Court Cases**

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981) ........................................................................................ 2, 11

**United States Appellate Court Cases**

*Kliner v. First Nat'l Bank of Atlanta*,
    751 F.2d 1193 (11th Cir. 1985) ...................................................................... 12

*Williams v. Chartwell Fin. Servs., Ltd.*,
    204 F.3d 748 (7th Cir. 2000) .......................................................................... 12

**United States District Court Cases**

*Blanchard v. EdgeMark Fin. Corp.*,
    175 F.R.D. 293 (N.D. Ill. 1997) ................................................................. 12, 13

*Burrow v. Sybaris Clubs Int'l, Inc.*,
    No. 13-cv-2342, 2014 WL 5310525 (N.D. Ill. Oct. 17, 2014) ........................ 12

*Georgine v. Amchem Products, Inc.*,
    160 F.R.D. 478 (E.D. Pa. 1995) ..................................................................... 12

*Montgomery v. Aetna Plywood, Inc.*,
    No. 95 C 3193, 1996 WL 189347 (N.D. Ill. Apr. 16, 1996) ........................... 13

*Piekarski v. Amedisys Ill., LLC*,
    4 F. Supp. 3d 952 (N.D. Ill. 2013) ................................................................ 12

*Romano v. SLS Residential, Inc.*,
    253 F.R.D. 292 (S.D.N.Y. 2008) ............................................................... 12-13

**Rules and Statutory Provisions**

Ill. R. Prof'l Conduct 3.3(a)(1) ..................................................................... 13

Ill. R. Prof'l Conduct 4.2 ............................................................................... 13

Fed. R. Civ. P 23 ...................................................................................... 11, 12

**Other Authorities**

Manual for Complex Litigation, § 21.33 (4th ed. 2004) ................................. 13

Newberg on Class Actions, § 19.6 (5th ed. 2011) ........................................................................ 13

Defendants and their counsel should be sanctioned pursuant to Federal Rule of Civil Procedure 23(d) for their continuous improper interference with class notice by encouraging opt-outs and for misrepresenting the nature and extent of their interference to the Court. In addition, Ms. D'Ambrose should be separately sanctioned for communicating with represented parties in violation of her ethical obligations and for misrepresenting the nature and extent of the interference to the Court. To remedy the harm caused by these improper communications, and to deter such conduct going forward, Plaintiff Mullen requests that the Court: (1) order corrective notice at Defendants' expense to those class members who submitted opt-outs; (2) give those class members the opportunity to revoke their opt-out following the entry of judgment; (3) require Defendants to pay a fine to the Court and pay for class counsel's fees (which will be donated to a charity helping victims of sexual abuse) for the unnecessary time devoted to this issue; and (4) requiring Ms. D'Ambrose to complete 8 hours of CLE credits on ethics in class actions in addition to her MCLE obligations.

## I.     History of Defendants' Communications with Potential Class Members.

Defendants' and their counsel have engaged in misleading and improper communications with class members since the beginning of this case. On April 17, 2018, at the first appearance before this Court, Plaintiff apprised the Court that Defendants, and possibly their counsel, were improperly communicating with class members to disparage the lawsuit and claim it is frivolous. (*See* Transcript of Proceedings April 17, 2018, Exhibit 1 at 4; dkt. 17, Ex. 3 at ¶ 5.) The Court allowed discovery about Defendants' communications with potential class members. (Ex. 1, at 11.)

Later, Plaintiff moved to compel more fulsome discovery responses and for a corrective notice based on partial responses received to discovery. (Dkt. 48.) Plaintiff presented evidence

that Defendants and their counsel have repeatedly communicated with putative class members

about the lawsuit in a non-neutral and misleading manner that was meant to deter class

participation and confuse class members about the validity of the suit. (*See* dkt. 48 at 2.) These

false, threating, or misleading communications with putative class members consisted of:

- Threats of retaliation by countersuing Mullen and potential witnesses for defamation. (Dkt. 48-3 at 6, 8.)

- Misrepresentations to putative class members that Defendants had proof Plaintiff knows the allegations in her complaint are false. (Dkt. 48 at 6.)

- Communications to class members claiming the lawsuit is premised on false information, without identifying what specific allegations are false. (Dkt. 48 at 8.)

- Communications misleading putative class members about the nature of the lawsuit, which included a statement issued by defense counsel that the suit was filed by a "disgruntled parent [concerning] misrepresentations related to contracts and business practices." (Dkt. 48 at 8.)

On July 3, 2018, the Court granted Plaintiff's Motion to Compel, in part, ordering

Defendants to conduct a more exhaustive search for communications with putative class

members. (Dkt. 70; Transcript of Proceedings July 3, 2018, Exhibit 2 at 24-25.) Toward the end

of the July 3 hearing, the Court cautioned Defendants about the consequences for misleading

communications:

> I'm just going to say you don't want to be in a position where I find – and I'm not making a finding one way or another, in fact – where I find that somebody has made some sort of misleading disclosure, and not misleading because it gives your position but misleading because it's misleading. Because once that happens, there's all sorts of bad things that can very easily happen under *Gulf Oil v. Bernard* and all the cases that come after that. And that's not a position that people want to be in.

(Ex. 2 at 26.)[1]

---

[1]     The Court ultimately declined to take action with respect to Plaintiff's request for corrective notice: "I'm not going to rule on that motion one or another. I'm just going to take it under advisement at this point because I want to advance the ball in this case, no puns intended." (Ex. 2 at 26-27.)

Undeterred by the Court's recommendation to proceed with caution, Defendants continued with their strategy to defend the case based on incomplete and misleading information distributed to potential class members. Defendants' original affirmative defenses attached an exhibit that contained many documents from an online publication Cheryl previously e-mailed to numerous people called "Our Story" that contains misleading rebuttals to the allegations against Rick. (*See* dkt. 76-1.) Defendants' amended affirmative defenses re-attached the same exhibit with documents from "Our Story" providing incomplete and misleading information about the allegations. (*See* dkt. 79-1.)

After the Court certified the class, Defendants' proposals for the class notice process were designed to aid their plan of encouraging opt-outs. Defendants insisted that class members be allowed to opt out of the lawsuit by e-mail. (Dkt. 107 at ¶¶ 10, 13.) After the Court rejected Defendants' request to allow class members to opt out via e-mail, dkt. 111, Defendants requested the Court "reconsider" its decision and allow e-mail opt outs, as well as argued there should be an opt-out form with a pre-addressed, pre-stamped envelope in the letter notice. (Dkt. 112-1.) Defendants didn't hide their intentions, stating: "[i]t is no secret that Defendants are expecting a large number of class members to opt out of this litigation based on the communications received from dozens of individuals who have expressed their support for Defendants, as well as their disdain for this litigation." (*Id.* at ¶ 11.) The Court denied the request for e-mail notice or an opt-out form and instructed Ms. D'Ambrose to inform Defendants that their history of emailing class members contributed to the Court's denial of their request for e-mail opt-out or form. (Dkt. 115.)

## II.    Communications with Class Members During Notice and Opt-Out Period.

Defendants and Ms. D'Ambrose were undeterred by the Court's warnings. As soon as notice was issued to the class, Defendants directly communicated with class members or

encouraged others to communicate with class members in order to maximize the number of opt outs believing that it would make the case go away. Much of Defendants' efforts occurred with defense counsel's knowledge and, in some instances, her participation. Worse still, some communications occurred after the Court made clear there would be consequences if Defendants were encouraging opt-outs.

A. *March 19, 2019: Defendants initiated communications immediately after class members began receiving notice.*

Within an hour after class members began to receive notice by e-mail, Defendants began to encourage opt outs. On March 19, 2019, the Class Administrator published the class website at 9:21 a.m., and sent class notice via e-mail in two waves later that day beginning at 12:02 p.m. (Dkt. 116 at ¶ 1.) Class member Michael Canulli, a lawyer, received his e-mailed notice in the Class Administrator's first wave of e-mails at 12:02 p.m. (*See* Group Exhibit 3 at DefProd00029.) At 12:18 p.m., class member Canulli forwarded his e-mail to Rick Butler and commented about his intention to opt out. (Grp. Ex. 3 at DefProd00029.) Four minutes later, Rick forwarded the e-mail to Cheryl and Ms. D'Ambrose. (Grp. Ex. 3 at DefProd00029.) At 12:40 p.m.—a mere 38 minutes after the first set of class members received their e-mailed notice—Cheryl Butler e-mailed Defendants' staff: "[t]he class action information has been emailed out and they will also receive a letter in the mail. I wanted you to be aware of what it looks like as we are starting to get phone calls about it and I am sure others will be asking as they receive it. **Opt out is crucial!**" (Grp. Ex. 3 at DefProd00029 (emphasis added).) Clearly, this was not the first time the Butlers had discussed their plan to encourage opt-outs with their staff.

After receiving Cheryl's March 19th e-mail, Troy Gilb—Defendants' Boys' Director and Vice-President of Operations—initiated and engaged in a number of improper communications with class members encouraging class members to opt-out:

a.  On March 19, 2019, Troy responded to a class member's e-mail asking about the lawsuit: "If there is a groundswell of parents that opt out of the lawsuit, which I think will happen, then it most likely will get dismissed. If you have any questions please let me know." (*See* Grp. Ex. 3 at DefProd00224.)

b.  Consistent with Cheryl's instruction, on March 20, 2019 at 5:08 p.m., Troy sent an e-mail to over 300 addresses (*id*. at DefProd00287)[2] regarding the class notice procedures and with an emphasis on opting out, which Defendants have acknowledged "was improper and should not have been sent." (Dkt. 130 at ¶ 7.)

c.  On March 21, 2019 at 1:19 p.m., Troy responded to a class member's e-mail criticizing the lawsuit and advising of his intention to opt out: "Thank you very much for the show of support!! We all know what is going on with the lawsuit and I hope that with enough voices of support that this whole thing will be thrown out! We are doing all we can to fight this and we have great defense council on our side! Thanks again." (Grp. Ex. 3 at DefProd00249.)

     i.  The next day, Troy forwarded his e-mail exchange with a class member to Ms. D'Ambrose's personal e-mail address. (*Id.*) On March 22, 2019 at 1:33 p.m., Ms. D'Ambrose responded to Troy— from her personal e-mail address—that she "emailed the class administrator to let them know to send a notice to the new address." (Grp. Ex. 3 at DefProd00247.)[3]

d.  On March 21, 2019 at 4:44 p.m., Troy responded to a class member's e-mail inquiry about notice wherein he copied and pasted the Class Administrator's e-mail notice and advised the class member: "[i]f you have any questions, please let me know." (Grp. Ex. 3 at DefProd00230.)

     i.  On March 23, 2019 at 12:10 p.m., Troy sent the same e-mail to another class member. (Grp. Ex. 3 at DefProd00324.)

e.  On March 26, 2019, Troy responded to a class member's e-mail advising they received class notice in the mail: "[e]veryone knows what this lawsuit is about and I know there are a lot of parents opting out. I hope that with

---

[2]     A redacted copy of the e-mail addresses contained on this document will be filed with this Motion. An un-redacted copy will be provided to the Court if requested.

[3]     As the Court is aware, this e-mail demonstrated that Ms. D'Ambrose either made a knowing misrepresentation to the Court on March 29th regarding the extent of Defendants' communications with class members or was grossly negligent in making such statements to the Court.

[*sic*] all the opt outs will have a positive impact on the judge." (Grp. Ex. 3 at DefProd00235.)

Defendants engaged in other inappropriate communications with class members, and in several instances, demonstrated their knowledge of unauthorized e-mails encouraging opt outs to class members from parents or alumni:

a. On March 19, 2019 at 5:23 p.m., Jill Clark—a class member—sent an e-mail addressed to "Volleyball Mom and Dad," which advised recipients to check their e-mail for class notice and offered information about how to opt out of the lawsuit. (Grp. Ex. 3 at DefSuppResp 3-4.)[4]

    i. On March 19, 2019 at 10:41 p.m., a class member e-mailed Rick and Cheryl about Jill Clark's e-mail: "[w]ho is this lady? Friend or Foe? Just ignore this or do the opt out?" (Grp. Ex. 3 at DefSuppResp 3.) Four minutes later, Rick responded to the class member's e-mail: "[Jill Clark] is a great friend! I cannot comment other than say if you opt out you are not involved in the suit and if you stay in you become a member of the class." (*Id.*)

b. Also on March 19, 2019 at 7:00 p.m. class member Jerry Smith sent an e-mail to ten (10) addresses attempting to provide information regarding the class notice procedure, with an emphasis on opting out. (Grp. Ex. 3 at DefSuppResp 15.)

    i. On March 20, 2019 at 2:59 p.m., Cheryl responded to a class member asking about Jerry Smith's e-mail: "I can't really respond to this but I do know that several alumni and current parents are trying to help us in anyway [*sic*] possible in regards to this." (Grp. Ex. 3 at DefProd00051.)

c. On March 26, 2019 at 7:39 p.m., class members Tom and Carolyn McLaughlin e-mailed a number of other class members emphasizing opting out: "If you would like to be part of this class action suit, you don't have to do anything. You are automatically included. If you choose <u>not to be in the lawsuit</u>, you must respond by letter only. An e-mail will not be accepted." (Grp. Ex. 3 at DefSuppResp 13-14 (emphasis in original).)

---

[4]     In a subsequent exchange on March 19th, Jill Clark e-mailed Jerry Haggerty to make it clear that other parents had communicated with class members about opt out procedures: "I sent out all my emails. Laura Davis sent hers." (Grp. Ex. 3 at DefSuppResp 1-2.) Rick and Cheryl were aware of this exchange and the creation of the Facebook Page, which caused Rick to respond to the class member: "[i]t'll be interesting to see how many likes this gets." (*Id.*)

    i.    Within an hour of receiving this e-mail, class member Azari Bahar e-mailed Rick, Cheryl, Troy and another volleyball coach alerting them to the McLaughlin's e-mail and complaints from class members about receiving unsolicited e-mails encouraging opt outs: "Wanted to share this in case you'd like to send to your attorneys." (Grp. Ex. 3 at DefSuppResp 42.)

    d.    On March 20, 2019 at 3:08 p.m., a class member e-mailed Cheryl that the class notice was in the junk folder, and Cheryl responded: "Many parents have contacted us about finding it in their spam folder…Our attorney attempted to file a motion in court about it being 2019 and who owns an envelope and stamps [emojis] and why can't it just be an email response to OPT out but the judge denied our request!" (Grp. Ex. 3 at DefProd00038.)

Other improper communications occurred via text message. On an unknown date, Cheryl responded to a Facebook message from class member Jennifer Marcotte-Burke complaining about the opt out procedure: "Yes, if they don't mail response in they are joining Mullen. Our attorney attempted to have an email option since it is 2019…but judge said no." (Grp. Ex. 3 at DefSuppResp 26.) Cheryl also responded to a text message from class member Terese Papa Surges who indicated her intention to opt out: "Thank you for opting out and telling them why. Thank you!!!!!!!" (Grp. Ex. 3 at DefSuppResp 28.) On March 20, 2019, in a team group message between a GLV coach, Jennifer Jennings and (presumably) the class member parents of her team, lets the members of the group chat know what parents need to do in order to opt out. (Grp. Ex. 3 at DefSuppResp 41.) By focusing on opt outs and showering praise on class members who opt-out, Defendants were hoping word would spread and others would do the same.

Defendants and Ms. D'Ambrose knew that such communications were improper. During this same time, a different volleyball club sent an e-mail to its members that incorrectly referenced the class definition in the Complaint (which included those who had attended Defendants' volleyball camps), but included a link to the class notice providing the correct information. (Dkt. 116 at ¶ 7.) On March 24, 2019, Ms. D'Ambrose sent the volleyball club a

cease and desist letter on the premise that inaccurate communications—even by third parties unassociated with the litigants—improperly interferes with the Court-ordered notice process. (Exhibit 4.) Ms. D'Ambrose's letter states "[t]he legal system has specific rules and procedures in place which govern the class notification process to ensure that those individuals whose rights may be affected received accurate information about the lawsuit. Your communications have absolutely no place in that process." (*Id*. at 1.) Ms. D'Ambrose also told the recipient that "[y]our actions may ultimately undermine the work of the Class Action Administrator, who was appointed to govern the class notice and opt out process," and added "your actions have great potential to confuse and mislead those who received your message." (*Id.* at 1-2.)

**B.     The Facebook Page.**

On March 19, 2019—the same day e-mail notice was first sent to class members—an anonymous Facebook page entitled "Parents Against the Sports Performance Class Action Lawsuit," https://facebook.com/pg/NoSPVBLawSuit/ (the "Facebook Page"), was erected with the stated purpose of encouraging Class Members to fill out an opt out form linked to the page. (Dkt. 116 at ¶ 2.) The opt-out form linked to the Facebook Page is a Google Doc, similar to the one that Defendants unsuccessfully campaigned for in their motion to amend class notice. (*Compare* dkt. 116 at Ex. 2 *with* dkt. 112 at Ex. 1.)

As it turned out, the Facebook Page was not created by happenstance. The Facebook Page was created on March 19, 2019 at 5:02 p.m.—merely 5 hours after e-mail notices began—by class member Marianne Sedacki Drenthe. (*See* Exhibit 5 (Facebook subpoena response).) Shortly before the Facebook Page was created, Cheryl Butler exchanged several e-mails with Ms. Drenthe. On March 19, 2019 at 4:11 p.m., class member Drenthe e-mailed Rick and Cheryl advising that she will be opting out of the class "[a]s soon as I get home from work". (Grp. Ex. 3

at DefSuppResp 20.) Five minutes later, at 4:16 p.m., Cheryl responded to Ms. Drenthe: "Thank you so MUCH!!!!!!!! Sorry I can't say more we just can't at this time legally. Once this is over we will have a lot to say but for no[w] THANK YOU!!!" (*Id.*) At 4:17 p.m., Cheryl forwarded Ms. Drenthe's e-mail to Ms. D'Ambrose's personal e-mail address. (Grp. Ex. 3 at DefProd00089.) Within an hour of Cheryl's e-mail exchange with Ms. Drenthe, the Facebook Page was created.

Defendants subsequently encouraged class members to utilize the Facebook Page. On March 19 at 9:50 p.m., Rick received a forwarded e-mail from class member Jerry Haggerty discussing the Facebook Page, as well as additional communications that parents were having with other class members. (Grp. Ex. 3 at DefProd00044.) The next morning, on March 20, 2019 at 7:37 a.m., Rick responded to class member Haggerty and copied Cheryl: "[i]t'll be interesting to see how many likes this gets." (*Id.*) At least seven of Defendants' coaches liked the Facebook Page. (*See* dkt. 116 at ¶ 5; dkt. 123 at 3-4.) By liking the Facebook Page, these coaches not only voiced their approval of opting out, but also suggested to their current players and parents what was expected of them.

Additionally, Cheryl received a text message asking if an e-mail the class member received about opt outs and the Facebook Page were legitimate: "[another parent] just forwarded me something from Tiffany Clark stating that there is a facebook page to go to where I can opt out of the class action suit, and if 100 people sign it, the suit will eventually die out against Rick." (Grp. Ex. 3 at DefSuppResp 27.) Cheryl replied to the class member: "[t]he Facebook [Page] has a letter you can print out that parents set up to make it easy. You still have to mail it in. Parents against the Sports Performance Class Action lawsuit is FB page. Thank you!" (*Id.*)

9

**C.      The March 29, 2019 hearing.**

On March 27, 2019, class counsel notified the Court of Defendants' various communications with class members and the Facebook Page. (Dkt. 116.) The Court ordered both Parties to appear on March 29, 2019. (Dkt. 117.) At the hearing, the Court stated: "[w]hat's important to me is whether a party to the case is communicating or causing others to communicate with class members in a way other than the only way that it's appropriate to do that, which his through the notice that I approved after it was litigated." (*See* Transcript of Proceedings March 29, 2019, Exhibit 6, at 8-9.) Defense counsel initially said: "defendants aren't necessarily – we're not behind this, we're not encouraging it…" (*id.* at 8), and later responded to the Court's comment with: "…every email I've seen them respond with is, I'm very sorry, I can't talk about this right now, you know, thank you, something along those lines." (*Id.* 6, at 9.) The Court concluded the hearing by advising "everybody ought to either mind their Ps and Qs or continue to mind their Ps and Qs, whichever the case may be." (*Id.* at 13.) These statements, as the Court later observed, were false as Troy Gilb's e-mail to 300 class members encouraging opt-outs was also sent to Ms. D'Ambrose before the March 29th hearing. (*See supra*, n.3.)

**D.      Actions taken after the March 29, 2019 hearing.**

On April 11, 2019, Defendants produced responses to Plaintiff's Third Set of Requests to Produce, and attached 40 pages of documents. Class counsel believed the responses were deficient and subsequently held a meet-and-confer with defense counsel. On May 3, 2019, Defendants produced Supplemental Responses to Plaintiff's Third Set of Requests to Produce, which included 53 pages of documents and several hundred native files (several of which were previously available, but not produced). Even after the March 29, 2019 status hearing,

Defendants and their counsel continued to engage in improper communications with class members:

  a. On April 11, 2019 at 12:33 p.m., GLV employee Claudine Dale—Defendants' Office Administrator—sent an e-mail to two class members stressing opt-out: "[y]ou may opt out by sending a letter to include the following information. Please make sure to say on the letter that you are '**Opting Out of the Class**' and "**that you want to be excluded from the lawsuit.**" (Grp. Ex. 3 at DefSuppResp 53 (emphasis in original).)

  b. On April 11, 2019 at 12:01 p.m., Ms. D'Ambrose e-mailed class member Bahar Azari directly, subject line "Butler Class Action Follow-Up," asking class member Azari to forward the e-mails from other class members who did not want to receive the unsolicited e-mail sent by the McLaughlins. (Grp. Ex. 3 at DefProd00070.) It is unclear what Ms. D'Ambrose intended to do with the names of class members that didn't want their emails shared or didn't want to be told to opt-out.

      i. Within hours, class member Azari forwarded Ms. D'Ambrose the requested e-mails. (*See* Grp. Ex. 3 at DefSuppResp 43-49.) Ms. D'Ambrose responded to class member Azari: "Thank you!" (Grp. Ex. 3 at DefSuppResp 50.)

  c. On April 15, 2019, Cheryl responded to an e-mail from a class member, where she expressed her preference for opting out and encouraged the class member to speak with defense counsel: "[i]f you opt out then you would not be suing Rick, myself and Sports Performance. I have copied our attorney on this so if you need any further information she can assist you." (Grp. Ex. 3 at DefProd00054 (copying Ms. D'Ambrose on her personal email address.)

      i. After the class member said he intended to opt out, Cheryl responded, copying Ms. D'Ambrose, "Joe, thank you." (*Id.*)

## III.   The Conduct of Defendants' and Their Counsel Warrants Sanctions.

The Court should enter sanctions against Defendants and their counsel based on the clear record evidencing their interference with the Court-ordered class notice procedures. Rule 23 provides district courts with broad authority to regulate communications between defendants and class members in order to prevent abuse of the class action process. *See Gulf Oil Co. v. Bernard*,

452 U.S. 89, 100 (1981); *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 759 (7th Cir.

2000). "Courts are concerned particularly with parties that make misrepresentations to putative

class members or have attempted to discourage class members from participating in the class.

*Burrow v. Sybaris Clubs Int'l, Inc.*, No. 13-cv-2342, 2014 WL 5310525, at *2 (N.D. Ill. Oct. 17,

2014) (internal quotations omitted); *see also Piekarski v. Amedisys Ill., LLC*, 4 F. Supp. 3d 952,

954-55 (N.D. Ill. 2013) (noting that "where there is an ongoing business . . . relationship between

the class and the class opponent, communications may be inherently coercive.") "Soliciting

exclusion requests . . . . reduces the effectiveness of the 23(b)(3) class action for no reason

except to undermine the purposes of the rule." *Kliner v. First Nat'l Bank of Atlanta*, 751 F.2d

1193, 1202 (11th Cir. 1985).

      The party seeking relief bears the burden of establishing a clear record of misleading,

coercive, or abusive communications with the class that threaten the proper course of the

litigation. *Burrow*, 2014 WL 5310525, at *2. Sanctions can be entered against both defendants

and their counsel and have included corrective notice, allowing opt-outs to be voidable,

monetary penalties, the award of attorneys' fees, and the disqualification of counsel. *See, e.g.*,

*Blanchard v. EdgeMark Fin. Corp.*, 175 F.R.D. 293, 303 (N.D. Ill. 1997); *Kliner*, 751 F.2d at

1199; *Georgine v. Amchem Products, Inc.*, 160 F.R.D. 478, 502 (E.D. Pa. 1995) (requiring that

corrective notice be issued to class members who opted out after receiving misleading

communications about the lawsuit, and allowing those who opted out a second opportunity to do

so); *Romano v. SLS Residential, Inc.*, 253 F.R.D. 292, 294 (S.D.N.Y. 2008) (sanctioning

defendants for "engag[ing] in abusive, deliberate, and improper conduct during the opt-out

period by communicating false and misleading information to the putative plaintiff class

members and their parents and families, in a concerted attempt to scare them into opting out of

12

th[e] lawsuit" by voiding all opt-outs, issuing corrective notice, and requiring defendants to pay "severe monetary sanctions" of \$35,000 to the court for "violat[ing] the integrity of the judicial process.").

In addition, "once a class action has been certified, as has this case, counsel for the plaintiff class is considered to be the representative of all class members who have not chosen to be represented by other counsel and the ethical prohibitions against counsel for one party directly communicating with the other party are in force." *Montgomery v. Aetna Plywood, Inc.*, No. 95 C 3193, 1996 WL 189347, at *6 (N.D. Ill. Apr. 16, 1996); *see also* Manual for Complex Litigation, § 21.33 (4th ed. 2004) ("[o]nce a class has been certified, the rules governing communications apply as though each class member is a client of class counsel. Defendants' attorneys, and defendants acting in collaboration with their attorneys, may only communicate through class counsel with class members on matters regarding the litigation."; Newberg on Class Actions, § 19.6 (5th ed. 2011); Ill. R. Prof'l Conduct 4.2 (2010) ("A lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.") Counsel are also under an obligation to not misrepresent the facts to the court or at least to correct such statements. Ill. R. Prof'l Conduct 3.3(a)(1) ("A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.") "In ascertaining the appropriate sanctions to impose for the ethical violation committed by [an] [a]ttorney . . , the Court considers the seriousness of the violation and whether the violation was intentional, in addition to considering the nature and extent of the prejudice to the plaintiff class arising from the violation. *Blanchard*, 175 F.R.D. at 304.

On at least eighteen (18) occasions, Defendants Butler, Cheryl Butler, their agents acting at the Butlers' direction (Troy Gilb, Claudine Dale, and Jennifer Jennings), and their attorney, Ms. D'Ambrose, communicated directly with members of the certified class with the purpose of encouraging the filing of opt outs. As Ms. D'Ambrose's e-mail to the other volleyball club demonstrates, Defendants made their misleading communications knowing that they were improper. Worse still, after this Court's words of caution at the outset of this case, after Defendants request for opt outs via e-mail was rejected, and after the Court warned of the consequences of soliciting opt outs, Defendants communications with class members continued.

There is also direct and strong circumstantial evidence that Defendants encouraged or directed others to solicit opt outs. The Butlers communicated with several individuals who solicited opt outs immediately prior to the solicitations occurring. Several class members complained about receiving opt out solicitations from parents they did not know and on e-mail addresses that were only provided to the Defendants, making it likely that Defendants provided the e-mail lists for solicitation. (Grp. Ex. 3 at DefProd 210; DefSuppResp 3-4, 13-15, 42, 43-50.) Cheryl also communicated with the creator of the Facebook Page used to encourage opt outs as it was being made, and the Butlers made clear their support for the Page almost immediately after it was created. Further, several coaches also publicly "liked" or "shared" the Facebook Page so the message to their players and parents would be clear. As Plaintiff alleges, Rick's personal influence with colleges provides Defendants with substantial latitude to place players (or keeping them from being placed, if they so choose) in top volleyball programs. (*See* dkt. 1 at ¶¶ 15-19.) Thus, the coach who determines how much game time a player gets, what team they make, or their standing in Defendants' eyes (friend or foe) wants you to opt-out of this class action.

Regrettably, Ms. D'Ambrose was made aware of these improper communications with certified class members while they were occurring. Not only did she do nothing to stop it (assuming she didn't out-right advise her clients it was permissible), but she misrepresented her knowledge and the nature of the communications to the Court, and initially provided incomplete discovery responses showing improper communications until after end of the opt-out period. Worse still, Ms. D'Ambrose herself reached out to a certified class member to discuss the solicitation e-mails and the request information about class members parents who were complaining about being solicited. Having drafted a cease-and-desist letter on the subject, she clearly knew her actions were wrong.

In the end, Defendants' campaign to solicit opt-outs was successful. Based on the 1,389 unique mailing addresses for class members, there were 332 timely requests for exclusion (24%). (*See* KCC Exclusion Report, attached as Ex. 7.) Many, if not all, of these class members were contacted outside of the court-approved notice process. Many parents of current players undoubtedly felt coerced into opting out by Defendants and their proxies in order to stay in good standing with Defendants. Corrective notice can inform the class that the solicitations were improper. Allowing opt-out to be voidable can cure any coercion felt by the class. A fine to the Court and ordering the paying of fees will both punish Defendants and deter others from engaging in similar behavior. Finally, ordering Ms. D'Ambrose to complete additional CLE hours on ethics in class actions will hopefully prevent further ethical lapses in this and other cases.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court order: (1) Defendants to provide corrective notice at their cost; (2) any opt outs be voidable at the class member's election

following entry of judgment; (3) that Danielle D'Ambrose attend a 8 hours continuing legal education course on procedures and ethics in class actions; (4) monetary sanctions in the form of a fine payable to the Court (in an amount to be determined by the Court) and awarding class counsel reasonable costs and attorneys' fees (donated to victims of sexual abuse) accrued in the course of conducting discovery into this issue and bringing it to the Court's attention (in the amount of $xxxxx)[5]; and (5) for any further relief this Court deems just and proper.

Respectfully submitted,

**LAURA MULLEN,** individually and on behalf of a class of similarly situated individuals,

Dated: May 25, 2019

By: /s/ Alfred K. Murray II
One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Eve-Lynn J. Rapp
erapp@edelson.com
Christopher L. Dore
cdore@edelson.com
Alfred K. Murray II
amurray@edelson.com
Sydney M. Janzen
sjanzen@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff and the Class*

---

[5]     *See* Declaration of Jay Edelson, in support of Plaintiff's request for attorneys' fees, costs and expenses, attached as Exhibit 8.

## <u>CERTIFICATE OF SERVICE</u>

I, <u>Alfred K. Murray II</u>, an attorney, certify that on May 25, 2019 I caused the above and foregoing ***Plaintiff's Motion and Memorandum in Support for Sanctions*** to be served by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

/s/_____Alfred K. Murray II_____

17