IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| LAURA MULLEN, individually and on behalf of all others similarly situated,<br><br>              *Plaintiff,*<br><br>v.<br><br>GLV, INC., d/b/a SPORTS PERFORMANCE VOLLEYBALL CLUB and GREAT LAKES CENTER, an Illinois corporation, RICKY BUTLER, an individual, and CHERYL BUTLER, an individual,<br><br>              *Defendants.* | Case No. 18-cv-1465<br><br>Honorable Matthew F. Kennelly |

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS**

Dated: September 18, 2019

Danielle D'Ambrose
D'AMBROSE P.C.
500 North Michigan Avenue, Suite 600
Chicago, IL 60611
(312) 396-4121
ARDC No. 6323782

Attorney for Defendants
*Rick Butler, Cheryl Butler, and
GLV, Inc. d/b/a Sports Performance Volleyball Club*

## ARGUMENT

In response to a summary judgment motion the plaintiff must "set forth" by affidavit or other evidence "specific facts," which for purposes of the summary judgment motion will be taken to be true. Fed.Rule Civ.Proc. 56(e). Outstandingly, Mullen never states what specific facts she actually believes are true. In support of her Response, Plaintiff submits transcripts, court documents, letters, and eight affidavits which are largely inadmissible and, even if they would be admitted, contain substantial discrepancies[1] from which to deduce Mullen's version of "the truth." (Dkt. #171, Ex. 2-7) Mullen simply claims that she "believes the women, and further contends that Butler's refusal to acknowledge the truth of his past abusive behavior is fraudulent." (Dkt. #171, p. 1) The evidence used to support Mullen's argument is inadmissible based on inadequate authentications and hearsay. Fed.R.Evid. 801(c), 901(b), The declarations she submits are replete with conclusory allegations and conclusions of law which fail to provide the specific facts required to withstand summary judgment. See *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Additionally, Plaintiff has improperly reversed the core factual basis of her claims in the Response to Defendants' Motion, where she introduces a new and contradictory theory of factual liability for the first time in this litigation. "[A] plaintiff typically may not offer new and significantly different contentions at the summary judgment stage." *Aranda v. Caribbean Cruise Line, Inc.*, 179 F.Supp.3d 817, 829 (N.D. Ill. 2016) (citing *Whitaker v. Milwaukee Cty.*, 772 F.3d 802, 808 (7th Cir. 2014)). Because Plaintiff's new factual theory is inapposite to the claims set forth in her Complaint and subsequent filings in this proceeding, her action was "an impermissible

---

[1] For example, Plaintiff's Complaint alleges that Rick Butler "dictated" that Christine attend Western Michigan for college, where he was a coach, and then, "for reasons unknown, by the time Christine got there, Butler had been let go. (Dkt. #1, ¶ 79) Christine quickly transferred to University of Southern California in an attempt to get further away from him." Now, in Plaintiff's Response, she states that Butler left Western Michigan to coach at the University of Southern California, undermining the notion that Christine's transfer there was "an attempt to get away from him" as Mullen claims. (Dkt. #171, p. 1)

1

attempt to amend" her Complaint and summary judgment should be granted in favor of the Defendants on all class claims. *Whitaker*, 772 F.3d at 808.

Now, Laura Mullen, who has absolutely zero personal knowledge or experience to evaluate what information qualifies as the truth, urges the Court to prohibit Rick from defending himself against these allegations and force him to admit to her version of these decades-old events. (Dkt. #171, p. 20-21) It is clear that Plaintiff is not seeking "the truth" based on the conduct she has deemed "deceptive." *Id*. Instead, she is attempting to prohibit Butler from doing anything that could even raise the implication that the allegations against him are false, which includes providing anyone truthful information that casts doubt on the allegations.

In her Response, Mullen claims that the Defendants' deceitful conduct included: (1) denying and/or discrediting the accusers, (2) referring to the stories as "allegations," (3) calling an accusation a "false statement," (4) raising the implication that "documents relating to the allegations" could show another "side of the story," (5) stating that there exists "another side to the story," and (6) collecting positive testimonials from parents about their experiences in various GLV programs. *Id.* Mullen contends there still exists a genuine issue of fact about whether this is the kind of deceptive conduct that gives rise to a duty to tell the truth. She is wrong. *See Mednick v. Precor, Inc.*, 320 F.R.D. 140, 148 (N.D. Ill. 2017) (noting that whether conduct was deceptive is "established by applying a reasonable person standard"). Rather, the idea that any of those actions could support a fraud claim is a frightening notion that should be denied outright.

Lastly, Defendants overcome the remaining contentions set forth in Mullen's Response, proving Defendants are entitled to summary judgment because: (1) that Mullen and the class have not alleged a legally sufficient injury and actual damages, (2) that Mullen and the class cannot prove they were deceived as required by the ICFA, and (3) that Mullen and the class fail to

establish a contract claim under the IPFSA. As such, this Court should grant summary judgment in favor of Defendants on all claims.

### I. PLAINTIFF'S RESPONSE IS SUPPORTED BY INADMISSIBLE, IRRELEVANT, AND CONCLUSORY EVIDENCE

Notwithstanding the numerous arguments in Plaintiff's Response which are not supported by any citations to the record or relevant law. Plaintiff submitted, in conjunction with her Response to Defendants' Motion for Summary Judgment, numerous Exhibits which are inadmissible in whole or in part. A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The evidence supporting the allegations must represent admissible evidence. *Malec*, 191 F.R.D. at 585 ("a hearsay statement made during a deposition does not constitute adequate evidentiary support for a factual proposition"). Therefore, Exhibits 2-15 should be deemed inadmissible, and summary judgment should be granted in favor of Defendants.

#### A. MULLEN'S DECLARATION FAILS TO PROVIDE SPECIFIC FACTS TO EVIDENCE HER CLAIMS

Mullen's declaration[2] is insufficient, as it fails to provide any specific facts from which Defendants or the Court could deduce the elements of fraud, and Mullen's answers to discovery are similarly evasive. Under Federal Rule of Civil Procedure 56(e), supporting and opposing affidavits must show that the affiant is competent to testify to the matters at hand, and the affidavit must contain facts that would be admissible at trial. Markel v. Board of Regents of the Univ. of

---

[2] The Seventh Circuit has stated that where a party fails to move to strike a defective affidavit or particular portions thereof, the party has waived any objections based on its defects, and the Court may consider the affidavit. Friedel v. Madison, 832 F.2d 965, 971 n. 4 (7th Cir.1987). Defendants move to strike

3

Wisconsin, 276 F.3d 906, 912 (7th Cir. 2002). Specifically, Mullen's affidavit makes the conclusory assertions that she did not know "the full extent of the allegations" or "the truth" until after her daughters left the Sports Performance program. (Dkt #171-19, ¶¶ 11-13, 17) Yet, Mullen does not state any specific allegation to which she refers, and never indicates what she means by the "full extent" or the "truth." *Id*.

Mullen states that the Defendants did not disclose "the findings from the 1995 Illinois Department of Children and Family Services (DCFS) investigation and hearing" to her, without any facts such as the subject of the investigation, the findings, or the evidence. Similarly, Mullen states that the Defendants did not disclose "the findings from the 1995 United States Volleyball Association (USAV) investigation and hearing" to her, without any specific facts such as the subject of the investigation, the findings, or the evidence. In her declaration, Mullen had managed to reach the legal and factual conclusion that Rick Butler "verbally and emotionally abused" her daughter without providing any specific facts or evidence upon which she basis this claim, Additionally, this statement constitutes inadmissible hearsay. Fed.R.Evid. 801(c).

Mullen further states that she paid for "travel to the 2017 AAU National Championships" and does not state how much money was paid to whom, or what the "travel" cost included. Mullen does not include any facts upon which she based her conclusion that Rick Butler "was not present for the clinics" attended by her daughter in September 2017 at the Great Lakes Center. Similarly, Mullen does not include any facts upon which she based her conclusion that Rick Butler "was not present for the High School Summer League" at the Great Lakes Center in July of 2018 that her daughter attended. Mullen does not state the facts upon which she bases her conclusion that "the sexual abuse allegations against Rick Butler were true." The objective of Rule 56(e) "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an

4

affidavit." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the allegations in Mullen's affidavit should be deemed inadmissible.

      **B.    THE ADDITIONAL DECLARATIONS FAIL TO PROVIDE SPECIFIC FACTS TO SUPPORT THE CONCLUSORY ALLEGATIONS AND CONCLUSIONS OF LAW UPON WHICH PLAINTIFF RELIES**

Plaintiff submits eight affidavits which only serve to provide evidence of what she, apparently, contends is the "truth" about the allegations of sexual abuse made against Rick Butler. (Ex. 2-7, 13) Notwithstanding that this evidence establishes that her allegations appear to conflict with prior testimony, is largely inadmissible and fails to provide the evidentiary support to withstand summary judgment for Defendants. Rule 56(e) requires, in addition to personal knowledge, that affidavits "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(e)(1). Specifically, the declarations submitted by the Plaintiff contain various legal and factual conclusions alleging the use of force, threats, rape, grooming, physical abuse, sexual abuse, emotional abuse, and verbal abuse. Many of these conclusions are not supported by facts which set forth the specific facts required to withstand summary judgment. Fed.Rule Civ.Proc. 56(e). (Dkt. 171-6, ¶ ¶ 3-18; Dkt. 171-7, ¶ ¶ 3-18; Dkt. 171-8, ¶ ¶ 3-12; Dkt. 171-8, ¶ ¶ 3-12; Dkt. 171-9, ¶ ¶ 1-3, 6-10; Dkt. 171-10, ¶ ¶ 4-9; Dkt. 171-17) Even the few "factual" examples of the alleged abuse are void of specifics that show the witness is competent to testify to the matters at hand, and the affidavit must contain facts that would be admissible at trial. *Markel v. Board of Regents of the Univ. of Wisconsin*, 276 F.3d 906, 912 (7th Cir. 2002). Therefore, they are insufficient factual evidence to support Mullen's claims.

      **C.    THE DOCUMENTS UPON WHICH PLAINTIFF RELIES ARE INSUFFICIENT ON THE BASIS OF ADMISSIBILITY AND HEARSAY**

*Exhibit 8* purports to be a May 16, 1994 letter or written report from Kathleen Rogness to the Illinois Department of Children and Family Services ("DCFS"), and it contains inadmissible

5

hearsay. Fed.R.Evid. 801(c). The letter is written on plain paper with no letterhead, and it bears no signature. It lacks foundation because Plaintiff has failed to submit an affidavit from Rogness stating that she wrote the letter. Moreover, Exhibit 8 is not authenticated by having been produced in discovery, and Murray's affidavit does not lay a foundation for Exhibit 8. Murray neither wrote the letter nor witnessed Rogness do so. Murray's affidavit that Exhibit 8 is a "true and correct copy" does not provide authentication. Exhibit 8 is therefore inadmissible.

*Exhibit 9* purports to be Excerpts from the USA Volleyball Association ("USAV") Ethics and Eligibility Committee hearing transcript. This exhibit is not properly authenticated, because Plaintiff has not alleged it was published by the USAV as a public record, it does not identify the name of the hearing or trial, the finders of fact, and often it does not identify the person providing the testimony. Nor can it be authenticated by reviewing its contents because large portions of the document are missing entirely, selected portions do not sufficiently establish the context and content of the testimony, certain pages are missing names identifying the witness. *See* Fed.R.Evid. 901(b)(4). Murray's affidavit that Exhibit 9 is a "true and correct copy" does not provide authentication because Murray lacks personal knowledge of the USA Volleyball proceedings. *See* Fed.R.Evid. 901(b)(1). It is thus inadmissible.

*Exhibit 10* purports to be Excerpts from the December 28, 1995 DCFS Recommendation and Opinion of Administrative Law Judge. This exhibit is not properly authenticated, because Plaintiff has not alleged it published by the DCFS as a public record and Plaintiff has not identified where she obtained the document. Further, it cannot be authenticated by reviewing its contents because the context of the statements contained therein are unclear, as there are only selected portions submitted by the Plaintiff. *See* Fed.R.Evid. 901(b)(4). Murray's affidavit that Exhibit 10

is a "true and correct copy" does not provide authentication because Murray lacks personal knowledge of the 1995 DCFS proceedings. *See* Fed.R.Evid. 901(b)(1). It is thus inadmissible.

  ***Exhibit 11*** purports to be an August 2, 1995 letter from David B. Flinn to Lea Wagner enclosing the USAV Ethics and Eligibility Committee hearing's decision about Rick Butler. This exhibit is not properly authenticated, and it contains inadmissible hearsay. Fed.R.Evid.901(b), 801(c). The letter is written on plain paper with no letterhead, and it bears no signature. It lacks foundation because Plaintiff has failed to submit an affidavit from Flinn stating that he wrote the letter, and Lea Wagner has passed away. Moreover, Exhibit 11 is not authenticated by having been produced in discovery, and Murray's affidavit does not lay a foundation for Exhibit 11. Murray neither wrote the letter nor witnessed Flinn do so. Murray's affidavit that Exhibit 11 is a "true and correct copy" does not provide authentication. Exhibit 11 is therefore inadmissible.

  ***Exhibit 12*** purports to be a July 31, 1995 letter from Rebecca Howard stating the decision about Rick Butler reached by the USAV Ethics and Eligibility Committee. This exhibit is not properly authenticated, and it contains inadmissible hearsay. Fed.R.Evid. 901(b), 801(c). The letter is written on plain paper with no letterhead, and does not show to whom the document is addressed or even where the document begins. It lacks foundation because Plaintiff has failed to submit an affidavit from Howard stating that she wrote the memo. Murray's affidavit does not lay a foundation for Exhibit 8. Murray neither wrote the memo nor witnessed Howard do so. Moreover, Exhibit 12 is not authenticated by having been produced in discovery, and Murray's affidavit that Exhibit 12 is a "true and correct copy" does not provide authentication because Murray lacks personal knowledge to do so, and Plaintiff has not identified who produced it. Exhibit 12 is therefore inadmissible.

Lastly, ***Exhibit 14*** purports to be documents published to Facebook by attorney Emily Swanson.[3] Exhibit 14 is inadmissible on the basis of authentication and hearsay. Fed.R.Evid. 901(b), 801(c). While her Motion claims that Mullen "came across the documents published to Facebook, by Swanson," Mullen's evidence does not support this claim. Therefore, it cannot be used for non-hearsay purposes. Fed.R.Evid. 801(c). Furthermore, even if it could, it lacks foundation because Plaintiff has failed to submit an affidavit from Swanson stating that it reflected the Facebook posts she made. Fed.R.Evid. 901(b). Moreover, Murray's affidavit that Exhibit 11 is a "true and correct copy" does not provide proper foundation that he had personal knowledge of the posts being created or viewed. *Id*. Therefore, it is inadmissible.

In the event this Court determines any partial exhibit to be admissible, Defendants also invoke Federal Rule of Evidence 106, which requires the full document to be admitted in order to avoid the "misleading impression created by taking matters out of context." *See* Fed.R.Evid. 106 advisory committee's note.

### II. PLAINTIFF IMPROPERLY ARGUES A NEW FACTUAL BASIS OF RECOVERY JUSTIFYING SUMMARY JUDGMENT ON ALL CLASS CLAIMS

In the Complaint and throughout the course of this litigation, Plaintiff claimed that she, along with members of the class, sent their daughters to the Sports Performance program "without knowledge of Butler's history of sexual abuse." (Dkt. #1, ¶ 4) Now, in her Response to Defendants' Motion for Summary Judgment, Mullen now admits that she, "of course, was aware generally of the allegations against Butler" and that "[f]rom the perspective of Mullen, and everyone in the class, there were allegations on the one hand, and denials and other similar conduct from the defendants on the other." (Dkt. #171, p. 11, 25)

---

[3] Plaintiff fabricates the claim that "Swanson's efforts (along with efforts by Sarah Powers to drum up awareness of her story) prompted the third meeting [with Defendants]. This final meeting was held with only a small group of parents." (Dkt. 171, p. 10) This contention in not supported by the evidence referenced by Plaintiff.

8

The new theory advanced in the Response is a complete reversal of the most crucial fact underlying her claims of fraud: that Mullen and the Class did not know about the allegations of sexual abuse against Rick Butler when they allowed their children to play for the Sports Performance program. (Dkt. 1, ¶ 4) Notably, Plaintiff has never disclosed what information was known to her and when she first learned of the information. She similarly fails to ever state what disclosures she specifically seeks. Instead, she makes vague demands that Defendants disclose "the truth," which has allowed her to morph her claims into whatever argument is necessary to survive each stage in this case.

Now, Plaintiff claims that everyone "generally" knew about the allegations, but that "[c]ertain key facts," such as the DCFS and USAV findings, were non-public and resulted in an "unsettled public record." (Dkt. #171, p. 7) However, DCFS and USAV findings do not amount to a determination that the allegations as set forth in the Complaint are, in fact, true.[4] Despite acknowledging that Butler is, in fact, innocent in the eyes of the law, Plaintiff seems to believe that, because the witnesses were found to be credible under the standards of the DCFS and USAV, it is now inaccurate to refer to the accusations as "allegations." Importantly, "discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). Therefore, Mullen demands that only "[a] statement by Defendants either admitting the 'allegations' were true or acknowledging that certain charges against Butler had been deemed credible" would publicly available information provide proper disclosures. However, "[t]he discovery rule does not allow a plaintiff to wait until the

---

[4] The legal age of consent in Illinois was 16 years old until 1988, and any provisions pertaining to "a position of trust, authority, or supervision in relation to the victim" did not exist until 1988. See P.A. 85-651, § 1, eff. Jan. 1, 1988 (changing the legal age of consent in Illinois from 16 years old to 17 years old; see also Illinois Pattern Jury Instructions, Criminal, No. 11.59, (last visited April 17, 2018) http://www.illinoiscourts.gov/CircuitCourt/CriminalJuryInstructions/Criminal_Jury_Instructions.pdf.

9

defendant admits it has caused plaintiff's damage," and it "places the burden on plaintiffs to inquire as to the existence of a cause of action." *Carey v. Kerr–McGee Chem. Corp.*, 999 F.Supp. 1109, 1116 (N.D.Ill.1998).

The record establishes that substantial details of the allegations, including the DCFS and USAV proceedings, are publicly available on the internet from multiple sources. "[I]n addition to actual knowledge of the fraud, once a reasonably diligent party is in a position that they should have sufficient knowledge or information to have actually discovered the fraud, they are charged with discovery" 37 Am.Jur.2d, Fraud and Deceit § 347, p. 354 (2001 and Supp.2009). Summary Judgment should be granted for Defendants on all class claims, as it clear that no reasonable person could find that Mullen was deceived when she was aware of the allegations and had access to nearly every detail in her Complaint, if not actual knowledge, and did nothing. *Mednick v. Precor, Inc.*, 320 F.R.D. 140, 148 (N.D. Ill. 2017)

Lastly, Plaintiff's theory obviates her request for injunctive relief. ICFA specifically provides that "the Court may grant injunctive relief where appropriate." 815 ILCS 505/10a(c). It does not matter that courts are "split on whether a plaintiff who… is unlikely to purchase (or affirmatively disavows the intent to purchase) the defendant's product in the future nevertheless maintains standing to pursue injunctive relief under state consumer protection statutes" because Plaintiff now claims that the class has knowledge of the information. *Leiner v. Johnson & Johnson Consumer Cos., Inc.*, 215 F. Supp. 3d 670, 672 (N.D. Ill. 2016).

### III. PLAINTIFF'S ALLEGED INJURY AND ACTUAL DAMAGES ARE INSUFFICIENT AS A MATTER OF LAW

In their Motion for Summary Judgment, Defendants set forth three arguments which establish Mullen's alleged injury fails to satisfy the injury-in-fact requirement of Article III and the actual damages element required for every cause of action in her Complaint. At numerous

points in her Response, Plaintiff either misconstrues the arguments set forth in the Motion for Summary Judgment, presents arguments lacking any factual or legal citations, or entirely misses the point of Defendants' Motion, even providing rebuttals to arguments that were never made by Defendants. For example, after arguing that she suffered damages because she removed her daughters from the program early, Plaintiff later declares that Defendants do not contest the damages element of any claim. (Dkt. #171, p. 12) Plaintiff has repeatedly denied seeking damages based on any abuse of her daughters, and claims that her theory of actual damages is repayment of all fees she would not have paid but for the alleged fraud.

Mullen alleges that the injury she claims to have suffered is sufficient to establish standing because "courts hold that when plaintiffs would not have purchased, or would have paid less for, products or services had they known certain concealed facts, they have suffered a cognizable financial injury, and have standing." (Dkt. #171, p. 15) Mullen misses the point. When plaintiffs allege that they would have paid less for a products or services had they known certain concealed facts, courts do typically hold that an economic injury was sufficiently pled. However, Mullen makes no such claim. Plaintiff does not allege that the volleyball program failed to perform, or failed to provide her with the normal benefits expected from a volleyball program. The two cases Plaintiff cites to support her theory each involved a plaintiff claiming to have overpaid for the product as a result of the defendant's fraudulent conduct. *Terrazino v. Wal-Mart Stores*, Inc., 335 F. Supp. 3d 1074, 1084-85 (N.D. Ill. 2018); *Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am., Inc.*, 24 F. Supp. 3d 750, 756 (N.D. Ill. 2014). In contrast, Defendants' Motion provides at least eight cases rejecting theories of injury analogous Mullen's claim in this matter.

Defendants' third argument is that Mullen's subjective allegation that the allegations are unacceptable to her is not an injury-in-fact sufficient to confer constitutional standing. Plaintiff

11

incorrectly argues that the entirety of this argument derives from *Laird v. Tatum*, which she contends is about ripeness as opposed to standing. 408 U.S. 1 (1972). Defendants' argument was further supported by a reference to *Koronthaly v. L'Oreal USA, Inc.*, where the Third Circuit held that a "plaintiff's subjective allegation that the trace amounts of lead in the lipsticks were unacceptable to her was not an injury-in-fact sufficient to confer constitutional standing." 374 Fed.Appx. 257, 258 (3d Cir. 2010). Therefore, Mullen provides no valid rebuttal to this point. Further, Defendants argue that, because Mullen was aware of the allegations in at least 2015, she cannot establish a causal connection between the injury and the challenged action of the Defendants as required by Article III. Mullen similarly provides no rebuttal to this point.

### IV. PLAINTIFF CANNOT ESTABLISH A PRIVATE CAUSE OF ACTION UNDER THE ICFA BECAUSE SHE WAS NOT DECEIVED BY ANY ACT OF THE DEFENDANTS

Defendants have established that Plaintiff cannot bring an unfair practices claim because, to prove the element of proximate causation in a private cause of action brought under the ICFA, "a plaintiff must allege that he was, in some manner, deceived." *Oliveira*, 267 Ill.Dec. 14, 776 N.E.2d at 164. Where "there is no material issue regarding the matter or only one conclusion is clearly evident" from the undisputed facts, a court may find lack of proximate causation as a matter of law. *Williams v. University of Chicago Hosps.*, 179 Ill.2d 80, 84 (1997). It is clearly evident that Plaintiff and the class could not have suffered an injury which was proximately caused by Defendants when she knew of the information she claims they withheld. Therefore, summary judgment is should be granted.

### V. SUMMARY JUDGMENT IS PROPER ON THE IPFSA CONTRACT CLAIMS BECAUSE THE ACT DOES NOT APPLY TO GLV TRYOUTS AND EXCLUDES THE DAMAGE ALLEGED BY PLAINTIFF

First, Plaintiff's contends that the Illinois Physical Fitness Services Act applies to Sports Performance Volleyball Club, which does not offer services to the public and is thus excluded from the requirements of Act. Plaintiff argues that the Act governs *all* contracts for physical fitness services, and that "[t]he text of the Act does not require these contracts to be between customers and physical fitness centers at all." (Dkt. #171, p. 32) This argument is undermined by the provisions and requirements of the Act which Plaintiff claims were violated:

> A copy of the written contract shall be given to the customer at the time the customer signs the contract. **Physical fitness centers** shall maintain original copies of all contracts for services for as long as such contracts are in effect and for a period of 3 years thereafter. 815 ILCS 645/4
>
> Every contract for physical fitness services shall provide that notice of cancellation pursuant to subsection (a) of this Section shall be made in writing and delivered by certified or registered mail to the ***center*[5]** at the address specified in the contract. All refunds to which a customer or his estate is entitled shall be made within 30 days of receipt by the ***center*** of the cancellation notice. 815 ILCS 645/6

The text necessarily requires a physical fitness center to be a party to every contract for physical fitness services by referencing the duties of the center to be included in the contract. Case law clearly establishes that private clubs, such as Sports Performance Volleyball Club is not open to the public, as memberships are exclusive and cannot be purchased without first receiving an offer to join. *Davis v. Attic Club*, 56 Ill.App.3d 58, 62 (1st Dist. 1977) (holding a private club, "by definition, is not in the public domain"). In the same way that a country club accepts applications to be evaluated for membership and a private school holds entrance exams to be evaluated for acceptance, the Sports Performance Volleyball Club requires a tryout to evaluate potential members prior to offering membership in the club. *See id.* There is no question that tryouts are similarly exempt from the requirements of the Act. If not, then each individual who attends a two-

---

[5] "'Physical fitness center' or 'center' means any person or business entity offering physical fitness services to the public." 815 ILCS 645/2(a).

13

hour tryout would be required to sign a contract in compliance with IPFSA requirements, which would be almost entirely inapplicable to the scenario. For example, it would include a provision stating that the contract may be cancelled by the customer within 3 business days after the contract is signed (i.e. the contract could be cancelled after the tryout takes place and is fully performed). Further, Plaintiff falsely claims that the Sports Performance Volleyball Club holds "clinics" which are open to the public, and attempts to support this contention with testimony of GLV employees which does nothing to evidence the claim. (Dkt. #171, p. 33). Therefore, summary judgment is warranted because Sports Performance is a private club exempt from its provisions.

Plaintiff challenges the actual damages argument with a lengthy and misguided discussion of cases where plaintiffs sued for restitution on a void contract. Mullen's reliance on *Transamerica* as authority "to obtain restitution of consideration paid" for a violation of the IPFSA is severely misguided, as it precisely illustrates why her argument should be rejected as a matter of law. In *TransAmerica*, the Supreme Court analyzed whether a private cause of action for damages existed for alleged violations of two different sections of the Investment Advisors Act, which does not expressly provide for a private cause of action in any section of the statute. Section 215 of the Act provided that contracts which violated the act shall be void. *TransAmerica Mortg. Advisors, Inc. v. Lewis,* 444 U.S. 11, 18-19 (1979). The Court reasoned that, because Congress altered certain civil liabilities when it declared that specific contracts were void under the Act, it could be implied that "the customary legal incidents of voidness would follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution." *Id.*

However, when evaluating whether a private claim for restitution could be brought for violating Section 206, the analysis was much different. Section 206 broadly proscribes fraudulent

14

practices by investment advisers and, unlike Section 215, "Congress expressly provided both judicial and administrative means for enforcing compliance with § 206." *Id.* Because of this, the Court held that "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *Id.* The Court continued that "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Id.*

Like Section 206, the IPFSA provides an express civil remedy for violating the Act: "Any customer injured by a violation of this Act may bring an action for the recovery of damages. Judgment may be entered for 3 times the amount at which the actual damages are assessed, plus costs and reasonable attorneys' fees." 815 ILCS 645/11. This remedy was created by the legislature contemporaneously with the passage of the Act and, by its terms, is limited to certain individuals. Mullen's theory that she can recover on claim in restitution for an alleged violation of the Act is significantly broader than the remedy that was expressly stated in the statute. It is clear that the intent was to limit recovery under the Act to those who were injured by a violation of this Act and incurred actual damages.

"Damages differs from restitution in that damages is measured by the plaintiff's loss; restitution is measured by the defendant's unjust gain." *Midwest Medical Records Association, Inc. v. Brown,* 2018 IL App (1st) 163230 (Feb 1, 2018). Considering the holding in *TransAmerica*, it is clear that the legislature intended for recovery pursuant to the IPFSA be limited to individuals who were "injured by a violation of this Act" and suffered "actual damages." *TransAmerica,* 444 U.S. at 19. If not, the statute would have simply declared all contracts in violation of its provisions void. Therefore, summary judgment is warranted on Mullen's IPFSA claim.

## **CONCLUSION**

WHEREFORE, Defendants respectfully request that this Court enter an Order granting Defendants' Motion for Summary Judgment on All Claims and granting any other relief that this Court deems just and proper.

Date: September 18, 2019

                                              Respectfully Submitted,
                                              GLV, INC., RICK BUTLER, and
                                              CHERYL BUTLER

                                      By: */s/ Danielle D'Ambrose*
                                              One of Their Attorneys

Danielle D'Ambrose
D'AMBROSE P.C.
500 North Michigan Avenue, Suite 600
Chicago, IL 60611
P: (312) 396-4121 | F: (312) 574-0924
Danielle@DambrosePC.com
ARDC No. 6323782

**CERTIFICATE OF DELIVERY**

The undersigned, an attorney, certifies that pursuant to Section X (E) of the General Order on Electronic Case Filing for the Northern District of Illinois, service of the above and foregoing document on all attorneys of record was accomplished through the Court's Electronic Notice for Registrants on September 18, 2019.

*/s/ Danielle D'Ambrose*