**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LAURA MULLEN, individually and on behalf of others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 18 C 1465** |
| **GLV, INC., RICK BUTLER, and CHERYL BUTLER,** | ) ) ) ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Between 2013 and 2017, Laura Mullen enrolled her two daughters in volleyball training programs offered by GLV, Inc., a youth sports club in Illinois. She has sued GLV and its owners, Rick and Cheryl Butler, on behalf of a class of similarly situated persons, alleging that the defendants fraudulently concealed and misrepresented Rick Butler's history of sexual abuse of several girls he coached in the 1980s. Mullen contends that she and other class members would not have enrolled their children in GLV's programs had they known about this abuse. The defendants have moved for summary judgment on all claims.

**Factual Background**

GLV, Inc. is an Illinois volleyball club that offers training programs and camps for youth athletes. It has a reputation for helping its players land elite college volleyball scholarships and placements. GLV's founder and owner, Rick Butler, is a coach on its

staff.  His wife, Cheryl Butler, manages the business.  To avoid confusion, this opinion refers to the Butlers by their first names.

In the mid-1990s, Rick's former business partner reported to the Illinois Department of Children and Family Services (DCFS) that Rick had sexually abused several youth athletes he coached in the 1980s.  DCFS investigated and held a hearing on these allegations.  In 1995, it issued a decision finding that Rick had sexual relationships with underage volleyball athletes and that his conduct constituted child abuse.

That same year, the Ethics and Eligibility Committee for USA Volleyball (USAV), the national governing body for the sport, also held a hearing on allegations of Rick's sexual abuse of girls.  The USAV Committee issued a decision concluding that Rick had sex with several youth volleyball players—between the ages of fifteen and seventeen—while he was their coach.  It therefore banned Rick from USAV for life.

News outlets nationwide reported the DCFS and USAV decisions against Rick and detailed his accusers' allegations of sexual abuse.  Several of these articles were also posted online, including a 1995 *Los Angeles Times* article, a 1996 article in *Chicago* magazine, and a 1996 article in *The Spokesman-Review*, a publication based in Washington state.

In 2000, USAV granted Butler a conditional membership that required him to commit, in writing, not to coach underage girls at any USAV-sanctioned lessons, events, programs, or clubs.  That restriction did not apply, however, to volleyball events or programs that were not sponsored by USAV.  Rick continued to coach youth volleyball and is currently a master coach at GLV.

Even after Rick received his conditional membership from USAV in 2000, national media outlets continued to report on his history of sexual abuse. For example, a 2001 episode of the ESPN television show *Outside the Lines* covered the allegations against Rick and featured an interview with one of Rick's accusers.

Between 2013 and 2017, Mullen—the representative of the plaintiff class and the only named plaintiff in this suit—enrolled her two underage daughters in several of GLV's programs. In her interrogatory answers and an affidavit, Mullen stated the following. She paid thousands of dollars to GLV for youth volleyball instruction. Sometime between 2012 and 2013—prior to enrolling her daughters in the programs—Mullen reviewed GLV's website and Facebook page, which represented that it offered "the finest coaching, teaching, and training," had "extremely qualified staff," and was "superior to [its] competitors." Around that time, Mullen also met with a GLV coach and recruiting coordinator, Erik Vogt, who made similar representations about GLV's programs. According to Mullen, the defendants did not at that time disclose Rick's history of sexually abusing underage girls.

Meanwhile, the reporting on Rick's past abuse and the related DCFS and USAV findings against him continued. In July 2015, an article in the *Outside the Lines* section of ESPN.com reported on the DCFS and USAV decisions and noted that Rick had been banned from coaching by USAV. It included links to the DCFS decision and to other news stories discussing Rick's sexual abuse of young girls.

The day ESPN issued the article, a user on the web forum Volleytalk started a thread titled "Rick Butler on Outside The Lines" and posted a link to it. In the following days, several other users commented on this thread and posted links to many other

3

news articles about Rick's sexual abuse of youth volleyball players. Less than two weeks later, Mullen commented on this thread to note that GLV's programs were more cost effective than other programs in the area. She subsequently enrolled both of her daughters in GLV's programs for the 2015-16 season.

A year later, in July 2016, the *New York Daily News* published an online article reporting the stories of several of the women who had been abused by Rick and noting that despite the USAV's lifetime ban, Rick continued to coach youth volleyball. The day after the article issued, a Volleytalk user posted a link to it on a new thread titled "Yet Another Alleged Abuse by Rick Butler (NEW)." Mullen also commented on this new thread, stating that she viewed one of Rick's victim's allegations "with a bit of skepticism." Ex. R, Defs.' L.R. 56.1 Stmt., dkt. no. 144-19, at 2. In September 2016, Mullen sent the defendants a testimonial about her experience with GLV's programs, noting that she believed that her "money and [daughters'] time are both well spent." Ex. K, Defs.' L.R. 56.1 Stmt., dkt. no. 144-12, at 7.

Mullen enrolled both of her daughters in GLV's programs for the 2016-17 volleyball season. Before the volleyball season ended, however, Mullen pulled them out of the programs. She contends that Rick had verbally and emotionally abused her elder daughter.

In February 2018, Mullen filed this suit, claiming that Rick, Cheryl, and GLV fraudulently concealed and misrepresented Rick's history of sexual abuse. Although Mullen concedes that, between 2015 and 2017, she was generally aware of the allegations regarding sexual abuse by Rick and had reviewed news articles on the subject, she maintains that she did not learn "the full extent" of Rick's abuse until after

4

she pulled her daughters out of GLV programs in 2017.  Ex. 15, Pls.' Resp. to Defs.'
L.R. 56.1 Stmt., dkt. no. 171-19, at 3.

In the summer of 2018, after filing this lawsuit, Mullen enrolled her younger
daughter in one of GLV's summer programs, which took place at a facility where Rick
had an office.

### Procedural Background

On behalf of herself and others similarly situated, Mullen brought this action
against GLV, Inc., Rick, and Cheryl, asserting claims of fraudulent misrepresentation
and concealment and violations of the Illinois Physical Fitness Services Act (IPFSA) and
the Illinois Consumer Fraud and Deceptive Practices Act (ICFA).  In January 2019, the
Court certified a class of plaintiffs including "all individuals who paid money to the
defendants for youth volleyball instruction through the Sports Performance program
provided by or through GLV, Inc. in the State of Illinois between February 27, 2013 and
January 10, 2018."  *Mullen v. GLV, Inc.*, 330 F.R.D. 155, 168 (N.D. Ill. 2019).  In
February 2019, the class notice was distributed, and the opt-out period closed in April
2019.

### Discussion

The defendants have moved for summary judgment on all of the plaintiffs' claims.
Summary judgment is appropriate if, viewing the evidence in the light most favorable to
the nonmoving party, there is no genuine dispute regarding any material fact and the
movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *United States
v. Luce*, 873 F.3d 999, 1005 (7th Cir. 2017).  This does not require the Court to "draw
every conceivable inference" in favor of the nonmoving party—only reasonable

inferences. *Id.* Finally, at the summary judgment stage, the Court does not make credibility determinations or weigh the evidence; those are tasks for a factfinder. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018).

## A. Standing

Before the Court can review the sufficiency of the evidence on Mullen's claims, it must address the jurisdictional issue of standing. Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the Constitution. *Keep Chi. Livable v. City of Chicago*, 913 F.3d 618, 622 (7th Cir. 2019) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Article III standing has three elements: (1) the plaintiff suffered an injury in fact, (2) that is fairly traceable to the defendant's conduct, and (3) is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

"A plaintiff bears the burden of showing that she has standing for each form of relief sought." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). At each successive stage of litigation, a plaintiff must demonstrate standing "with the manner and degree of evidence" required at that stage. *Lujan*, 504 U.S. at 561. When standing is at issue in connection with a summary judgment motion, therefore, a plaintiff must set forth specific facts to establish standing, supported by affidavits or other evidence as provided under Federal Rule of Civil Procedure 56(c). *Id.*; *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 802 (7th Cir. 2016).

The defendants argue that Mullen lacks standing to bring this action because there is insufficient evidence to support a finding that she suffered any injury. Injury is the "first and foremost of standing's three elements." *See Spokeo, Inc.*, 136 S. Ct. at

6

1547.  Named plaintiffs representing a class must "show that they personally have been injured" and cannot rely on "injury that has been suffered by other, unidentified members of the class to which they belong."  *Id.* at 1547 n.6.

The Court will assess Mullen's standing to sue for damages first and injunctive relief second.

### 1.    Claim for damages

The complaint has two categories of claims for damages: a claim based on the defendants' failure to comply with procedural requirements of the IPFSA (count 2) and several claims based on fraudulent conduct (counts 1, 3, 4, 5, and 6).

In the IPFSA procedural claim, count 2, Mullen alleges that the defendants violated the law's requirements to provide a copy of the contracts for training services, retain copies of the contracts for three years, and include a provision in contracts informing customers that, within three days of signing, they may cancel for a full refund.  *See* 815 ILCS 645/4, 6.  If proven, these alleged procedural failures would render the contracts void and unenforceable under the IPFSA.  *See* 815 ILCS 645/9(c).

Article III requires "a concrete injury even in the context of a statutory violation."  *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019).  A plaintiff cannot establish standing by simply pointing to a "bare" violation of a procedure required by statute; the plaintiff must also show that the violation harmed the interest that the statute was designed to protect.  *See id.* at 331-33.  Thus, for a claim based on a statutory disclosure requirement, the existence of a deficient disclosure is not sufficient by itself to establish standing, unless the statute's purpose is to facilitate access to information.  *See id.* at 337-38; *Groshek v. Time Warner Cable, Inc.*, 865 F.3d

884, 887-88 (7th Cir. 2017) (holding that deficient disclosure alone was insufficient injury for standing to sue for violation of statute aimed at protecting individuals' control over their consumer information).  A plaintiff must instead show that the deficient disclosure impacted the interest protected by the disclosure requirement.  *See Casillas*, 926 F.3d at 337-39.

In *Casillas*, for example, the Seventh Circuit held that a debtor could not establish standing to sue based on the injury of a debt notice that was inadequate under the Fair Debt Collection Practices Act, which requires notices to describe mechanisms available for verifying the referenced debt.  *Id.* at 332, 339.  The court explained that the purpose of the notice requirement is to protect debtors' ability to dispute and confirm debts.  *Id.* at 333-34.  The debtor in *Casillas* had not alleged any harm to her ability to dispute or verify her debt—she did not try to do either—and thus the deficiency in the notice she received was not sufficient for standing to bring the statutory claim.  *Id.* at 334, 339.

Similarly, Mullen points to no evidence that she suffered any concrete injury from the defendants' IPFSA procedural violations.  She contends she experienced a financial injury in the form of money she paid under contracts that are void and unenforceable under the IPFSA.  But this bare contention is not enough, at least without some indication—lacking here—that Mullen would have sought to cancel the contract had she been given the requisite notice of her right to cancel.   *See Debate of H.B. 1411, Amendment to the Illinois Physical Fitness Services Act*, 84th Ill. Gen. Assem., House Proceedings, at 227-228 (June 28, 1985),

http://www.ilga.gov/house/transcripts/htrans84/HT062885.pdf  (indicating that purpose

8

of the unconditional three-day cancellation period provision is to make it easier for consumers to cancel contracts). Mullen therefore lacks standing to pursue count 2.

This does not, however, require dismissal of count 2 in its entirety—at least not yet. When a class representative is dismissed based on grounds specific to her, the claim is not dismissed altogether; the class may substitute a different member to take her place and pursue the claim. *Matz v. Household Int'l Tax Reduction Inv. Plan*, 774 F.3d 1141, 1145 (7th Cir. 2014). The Court will provide the class an opportunity to substitute a new class representative who has standing to pursue count 2. If the class is unable to do so within a reasonable period, the Court will dismiss without prejudice the class claim under count 2, while dismissing Mullen's individual claim for lack of standing.

As for Mullen's standing to bring the fraud-based claims, she asserts a financial injury: payment for volleyball training of a quality inferior to that represented by the defendants. A consumer's payment for a service that was of a quality inferior to the representations of the service provider is a financial injury sufficient to establish standing. *See In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011). Mullen submitted a declaration[1] explaining that she paid for youth volleyball training

---

[1] The defendants have moved to strike Mullen's declaration, arguing that her statements are conclusory allegations unsupported by specific facts. In her declaration, Mullen states that (1) at the time she enrolled her daughters in the defendants' programs, she was not aware of any history of sexual abuse by Butler; (2) the defendants did not disclose to her the results of the DCFS or USAV investigations; (3) she paid fees to the defendants for volleyball training services; and (4) the defendants never refunded the fees Mullen paid, even after she pulled her daughters from their programs. These statements are sufficient to take Mullen's contentions out of the realm of unduly conclusory allegations, so the Court denies the motion to strike. *See Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010) (uncorroborated testimony based on personal knowledge or firsthand experience can be evidence of

because she believed—based on the defendants' fraudulent representations—the programs were safe for her children and run by highly qualified staff. Mullen testified that she later discovered that neither characterization was true, because Rick, a GLV coach, had a history of sexually abusing girls he coached. Mullen's declaration is sufficient to establish that she suffered a financial injury by paying for volleyball training services that were inferior in quality to what the defendants represented them to be. *See In re Aqua Dots*, 654 F.3d at 751.

The defendants argue that Mullen has not established an actual injury because nothing in the record suggests she or her daughters were physically abused by Rick. This argument lacks merit. As the Seventh Circuit explained in *Aqua Dots*, a claim by a consumer that she was injured by making a purchase and receiving, in return, something of lesser quality than what was represented by the seller, is sufficient; the consumer need not have suffered an additional injury from the defect. *See id.* Mullen's financial injury is based on paying for volleyball training services that were deficient in quality, and the need to show actual injury does not require that either she or her children directly have experienced any physical injury or abuse. *See id.*

Finally, the defendants argue that Mullen was fully aware of Rick's history of sexual abuse prior to enrolling her children in GLV's programs and thus cannot now claim injury based on ignorance of Rick's past. Mullen testified, however, that she did not believe the allegations of sexual abuse until 2017, after she pulled her daughters out

---

disputed material facts); *cf. Boss v. Castro*, 816 F.3d 910, 919 (7th Cir. 2016) (an employee's assertions that his employer subjected him to "a barrage of criticism" and "workplace stresses" were conclusory allegations because the plaintiff did not identify any particular stressor or criticism).

of GLV's programs. Disregarding this testimony would amount to a credibility determination, which is improper at the summary judgment stage. *See Johnson*, 892 F.3d at 893. In short, Mullen has provided sufficient evidence to support a reasonable finding that she has suffered a financial injury.

The Court also finds that the evidence is sufficient at this stage to satisfy the remaining two requirements for constitutional standing. Mullen's alleged injury is traceable to the defendants' representations about the quality of their services, and it is redressable through recovery of money damages.

In sum, Mullen has standing to sue for damages on all of the fraud-based claims: counts 1, 3, 4, 5, and 6. She does not have standing to pursue count 2, but the class may substitute a different representative for this claim.

### 2. Claim for injunctive relief

In a consumer fraud case, an individual plaintiff's claim for injunctive relief is ordinarily moot because she has already discovered the defendant's fraud and is therefore unlikely to be deceived again. *See Conrad v. Boiron, Inc.*, 869 F.3d 536, 542 (7th Cir. 2017). But when that plaintiff represents class members who may later discover the defendants' fraud, her claim is "capable of repetition," and she may pursue her claim for injunctive relief despite loss of her personal stake. *Cf. Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 625 (7th Cir. 2017) (denying motion to dismiss a named plaintiff's putative class claim for injunctive relief where the alleged consumer fraud was capable of repetition with respect to other putative class members).

GLV's alleged fraudulent conduct is capable of repetition. Mullen seeks injunctive relief on behalf of a class of individuals who paid for GLV's programs between

2013 and 2018, and these individuals may not yet have discovered that the quality or safety of GLV's training programs falls short of the defendants' representations. Mullen therefore has standing to represent the class in suing for injunctive relief.

## B. Fraud-based claims

The defendants have moved for summary judgment on Mullen's fraud-based claims: count 1 (fraudulent inducement under the IPFSA), count 3 (unfair and deceptive practices under the ICFA), count 4 (fraudulent misrepresentation), and count 5 (fraudulent concealment). The parties do not dispute the choice of law in this diversity suit, so the Court will apply the law of the forum state, Illinois. *See Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 611 (7th Cir. 2012). The Court will first examine the sufficiency of the evidence for the common law fraud claims and then will address the statutory claims.

### 1. Fraudulent misrepresentation (count 4)

Under Illinois law, a claim for fraudulent misrepresentation requires the plaintiff to establish five elements by clear and convincing evidence: (1) a false statement of material fact by the defendant; (2) the defendant's knowledge or belief that the statement was false; (3) intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from her reliance. *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018) (citing *Doe v. Dilling*, 228 Ill. 2d 324, 342-43, 888 N.E.2d 24, 35-36 (2008)); *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 413 (7th Cir. 2009) (requirement of clear and convincing evidence); *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 191, 835 N.E.2d 801, 856 (2005) (same).

The plaintiff class contends that the defendants misrepresented that they offered high quality training, by "extremely qualified staff," in a setting safe for minors. The defendants argue that there is insufficient evidence for a jury to find that these statements were actionable knowing misrepresentations and that even if so, Mullen cannot establish that she reasonably relied on them.

The defendants first contend that their allegedly fraudulent statements amount to mere puffing, rather than material misrepresentations. A misrepresentation is material "if the plaintiff would have acted differently had [s]he been aware of it," or if it was the type of information on which the plaintiff would be expected to rely on in deciding to act. *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 649, 762 N.E.2d 1, 7 (2001). "Puffing" is defined as a "subjective description[]" of the quality of the seller's offerings. *Avery*, 216 Ill. 2d at 174, 835 N.E.2d at 846. Sellers are reasonably expected to make such statements, and because their truth or falsity cannot be "precisely determined," puffing is not actionable as fraud. *Id.* at 173, 835 N.E.2d at 846. Although the defendants correctly observe that many of the statements that Mullen takes issue with amount to mere puffing—for example, statements that GLV's programs offer "the finest coaching" and are "head and shoulders above the competition," Compl., dkt. no. 1, at 64—there are two that a jury reasonably could find go beyond that.

First, the defendants' claimed representation that their programs are safe for children may be actionable, because program safety is a quality that may be precisely determined. For example, availability of first aid kits in GLV facilities may inform whether the training conditions were safe for children, and the same could be true of GLV's employment of a sexual predator. The defendants argue, however, that Mullen

has not pointed to any evidence that they made any statements about the safety of GLV programs. Mullen does not dispute this and argues that the representations about safety were implied from the defendants' other statements regarding GLV's programs. But the first element of common law fraud is a false statement by the defendant, and perceived implicit messages in a defendant's actual statements are not actionable as fraud. *See Sandy Creek Condo. Ass'n v. Stolt & Egner, Inc.,* 267 Ill. App. 3d 291, 298, 642 N.E.2d 171, 177 (1994); *Bly & Sons, Inc. v. Ethan Allen Interiors, Inc.*, No. 05-CV-668, 2006 WL 149001, at *3 (S.D. Ill. Jan. 19, 2006). Thus, there is no evidence to support a claim based on the defendants' alleged misrepresentations that their programs were safe for children.

Second, the defendants' statements that GLV had "extremely qualified staff" could be actionable as a material misrepresentation. *See Mullen v. GLV, Inc.*, No. 18-CV-1465, 2018 WL 3218693, at *2 (N.D. Ill. July 2, 2018). The truth of a statement about staff qualifications may be precisely determined. Whether GLV's coaches had, for example, CPR certification or USAV accreditation could reflect their qualifications to coach youth volleyball, and the same could be true of a coach who had committed significant misconduct vis-à-vis athletes. And a reasonable jury could find that statements about staff qualifications are material, because, as Mullen's testimony indicates, parents rely on this type of information when deciding to enroll their children in GLV's programs.

A reasonable jury could find that the defendants' statement that GLV's staff was "extremely qualified" was false. Rick's suspension from USAV, the national governing body for volleyball, and the DCFS finding that he had engaged in sexual abuse of

14

several girls, would allow a reasonable juror to conclude that he was not qualified to train youth athletes, let alone extremely qualified. Thus, a reasonable juror could conclude that not all of GLV's coaching staff was "extremely qualified." To be sure, Rick is one of many master coaches at GLV, and the proposition that he was not qualified to coach youth volleyball does not necessarily mean that GLV's staff as a whole was not qualified. But at this stage, viewing the evidence in the light most favorable to Mullen, there is a triable issue regarding whether the defendants' statements about staff qualifications were material misrepresentations.

To be liable for fraud, however, the defendants must also have *known or believed* that GLV did not have "extremely qualified staff." *See Newman*, 885 F.3d at 1003. The evidence does not support a reasonable inference that this was their belief. With respect to the Butlers, their knowledge of the truth of the sexual abuse claims about Rick—which is not an issue in the present motion[2]—does not support the additional inference that they actually believed Rick's history undermined his qualifications to coach youth girls decades later. In 2017 and 2018, Rick and Cheryl jointly sent several e-mails to parents of GLV program participants emphasizing that since 1991, Rick had coached roughly 20,000 children, without incident, and noting that GLV would continue to "provide the very best training" to youth volleyball players. Ex. S, Defs.' L.R. 56.1 Stmt., dkt. no. 144-20, at 2-4. These comments reflect that the Butlers subjectively believed that despite Rick's past, he was qualified to coach girls in

---

[2] The defendants moved for summary judgment before discovery was taken from them regarding the veracity of the sexual abuse allegations, and by doing so they chose to forego moving for summary judgment at that time on the basis that the allegations could not be proven.

volleyball, and Mullen does not point to any evidence supporting a contrary inference.

And Mullen likewise has pointed to no evidence that would permit a reasonable jury to find that any GLV employee believed Rick was unqualified. Evidence of GLV employees' awareness of Rick's past does not—without more—support a reasonable inference that they believed he was unqualified to coach youth volleyball. Furthermore, there is no evidence that would permit a reasonable inference that any GLV employee believed that Rick's history rendered GLV's staff, as a whole, unqualified to coach.

For these reasons, the defendants are entitled to summary judgment on count 4.

### 2.    Fraudulent concealment (count 5)

Count 5 is a claim that the defendants fraudulently concealed the DCFS and USAV findings against Rick and that he sexually abused several minors. To sustain a claim of fraudulent concealment under Illinois law, a plaintiff must meet the requirements for a claim of fraudulent misrepresentation and must also demonstrate that the defendant intentionally omitted or concealed a material fact that he was under a duty to disclose to the plaintiff. *See, e.g., Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012) (explaining Illinois law). More specifically, a claim of fraudulent concealment has the following elements: (1) the defendant concealed a material fact from the plaintiff under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3) the plaintiff justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the plaintiff would have acted differently had she been aware of the concealed information; and (5) the plaintiff suffered damages. *Abazari v. Rosalind Franklin Univ. of Med. & Sci.*, 2015 IL App (2d) 140952, ¶ 27, 40 N.E.3d 264, 274. A defendant's silence, standing alone, is not

actionable concealment, but "silence combined with deceptive conduct or the suppression of material facts" creates a duty to speak. *Henderson Square Condo. Ass'n v. LAB Townhomes, L.L.C.*, 2014 IL App (1st) 130764, ¶ 99, 16 N.E.3d 197, 216.

Mullen analogizes this case to two others, *Henderson Square Condominium Association* and *Linkepic Inc. v. Vysasil, LLC*, 370 F. Supp. 3d 906 (N.D. Ill. 2019), to argue that the defendants' denials of the allegations against Rick was deceptive conduct triggering a duty to speak. In both *Linkepic* and *Henderson Square Condominium Association*, the defendants' duty arose from a failure to correct a deceptive affirmative statement. In *Linkepic*, a defendant misrepresented to the plaintiff, a prospective client, that another defendant was his business "partner," and neither defendant corrected that statement despite their knowledge that it was false. *Linkepic*, 370 F. Supp. 3d at 917. And in *Henderson Square Condominium Association*, the developers allegedly failed to inform buyers that the condominium units they built lacked insulation in the exterior walls and third story, after giving the plaintiffs a promotional pamphlet that stated the opposite. *Henderson Sq. Condo.*, 2014 IL App (1st) 130764, ¶ 102.

Here, by contrast, there was not a similar affirmative misstatement of fact by the defendants that they then failed to correct. Rather, the alleged misstatements that Mullen contends gave rise to a duty to speak were the Butlers' *denials* of the allegations of sexual abuse by Rick. Plaintiffs effectively contend that the fact that the Butlers, when confronted, denied the claims created a duty to admit their truth. The plaintiffs' argument seems somewhat circular, and they do not support with any case involving a similar scenario their contention that this is sufficient to give rise to a duty to speak under Illinois law.

17

Regardless of whether the defendants had a duty to speak, no reasonable juror could conclude that class members justifiably relied on GLV's alleged suppression of Rick's history of sexual abuse. Reliance is justifiable if the plaintiff "could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection." *Abazari*, 2015 IL App (2d) 140952, ¶ 27, 40 N.E.3d at 274. "[A] person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another." *Pack v. Maslikiewicz*, 2019 IL App (1st) 182447, ¶ 105. "If the party's reliance is unreasonable in light of the information open to him, the loss is considered his own responsibility." *D.S.A. Fin. Corp. v. County of Cook*, 345 Ill. App. 3d 554, 561, 801 N.E.2d 1075, 1081 (2003).

It is undisputed that even at the beginning of the class period, information about Rick's history of sexual abuse of female youth athletes was available in the public domain. Specifically, a 1995 *Los Angeles Times* article and a 1996 *Chicago* magazine article—both posted online—featured highly detailed descriptions of the allegations against Rick and mentioned the USAV coaching ban and the DCFS finding that Rick had sexually abused children. Additionally, in 2001, an episode of ESPN's television show *Outside the Lines* had covered Rick's history of child abuse and included an interview with one of Rick's accusers. And more information became public during the class period, while Mullen, in particular, was continuing to enroll her daughter in GLV programs. The 2015 ESPN web article and the 2016 *New York Daily News* story featured quotes from Rick's accusers and reported the DCFS and USAV decisions. Finally, there was animated online discourse on threads in Facebook and Volleytalk,

and the posts included links to these news articles and the USAV and DCFS decisions.

Given the amount of publicly available information about Rick's history of abuse and the

USAV and DCFS decisions against him, no reasonable juror could find that class

members justifiably relied on the defendants' alleged concealment of information on this

subject. *See Cannon v. Burge*, 752 F.3d 1079, 1083, 1093-94 (7th Cir. 2014) (holding

that plaintiff's reliance on defendants' misrepresentations was not justifiable in part

because news articles reported facts undermining the defendants' statements) (applying

Illinois law).

Mullen argues that, despite the public information about Rick's past, there is a

genuine dispute regarding justifiable reliance because the public reporting included

Rick's denials and covered accusations of "[o]nly three of the women" he had abused.

Pls.' Resp. Br., dkt. no. 171, at 32. Her argument lacks merit. First of all, it cannot be

the case that a defendant's failure to admit his lies when confronted renders a plaintiff's

reliance on the lies justifiable. Adopting such a rule would render the requirement of

justifiable reliance a nullity because fraudsters do not admit they are lying. And under

Illinois law, the fact that only a part of the truth—and not the whole truth—was readily

available to a plaintiff does not justify her reliance on the defendant's lies. For example,

in *Siegel Development, LLC v. Peak Construction LLC*, 2013 IL App (1st) 111973, 993

N.E.2d 1041, an Illinois appellate court held that the plaintiffs could not demonstrate

they had justifiably relied on a building seller's misrepresentations about permitting

requirements, because an architect had given the buyers accurate permitting

information. *Id.* at ¶115, 993 N.E.2d at 1061. The court explained that the architect's

opinion had put the buyers "on notice" that the sellers' representations might not be true

and that they "should have investigated further." *Id.* at ¶115, 993 N.E.2d at 1061. *See also, e.g., Dilling*, 228 Ill. 2d at 353, 888 N.E.2d at 41 (reliance not justified where plaintiff should have been "fairly suspicious" of defendants' deception in light of conflicting information before her). At all relevant times, there was enough information available to make it unjustifiable for any class member to rely on the defendants' omissions (or, for that matter, their denials) about Rick's history of sexual abuse. No reasonable jury could find otherwise.

For these reasons, the defendants are entitled to summary judgment on count 5.

### 3.    ICFA claim (count 3)

The ICFA protects consumers from "unfair or deceptive acts or practices."    815 ILCS 505/2. An ICFA claim has the following elements: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod*, 673 F.3d at 574; *see also McIntosh v. Walgreens Boots All., Inc.*, 2019 IL 123626, ¶ 21, 135 N.E.3d 73, 80. Additionally, the plaintiff must show that the defendant's unfair or deceptive conduct caused her injury. *Wigod*, 673 F.3d at 574. The class's claim includes allegations of both unfair and deceptive conduct.

An ICFA deceptive-practices claim does not require intent to deceive the plaintiff—an innocent misrepresentation is actionable. *McIntosh*, 2019 IL 123626, ¶ 21, 135 N.E.3d at 80. To establish proximate cause, a plaintiff has to show that she suffered damages "as a result" of the defendant's deceptive conduct. *De Bouse v. Bayer*, 235 Ill. 2d 544, 550, 922 N.E.2d 309, 313 (2009). "[I]t is not possible for a

plaintiff to establish proximate causation unless the plaintiff can show that . . . she was, 'in some manner, deceived' by the misrepresentation." *Id.* at 553, 922 N.E.2d at 315 (quoting *Avery*, 216 Ill. 2d at 200, 835 N.E.2d at 861).

With respect to the first element, the deceptive-practices claim is based on the same conduct that forms the basis for the common law fraud claims. As explained in the Court's analyses of counts 4 and 5, the only triable issue regarding a deceptive act by the defendants concerns their alleged misrepresentation that GLV has "extremely qualified staff."

The defendants have moved to dismiss Mullen from this claim, arguing that no reasonable juror could find that she was actually deceived by this statement. Defendants rely, in part, on the wide reporting of Rick's history of sexual abuse. Mullen contends that the availability of such news stories does not undermine her claim of deception, because the coverage was incomplete: it included Rick's denials of wrongdoing and recounted only a few players' experiences of abuse. Mullen testified that she did not know what to make of the news stories and that she therefore believed the defendants' representations that GLV's staff was extremely qualified. She maintains that she would not have enrolled her daughters in GLV's programs had she known the truth.

Mullen's contention does not withstand scrutiny. By the summer of 2015, Mullen was aware of Rick's reported history of sexual abuse. She has admitted that between 2015 and 2017, she reviewed online articles regarding sexual abuse by Rick. In the summer of 2015, Mullen commented on a Volleytalk thread discussing the EPSN.com article about Rick's history of abuse. And in the summer of 2016, Mullen commented on

21

a different Volleytalk thread discussing the then-recent *New York Daily News* article on the same topic. But despite her awareness of all of this information, Mullen chose to enroll her daughters in GLV's programs for both the 2015-16 and 2016-17 volleyball seasons.

Mullen did not materially change course even after she filed this lawsuit. She enrolled one of her daughters in a GLV summer program in 2018, and this program took place at a facility in which Rick had an office. Thus, even after she had learned, in her words, the "truth of the allegations against Rick," Mullen chose to pay for GLV's services. Ex. 15, Pls.' Resp. to Defs.' L.R. 56.1 Stmt., dkt. no. 171-19, at 4.

To be sure, the evidence regarding Mullen's inaction in the face of awareness of Rick's history of sexual abuse does not include the early part of the class period, before 2015. But in light of her actions (or inaction) during the period from 2015 forward, there is no basis for a reasonable inference that, at any point during the class period, Mullen enrolled her daughters in GLV programs "as a result" of the defendants' representations about staff qualifications. *See De Bouse*, 235 Ill. 2d at 550, 922 N.E.2d at 313. Because evidence that would support proximate causation is lacking, Mullen cannot pursue a deceptive-practices ICFA claim.

The Court cannot, however, rule out the possibility that other class members may be able to show that they were actually deceived by the representation that GLV had "extremely qualified staff." If so, the class may substitute a different representative to pursue the ICFA deceptive-practices claim. *See Matz*, 774 F.3d at 1145.

As for the unfair practice theory of ICFA liability, there is insufficient evidence for Mullen's ICFA claim to proceed to trial on this basis as well. The following factors are

relevant to determining whether conduct is actionable as unfair under the ICFA: (1) it offends public policy; (2) it is "immoral, unethical, oppressive, or unscrupulous"; or (3) it causes substantial injury to consumers. *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 830 (7th Cir. 2014). A practice need not meet all three criteria to be actionable; it "may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 418, 775 N.E.2d 951, 961 (2002)). In addition, conduct need not be deceptive to be actionable as unfair. *Id.*

Mullen argues that there is sufficient evidence for her ICFA claim to proceed to trial on the unfair practice theory, because a reasonable juror could find that the defendants' conduct caused substantial injury to consumers. This argument lacks merit. A substantial injury for ICFA purposes is one that consumers could not have reasonably avoided. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). Mullen had the option of avoiding injury by enrolling her children in other youth volleyball clubs in the area, and indeed, she did enroll one of her daughters in a different club for a time. Faced with analogous facts, the Seventh Circuit ruled in *Batson* that a plaintiff's harm from an allegedly unfair concert ticket fee was not a substantial injury, because the plaintiff could have avoided it by "opting instead for alternative entertainment" to the concert. *Batson*, 746 F.3d at 834. Similarly, in *Siegel*, the court held that a man claiming that defendant gas companies had engaged in the unfair practice of gas-price manipulation could not establish that his injury was unavoidable because "he could (and did) purchase gasoline from stations owned by non-defendants." *Siegel*, 612 F.3d at 937.

Mullen argues that because she did not know about Rick's history of sexual abuse, she had no reason to consider other training options for her girls. This is essentially an argument that she was justified in her decision to enroll her daughters in the defendants' programs. But whether a consumer's purchase decision was justified, despite the availability of alternatives, is not an element of an unfair practices claim. The relevant inquiry is whether a consumer's injury "*could* reasonably have been avoided" by, for example, purchase of available alternatives. *See Batson*, 746 F.3d at 834 (emphasis added). Mullen could—and did—purchase volleyball training services from other sports clubs, and she therefore does not have a viable ICFA claim under an unfair practices theory.

And like Mullen, other class members could have reasonably avoided injury from the defendants' programs by enrolling their children in other youth volleyball clubs. Thus, the class cannot pursue the ICFA claim under an unfair practices theory either.

In sum, the Court has dismissed Mullen from count 3. The Court does not dismiss this count altogether, however, because it may proceed on a deceptive practices theory if the class is able to substitute a different representative.

### 4. Fraudulent inducement under the IPFSA (count 1)

The IPFSA prohibits contracts for physical fitness services "entered into in reliance on any false, fraudulent, or misleading information." 815 ILCS 645/10(b). The elements of an IPFSA claim are not set forth in the statute and have not been clarified by Illinois courts. A common law fraudulent inducement claim under Illinois law requires a plaintiff to establish the following elements: (1) misrepresentation or concealment of material fact by the defendant; (2) defendant's knowledge or belief of its falsity; (3) the

24

representation was made to induce the plaintiff to act; and (4) reasonable reliance by the plaintiff. *See Colagrossi v. Royal Bank of Scotland*, 2016 IL App (1st) 142216, ¶ 45, 57 N.E.3d 601, 611; *Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1006, 932 N.E.2d 569, 579 (2010) (deceptive omission can be basis for fraudulent inducement claim).

The fraudulent inducement claim is based on the same allegations of deceptive conduct as count 4 (fraudulent misrepresentation) and count 5 (fraudulent concealment). Because, as explained above, the Court has determined that there is insufficient evidence to proceed to trial on either fraudulent misrepresentation or concealment, the fraudulent inducement claim likewise fails. Defendants are therefore entitled to summary judgment on count 1.

## C.    Unjust enrichment (count 6)

The defendants have also moved for summary judgment on count 6 (unjust enrichment). Unjust enrichment is not a separate cause of action under Illinois law; it a condition brought about by fraud or other unlawful conduct, including violations of the ICFA or IPFSA. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739-40 (7th Cir. 2019). This means that, in this case, this request for relief is "tied to the fate" of the claims based on fraud and statutory violations. *See id.* at 740. The Court has dismissed counts 1 (fraudulent inducement under the IPFSA), 4 (fraudulent misrepresentation), and 5 (fraudulent concealment) in full, and it has dismissed Mullen only from counts 2 (IPFSA procedural violations) and 3 (deceptive and unfair practices under ICFA). Because the class will have to the opportunity to substitute a class representative for counts 2 and 3—the only claims that may still be viable—the Court need not rule on the motion for summary judgment as to count 6 at this time.

**Conclusion**

For the foregoing reasons, the Court grants the defendants' motion for summary judgment [144].  Defendants are entitled to summary judgment on counts 1, 4, and 5 of the plaintiffs' complaint in their entirety, and on the ICFA unfair practices claim in count 3.  They are entitled to summary judgment with respect to Mullen individually on count 2, the deceptive practices claim in count 3, and count 6.  The plaintiff class is given until April 17, 2020 to substitute a new class representative who can maintain viable claims under count 2, the deceptive practices claim in count 3, and count 6.  If the class does not do so, the Court will dismiss the class claims under those counts without prejudice.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  March 13, 2020