## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| LAURA MULLEN, individually and on behalf of all others similarly situated, | Case No. 1:18-cv-1465 |
| *Plaintiff*, | Honorable Matthew F. Kennelly |
| *v.* | |
| GLV, INC., d/b/a SPORTS PERFORMANCE VOLLEYBALL CLUB and GREAT LAKES CENTER, an Illinois corporation, RICKY BUTLER, an individual, and CHERYL BUTLER, an individual, | |
| *Defendants*. | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS

## <u>TABLE OF CONTENTS</u>

I.      Defendants' motion for sanctions is premised on an ongoing, fundamental
        misunderstanding about Plaintiff's legal argument ........................................................3

II.     Plaintiff's "purpose" in the suit was proper...................................................................11

III.    Defendants have stated no sanctions argument based on "irrelevant" material.......14

IV.     Plaintiff should not be sanctioned for "harassing" Defendants ................................15

V.      Defendants have zero explanation or authority for why counsel's litigation conduct
        is sanctionable ................................................................................................................16

VI.     Defendants' motion is procedurally defective and identifies no basis to sanction
        anyone ..............................................................................................................................18

CONCLUSION ...........................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**United States Supreme Court Cases:**

*Cooke v. Jackson Nat'l Life Ins. Co.*,
    140 S. Ct. 134 (2019)......................................................................................17–18

*DeRose v. Vill. of Orland Park, Illinois*,
    140 S. Ct. 956 (2020).............................................................................................18

**United States Circuit Court of Appeals Cases:**

*Beverly Gravel, Inc. v. DiDomenico*,
    908 F.2d 223 (7th Cir. 1990) ..................................................................................8–9

*Carr v. Tillery*,
    591 F.3d 909 (7th Cir. 2010) ..................................................................................11

*Cooke v. Jackson Nat'l Life Ins. Co.*,
    919 F.3d 1024 (7th Cir.) ..........................................................................................17–18

*Divane v. Krull Elec. Co.*,
    200 F.3d 1020 (7th Cir. 1999) ................................................................................11–12

*F.D.I.C. v. Maxxam, Inc.*,
    523 F.3d 566 (5th Cir. 2008) ..................................................................................12

*Harlyn Sales Corp. Profit Sharing Plan v. Kemper Financial Servs., Inc.*,
    9 F.3d 1263 (7th Cir. 1993) ....................................................................................15

*Mars Steel Corp. v. Cont'l Bank N.A.*,
    880 F.2d 928 (7th Cir. 1989) ..................................................................................12

*Matter of Generes*,
    69 F.3d 821 (7th Cir. 1995) ....................................................................................14

*McGreal v. Vill. of Orland Park*,
    928 F.3d 556 (7th Cir. 2019) ..................................................................................18

*Pac. Dunlop Holdings, Inc. v. Barosh*,
    22 F.3d 113 (7th Cir. 1994) ....................................................................................11

*Talbot v. Robert Matthews Distrib. Co.*,
    961 F.2d 654 (7th Cir.1992) ...................................................................................14

*Vollmer v. Selden*,
    350 F.3d 656 (7th Cir. 2003) ...................................................................................11

**United States District Court Cases:**

*Blankenship v. Pushpin Holdings, LLC*,
    157 F. Supp. 3d 788 (N.D. Ill. 2016) ...............................................................14

*Byrne v. Bd. of Educ., Sch. Dist. of W. Allis-W. Milwaukee*,
    741 F. Supp. 167 (E.D. Wis. 1990)...................................................................17

*Cartwright v. Cooney*,
    788 F. Supp. 2d 744 (N.D. Ill. 2011) .........................................................15, 17

*CS Wang & Assoc. v. Wells Fargo Bank, N.A.*,
    305 F. Supp. 3d 864 (N.D. Ill. 2018) ..................................................................9

*Doe MC-1 v. The Univ. of Michigan et al.*,
    2:20-cv-10568 (E.D. Mich.)................................................................................6

*In re Dairy Farmers of Am., Inc.*,
    80 F. Supp. 3d 838 (N.D. Ill. 2015) ..................................................................15

*Kichatay v. Nw. Home Care, Inc.*,
    327 F.R.D. 204 (N.D. Ill. 2018)..................................................................10, 17

*Lundeen v. Minemyer*,
    No. 09 C 3820, 2010 WL 5418896 (N.D. Ill. Dec. 17, 2010) ...........................3

*Mullen v. GLV, Inc.*,
    334 F.R.D. 656 (N.D. Ill. 2020).......................................................................16

*Mullen v. GLV, Inc.*,
    No. 18 C 1465, 2020 WL 5630454 (N.D. Ill. Sept. 20, 2020).........................16

**Rules and Statutory Provisions:**

Fed. R. Civ. P. 11 ...........................................................................................................11, 18

**Other Authorities:**

*Rebecca Campbell Ph. D et al., Serial Sexual Assaults: A Longitudinal Examination of Offending Patterns Using DNA Evidence (March 2019)*,
    https://www.ncjrs.gov/pdffiles1/nij/grants/252707.pdf.....................................10

Plaintiff Laura Mullen is the parent of two daughters who sent her kids to be coached at the volleyball club run by Defendants GLV, Inc. ("Sports Performance" or "GLV"), Great Lakes Center, and Ricky and Cheryl Butler ("Rick" and "Cheryl," to avoid confusion). Rick, the head coach of Sports Performance, sexually abused at least six players when he was their coach in the 1980s, and when they were teenagers. Years later—then adults—the women stepped forward. Professional organizations in youth volleyball went so far as to ban Rick for life. The Department of Children and Family Services found that Rick had unprotected sex with the players when they were sixteen and seventeen, and found him a risk to minors. For their part, Rick and Cheryl have denied the allegations, and still do. After months of investigation, Plaintiff and her *pro bono* counsel sued the club and its principals Rick and Cheryl, arguing, among other things, that they had defrauded her and a Class of parent-customers by failing to disclose—and vociferously denying—the fact that Rick had systematically raped minors in his care.

After the Class was adversarially certified, the Court granted summary judgment to Defendants. As relevant here, the Court held that (1) no jury could reasonably find that Defendants did not believe that Rick was an "extremely qualified" coach, which was the only actionable representation by Defendants, and (2) against Plaintiff only, that news coverage of the allegations against Rick—which Plaintiff agreed that she'd seen—made it impossible that Plaintiff relied on Defendants' representations.

Defendants now move to sanction Plaintiff and every attorney who has ever appeared in this case. Across a fifty-page motion, Defendants lash out at nearly everything that has happened in the action since day one—except the truth of the allegations against Rick. Plaintiff endeavors below to distill and respond to the arguments against Defendants, which are broadly as follows: (1) that Plaintiff lied to the Court by saying that she would not have paid money to Defendants if

1

she'd known the truth, (2) that, somehow setting aside the truth of the allegations, Plaintiff

improperly sought to harm Rick's and the club's reputation and finances, and (3) that Plaintiff's

and her counsel's conduct in the litigation was sanctionably aggressive.

      None of these arguments, nor the dozens of sub-arguments and accusations strewn

throughout Defendants' brief, have an ounce of merit. Mullen has been clear from the moment

the complaint was filed that she had seen some of the news coverage about Rick. The point of

the case, which she has also been clear about, is that the news stories weren't enough. Rick and

the other Defendants had to tell parents who were considering enrolling their kids at Rick's club

that the allegations against him—that he had raped the players entrusted to his care when they

were children—were *true*. If she'd known that, rather than read a news story about the

"allegations," she says she would not have enrolled her kids there. (Complaint ("Compl."), dkt. 1

¶ 176.)

      The Court didn't ultimately agree, for a variety of reasons, including that Plaintiff let one

of her daughters attend the club in 2018 after the complaint was filed. But arguing—as

Defendants do now—that the 2018 event renders the case a sham rests on a mischaracterization

of what the event was. It was a summer league for Plaintiff's daughter's ("J.M.") high school

team, with her high school coaches, that used Defendants' building. It had nothing to do with

Rick, Cheryl, or any coach that worked at GLV. Plaintiff's inability to get away from Defendants

is an unfortunate fact of being involved in elite, youth volleyball in this part of Illinois. It does

not mean that she didn't care about what she had learned about Rick.

      Defendants' other arguments make less sense. This was primarily a fraud case, claiming

that Defendants' reputation as a safe place to send your child was unmerited because it was run

by a man that had a history of raping teenage players under his care. It was unavoidable and,

really, part and parcel of the claims, that Defendants' reputations would be damaged. Moreover, as a settlement offer that Plaintiff tendered to Defendants made clear, Plaintiff and her counsel have never reached beyond what could be achieved in the suit. They have, however, litigated the case with fervor. This is not sanctionable.

Even given the space they might need to do so, Defendants do not come close to meeting the "high burden" to show that Plaintiff or her counsel did anything improper in this case. *See Lundeen v. Minemyer*, No. 09 C 3820, 2010 WL 5418896, at *3 (N.D. Ill. Dec. 17, 2010). And it is Plaintiff's overriding concern that what Defendants are doing here is a page from the same playbook they have always run when confronted with the truth about Rick: to obfuscate, to confuse, and to mislead the public about what he did. Throughout their motion, Defendants assert—in fully-capitalized headers, in the text, and more than fifty times—that the allegations of the complaint are *false*. But when it comes down to it, Defendants work remarkably hard to avoid so much as a brush with any of the stories of Rick's victims.

That's because, as this Court has repeatedly made clear, the truth of Rick's multi-year sexual abuse of the minors entrusted to his care *has not been adjudicated*. Defendants have worked incredibly hard to make sure that it was not. The record must remain absolutely, crystal clear: Rick Butler has yet to answer a page of discovery on the truth of the sexual abuse allegations against him, and the Court has *never* called them false. Defendants' motion is yet another flare that Defendants have shot to draw off the search for truth. It should be denied.

## I. Defendants' motion for sanctions is premised on an ongoing, fundamental misunderstanding about Plaintiff's legal argument.

Plaintiff has been clear about her theory of the case, and the facts supporting it, from the beginning. Defendants strongly disagree with this theory of the case. The Court ultimately

3

disagreed with it, too. But that does not mean that Plaintiff misled the Court at any point. That theory is set forth below.

For years, the allegations against Rick Butler have been lingering on the fringes of the world of elite, youth volleyball. (Compl., dkt. 1 ¶ 1.) But what has been public have been the "allegations" against Rick, at all times accompanied by Rick's and Cheryl's full-throated denials and efforts to muddy the record, from the merely false—his continued insistence that the victims were eighteen—to the active threats to silence accusers. (*Id.* ¶ 2.)

The public information was and is not, in Plaintiff's view, a substitute for a recounting of the truth. Instead, all of the facts stated in the news stories were carefully couched as "allegations," with Rick's denials. (*See* Plaintiff's Response to Defendants' Statement of Facts ("Pl.'s Resp. to SOF"), dkt. 171-1 ¶ 55 (discussing ESPN's 2015 *Outside the Lines* episode, which referenced the allegations in broad terms and included Rick's false assertions at "the [USAV] hearing that all three women were 18 and the sex had been consensual[,]" and that he "denies any wrongdoing or illegal activity, nor has he ever been disciplined with the AAU or charged"); *see also id.* (discussing *New York Daily News* article, which included Rick's false contention that "they were consensual relationships that began after the women had turned 18-years-old"); *see also id.* ¶ 50 (discussing 1995 *LA Times* article, which included Rick's statement that he "denies her allegations and vows to clear his name," and that "[a] decade later you can say anything you want about anybody and it's pretty hard to prove right or wrong," among other denials); *see also id.* ¶ 51 (discussing 1996 "Sex, Lies and Volleyball" article which included Rick's assertion that Kay Rogness was improperly behind the revelations, falsely claiming that the players were eighteen, and describing the allegations as a "witch hunt" and "crazy"). The Butlers have gone far beyond denying the allegations in the press. The women that Rick abused

in the 1980s all recount stories of Cheryl attempting to silence them, making disparaging comments on social media, and even threatening violence against the women or their families. (*See* Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s MSJ Resp."), dkt. 171 at 8–9; Pl.'s Statement of Additional Material Facts ("Pl.'s SOAF"), dkt. 171-2 ¶ 11.)

What Plaintiff says is the actual truth has been consistent, too, though it remains untested in the case. (*See* Amended Summary Judgment Order, dkt. 209 at 6.) Plaintiff relates the full stories of the minors that Rick abused, as they—now—tell them. Rick lured sixteen-year-old Sarah Powers-Barnhard to his apartment, under the guise of discussing a "problem on the team[,]" and then raped her "as she lay motionless in a terrified state." (Compl., dkt 1 ¶¶ 34–37.) Rick got sixteen-year-old Beth Rose drunk on vodka, carried her into the bedroom, and raped her while she was "too drunk and too scared to stop him." (*Id.* ¶¶ 56–57.) Rick brought Christine Tuzi (née Brigman) to his apartment on the pretext of needing to talk about the team when he raped her; Christine was "paralyzed in fear." (*Id.* ¶ 68.). When she was sixteen, Rick raped Julie Romias (née Bremner), after she resisted and told him she didn't believe in sex before marriage. (*Id.* ¶¶ 94–96.) Rick first raped Jane Doe, after convincing her she had to come to his apartment, when she was a sophomore in high school. (*Id.* ¶¶ 104–117.) This was not simply, as the media stories above might relate, equivocal, "sexual relationships" with underage players. (*See* Pl.'s Resp. to SOF, dkt. 171-1 ¶ 55 (Outside the Lines.).) It was rape, without qualification, of minors by a man years their senior who had coerced them into sex by abusing his position as their trusted coach, luring them away from other adults, or even their peers, and then cornering them. (*See* Pl.'s SOAF, dkt. 171-2 ¶¶ 2–4 (Sarah Powers-Barnhard's experience, including Sarah's declaration); *see also id.* ¶¶ 5–6 (Christine Tuzi's experience, including Christine's declaration);

*see also id.* ¶¶ 7–8 (Julie Romas's experience, including Julie's declaration); *see also id.* ¶ 9 (Jane Doe's experience, including Jane's declaration); *see also id,* ¶ 10 (Beth Rose's experience, including Beth's declaration).)

It was a fair question for Plaintiff to ask: is this something that Rick was legally obligated to disclose, rather than actively deny, to a parent before she might send her daughter to Rick? Is this something that Rick misled people about, when he claimed that Sports Performance had "extremely qualified coaches," he among them? Is this something that might constitute fraud on Sports Performance's consumer base? Perhaps the answer is, under Illinois law, no.[1] But these were fair questions to raise with this litigation.

They were fair questions to ask even if Plaintiff had been exposed to occasional news coverage of the story and continued to send her children there. The point was, actually, that Plaintiff had a perfectly typical experience of the parents sending their children to Sports Performance: she'd heard the rumors, she'd even seen the stories. (Compl., dkt. 1 ¶ 175 (stating that Mullen saw links to the stories in June 2017); *see generally* Pl.'s Resp. to SOF, dkt. 171-1 ¶¶ 55–56.)[2] But she'd also seen Rick's and Cheryl's denials. (*See id.* ¶¶ 30, 33, 36, 50–51, 55.) And in light of Rick's centrality to the volleyball community and the unmatched opportunities that elite clubs like this provide, Plaintiff put her head in the sand. (*See* Pl.'s MSJ Resp., dkt. 171 at 11.) Eventually, though, Plaintiff began to see Rick's dark side in his psychologically abusive practices towards his players and she began to believe the women.

---

[1] Plaintiff, of course, does not concede this point of law, and is appealing it. There is no law on point cited by Defendants in their summary judgment motion, and Defendants do not claim that, as a matter of law, Plaintiff's theory is sanctionable. Indeed, similar theories are being pressed elsewhere by former student athletes who were sexually abused, alleging that the entities who knowingly employed the abusers fraudulently concealed the facts of the abuse. *See, e.g.*, *Doe MC-1 v. The Univ. of Michigan et al.*, No. 2:20-cv-10568 (E.D. Mich.).
[2] Plaintiff had not heard the stories of Beth Rose or Jane Doe before she had already removed her daughters from the program. (Pl.'s SOAF, dkt. 171-2 ¶ 32.)

Defendants are adamant at persuading the casual reader that the allegations of this complaint are false. The word appears seventy-two times in their fifty-page memorandum. But what, exactly, Defendants want to say is false is carefully crafted: even what appear to be broad swipes at the "core allegations" of the complaint wind up being minutely cabined. (Defendants' Motion and Memorandum for Sanctions ("Defs.' Mem."), dkt. 203 at 16.) The reason for this is transparent, which is that Defendants want nothing less than an assessment of the "truth" behind the allegations of this case. Defendants' campaign to halt discovery, even going so far as to ask this Court to amend its motion for summary judgment, is indisputable evidence of this.

Instead, the crux of Defendants' motion—which winds up being about a page and a half once the reader gets there—is Mullen's statement that she would not have sent her daughters to Sports Performance if she had known that the allegations were true. (Compl., dkt. 1 ¶ 176 ("Had Plaintiff known the full truth and depth of Butler's sexual, emotional, and physical abuse, she would not have allowed her daughters to attend Sports Performance and she would not have paid fees to Defendants."); *see also* Declaration of Laura Mullen ("Mullen Decl."), dkt. 171–19 ¶ 19 (Plaintiff "would not have paid for any volleyball training from Defendants if [she] had known that the sexual abuse allegations against Rick Butler were true.").) By characterizing the Court's order on the motion for summary judgment as a judicial finding that Plaintiff knew about the allegations themselves, Defendants now claim that it's clear Plaintiff was lying all along.

But that just isn't right. Plaintiff has never said she did not know about the allegations. Plaintiff put that very fact in her complaint. (Compl., dkt. 1 ¶ 175.)

The legal argument that Plaintiff has advanced throughout the case was that knowing about the *allegations* from third-party news stories was not enough to prevent her (and the Class) from being defrauded. Instead, Plaintiff has argued that Defendants, including Rick and Cheryl,

were obligated to disclose the truth of the allegations—or at the very least, admit those allegations were true when confronted—which they have never done. Whatever the Court might ultimately have made of that argument as a matter of law does not render Plaintiff a liar. *Beverly Gravel, Inc. v. DiDomenico*, 908 F.2d 223, 227 (7th Cir. 1990) ("[A] decision to grant summary judgment is not dispositive of the issue of sanctions."). Her factual allegations, and the legal argument they support, have been consistent—and true—throughout the case. (Compl., dkt. 1 ¶¶ 175–76; Mullen Decl., dkt. 171-19 ¶ 19.)

Finally, Defendants quote a piece of the Court's summary judgment opinion on this point which does require additional discussion. In Defendants' material facts in support of summary judgment—which followed requests to admit served on Plaintiff—Defendants submitted the asserted "fact" that "[i]n the summer of 2018, Plaintiff's daughter, J.M., participated in GLV's Summer League, which took place at the Great Lakes Center." (Defendants' Statement of Facts "Defs.' SOF"), dkt. 144-1 ¶ 63.) Plaintiff disputed that fact, as she did in the request to admit, because what J.M. participated in was the 2018 *High School* Summer League; that is, "a summer league through her high school." (Pl.'s Resp. to SOF, dkt. 171-1 ¶ 63.) This was not a coaching program provided by Rick or any Sports Performance staff member. (Declaration of Laura Mullen in Opp. to Defs.' Mot. for Sanctions, attached hereto as Exhibit 1 ¶ 5.) J.M. was playing on her high school team, with her high school coaches. (*Id.* ¶ 4.) The games just occurred at the Great Lakes Center's physical plant. (*Id.* ¶ 6.) She did not pay any money directly to Sports Performance, except a registration fee between $25 and $40, which was paid to J.M.'s high school coach. (*Id.* ¶ 7.) To the extent that Plaintiff was unable to avoid Great Lakes Center and

keep her kids involved in high-level youth volleyball, it in no way contradicts the fundamental allegations of her case.[3]

Defendants also assert that various other allegations by Plaintiff are false. Defendants insist that Plaintiff's description of her oldest daughter's, A.M.'s, experience at Sports Performance is false. (*See* Defs.' Mem., dkt. 203 at 21–24.) Plaintiff alleged that Rick was abusive to A.M. by making comments about her weight and appearance, which caused A.M. to lose weight and develop self-esteem issues. (Compl., dkt. 1 ¶ 171.) She produced a declaration to the same effect. (Mullen Decl., dkt. 171–19 ¶ 6.) In the face of Plaintiff's sworn declaration, Defendants produce a series of e-mails between Rick and Plaintiff discussing A.M.'s challenges as proof positive that, actually, Rick was not abusive toward A.M. (*See* Def.'s Mem. at 21.) None of this contradicts what Plaintiff said. Moreover, Defendants would have been welcome to produce this evidence at trial to undermine Plaintiff's credibility—if in fact they thought it would—but Defendants' campaign to limit discovery and decisions on the merits have ensured that, as yet, that has not happened.

Defendants claim that Plaintiff's allegation that "for over three decades, Rick [Butler] has used his position of power to sexually abuse no fewer than six underage teenage girls, and likely many more" is false. (Compl., dkt. 1 ¶ 1.) Defendants insist this is not true, in that Rick used his position of power to abuse women through the 1980s, and then—as far as the facts Plaintiff alleges in the complaint—stopped. The question of timing is quite clear from the complaint, which states in significant detail the who, what, where, and when of Rick's conduct as it is currently known. (*Id.* ¶¶ 21–117.) And it is fair for Plaintiff to allege that, on what she knows

---

[3]    Even if this somehow did render Plaintiff's allegation in her complaint false—it doesn't—it wasn't false at the time of filing. *CS Wang & Assoc. v. Wells Fargo Bank, N.A.*, 305 F. Supp. 3d 864, 895 (N.D. Ill. 2018) ("When weighing Rule 11 sanctions, the focus is on what counsel knew at the time he filed the complaint.").

about the allegations against Rick, that he did not stop. *Beverly Gravel*, 908 F.2d at 226 ("It is not unreasonable to file a complaint so as to obtain the right to conduct discovery where that discovery is necessary to establish a claim."); *see also* Rebecca Campbell Ph. D *et al.*, *Serial Sexual Assaults: A Longitudinal Examination of Offending Patterns Using DNA Evidence* (March 2019), OFFICE OF JUSTICE PROGRAMS' NATIONAL CRIMINAL JUSTICE REFERENCE SERVICE, available at https://www.ncjrs.gov/pdffiles1/nij/grants/252707.pdf, at 1 (summarizing literature, finding that perpetrators of sexual assault are likely to re-offend over long time periods). As above, Plaintiff would welcome discovery (or an immediate evidentiary hearing) on the truth or falsity of this claim.

In a single paragraph, buried in the middle of their motion, Defendants do actually attack the "core allegations" of the complaint directly. That is, they do claim that the allegations against Rick are not truthful. (Defs.' Mem., dkt. 203 at 29 ("Edelson PC investigated the accusations for months before bringing this lawsuit, and they contend that the Complaint represents the 'truthful' stories of abuse against Rick Butler. Yet, the record clearly establishes that this simply is not true.").) It is jaw-dropping that Defendants are prepared to advance this claim given the procedural record. (*See* Court's Order Denying Mot. to Correct Summ. J. Order, dkt. 208.) Defendants have moved mountains to avoid a determination of whether these allegations are true, much less disproven them. *Kichatay v. Nw. Home Care, Inc.*, 327 F.R.D. 204, 205 (N.D. Ill. 2018) ("[D]efendants' basis for sanctions – that plaintiff's [] claims were false – is nothing more than an attorney's assertion in a motion. That's neither proof no[r] evidence."). Defendants' multi-pronged efforts to re-write the history of this case—to turn it into some kind of vindication for Rick Butler—is an offense to this Court. The motion for sanctions should be denied. The

Court should hold an evidentiary hearing on any of the foregoing in which a question lingers in its mind.

## II. Plaintiff's "purpose" in the suit was proper.

The allegations of the suit are, as described above, not false—and not contradicted by Defendants. Defendants advance a seemingly-independent argument that the suit was filed for an improper purpose and is sanctionable for that reason. (Defs.' Mem., dkt. 203 at 10–25.) The improper purpose inquiry is independent from the Rule 11 obligation not to file a frivolous suit, but they are closely related concepts. *Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003) ("Certainly, it is not improper to file a non-frivolous claim in the hope of getting paid."); *see also Carr v. Tillery*, 591 F.3d 909, 920 (7th Cir. 2010) ("Although the suit is not frivolous, or at least not utterly so, it is so lacking in merit . . . that its pursuit by the plaintiff indicates a motive to harass."). Improper purposes are non-exhaustively defined in the Rule as to "harass, cause unnecessary delay, or needlessly increase the cost of litigation[.]" Fed. R. Civ. P. 11(b)(1). The Court "determine[s] whether a party's conduct was imposed for an improper purpose by an objective standard." *Pac. Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir. 1994).

Distilling Defendants' argument on "improper purpose" to its core, Defendants contend that the suit was filed for an improper purpose because it was intended not to win a fraud or Illinois Physical Fitness Services Act claim for the Class, but to harm the Butlers reputationally and financially, and ultimately, "get [Rick] away from his prey" by driving him from the sport of volleyball. (*See* Defs.' Mem., dkt. 203 at 43; Exhibit 5 to Defs.' Mem, dkt. 203-5 at 4.) (The facts don't bear this out, as discussed below, but Plaintiff takes the assertion at face value for now.) All sanctions assessments are, by their nature, highly fact-bound to the claims in the case. *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1025, 1028 (7th Cir. 1999) ("The decision to impose sanctions is left to the discretion of the trial court in light of the available evidence[,]" and "[t]he

application of Rule 11 to the facts and circumstances of a particular case is an exercise of the trial court's discretion, which [is] reviewed for abuse of discretion.").

In a case which had a good-faith basis to allege that Defendants were defrauding Plaintiff and the Class by withholding the truth of Rick Butler's sexual abuse of minors, it just is not outside the bounds for Defendants to incur reputational and financial damage. That is, in a sense, the point: the gravamen of the suit is that Defendants are withholding information that *should have* diminished the value of their services in the eyes of consumers, and *should have* damaged their reputation as "extremely qualified" coaches. For that reason, they owe the Class the money paid to them. The Court cannot allow a defendant to turn any unsuccessful, but nonfrivolous, fraud suit into a sanctionable offense because it damaged their reputation or was calculated to injure them. The inquiry collapses in such a case. *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989) ("Rule 11 is not a fee-shifting statute in the sense that the loser pays."). Put another way, where a plaintiff does not attempt to reach beyond what can be achieved with the well-founded claims in the case, there is no improper purpose to be found there. *See F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 581 (5th Cir. 2008) ("Doubtless many plaintiffs have multiple purposes in pursuing litigation. And so long as the merits of their claim, viewed objectively, are supported by a good-faith belief that the allegations are well founded and not frivolous, the subjective motivation for pursuing the claim and the multiple purposes are ordinarily of no moment.").

In any event, the facts don't support any possible story of improper purpose. Defendants' argument on this point—though scattered throughout the brief—relies almost entirely on forum posts from Volleytalk.com. (*See* Defs.' Mem., dkt. 203 at 10–12, 13–14.) The vast, vast majority of the statements quoted by Defendants that purportedly demonstrate Plaintiff's bad motives are

forum posts on Volleytalk.com that were not made by her, though they are misleadingly presented by Defendants as if they were. Defendants attempt to explain this sleight of hand by saying that a "like" constitutes an endorsement. (*Id.* at 11 n.3.)[4] Setting aside this questionable proposition, Defendants' quotes from these posts deliberately elide whether they are statements by Plaintiff or by some other anonymous user of the forum. This tactic is so endemic to the brief that Plaintiff cannot effectively respond here; instead, in the event the Court wishes to delve into this issue, Plaintiff has attached an annotated version of the brief that identifies when a particular quote is in fact being made by some other username. (*See* Annotated Brief ("Annotated Br."), attached hereto as Exhibit 2.) The handful of quotes that are actually from Mullen do not demonstrate that anyone used this lawsuit for any purportedly "improper" purpose.

Moreover, Defendants have no evidence that Plaintiff ever reached beyond what could be fairly achieved with the lawsuit. The record demonstrates the opposite. When Plaintiff was required by the Court to tender a settlement demand to Defendants, she proposed a framework that exactly tracked her claims: that parents should be permitted to make the choice about doing business with Sports Performance with full knowledge of the facts. She proposed that the Parties submit to a single-issue arbitration on the extent to which Rick had inappropriate sexual contacts with or made sexual advances on players while they were participants at Sports Performance. (*See* Letter from Jay Edelson to Danielle D'Ambrose, attached hereto as Exhibit 3 at 6.) The arbitrator would take evidence and make findings of fact. (*Id.*) Those findings would be distributed to the Class, and—if the arbitrator found that there were inappropriate sexual

---

[4]     Defendants justify this by claiming Plaintiff's counsel did the same thing in arguing that the Butler's and Defendants' coaches' liking and sharing of posts about opting out of the Class sent a message of approval that Class members should have opted out. (*See* Plaintiff's Amended Motion and Memorandum for Sanctions, dkt. 143 at 14.) The Butlers' choice to particularly signal approval of a post, for the purpose of making that approval clear to a wider audience, is a very different point than saying anything someone "likes"—and does so anonymously, unlike the Butlers—is as good as something they said.

contacts—Class Members could submit a claim form in which they would be required to aver that they would not have paid money to Sports Performance if they had known the truth. (*Id.* at 7.) When it came down to it, what Plaintiff sought in the suit was precisely in line with what she had alleged. Defendants' motion has demonstrated no sanctionable, improper purpose.

### III.    Defendants have stated no sanctions argument based on "irrelevant" material.

Defendants take a broad swipe against "50 [p]ages" of the complaint, claiming that it contains "[i]rrelevant and [s]alacious" material. (Defs.' Mem., dkt. 203 at 17–20.) It is less than clear whether Defendants consider this an independent basis for sanctions or more evidence that the claim was filed for an "improper purpose[;]" in any event, no law is cited for the point. Plaintiff has identified few instances of sanctions being imposed for irrelevant material in a complaint, at least where the charge of irrelevance was not levelled with the credible charge that the allegations were false. *E.g.*, *Matter of Generes*, 69 F.3d 821, 826 (7th Cir. 1995) (affirming sanctions where "[party] used these proceedings as a vehicle for making serious and scandalous allegations which are totally bereft of any basis in fact or law"). In any event, at least one clear floor is Rule 12(f): an allegation that would survive a Rule 12(f) motion—which Defendants did not file—could not, correspondingly, be sanctionably irrelevant or scandalous. *See Blankenship v. Pushpin Holdings, LLC*, 157 F. Supp. 3d 788, 796 (N.D. Ill. 2016) ("A district court may strike an allegation as scandalous when it 'bears no possible relation to the controversy,' or when the allegations are 'devoid of any factual basis.') (quoting *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664–65 (7th Cir. 1992)).

All of the facts alleged are related to the controversy. They detail Rick's history of sexual and psychological abuse of players, including his and Cheryl's multi-decade campaign of denials and obfuscation. Defendants' misapprehension of these allegations as "irrelevant to the time period" is premised on the same misunderstanding of Plaintiff's argument discussed above. (*See*

14

Defs.' Mem., dkt. 203 at 18–19.) Defendants take issue with everything from the headers in the complaint to the allegations that Rick was banned by multiple professional organizations. (*Id.* at 19–20.)[5] Certainly these are related to the controversy sufficient to be discussed in this complaint. With no effort to apply law to fact, Defendants' brief does little more than make clear that they do not like a lot of things that Plaintiff said in the document. Defendants have not shown that this is a dispute proper for a sanctions motion, much less that Plaintiff should be sanctioned. *Cartwright v. Cooney*, 788 F. Supp. 2d 744, 755 (N.D. Ill. 2011) ("Rule 11 should not be used as 'a battleground for satellite controversies wherein, in effect, the tail would wag the dog, potentially diverting judicial resources from the prompt disposition of the merits of controversies.'") (quoting *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Financial Servs., Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993)). Defendants' motion should be denied.

## IV.    Plaintiff should not be sanctioned for "harassing" Defendants.

Defendants claim, over a number of sections of the brief, that Plaintiff harassed them after the suit was filed. (*See* Defs.' Mem., dkt. 203 at 13–15.) The support for this argument is largely a series of Volleytalk posts that are, again, not Mullen. (*See* Annotated Br. at 13–15.) For good measure, Defendants do include at least one quote from Mullen responding to a press release by defense counsel, which evidences no harassment at all. (*See* Defs.' Mem., dkt. 203 at 14.) Defendants then claim that Mullen was mean to the Sports Performance staff and team at a

---

[5]    Defendants leave no rock unthrown, going so far as to produce alleged photos of Christine Tuzi with Rick after Plaintiff alleged that Rick had no further contact with Christine after her abortion in 1987. (*See* Defs.' Mem., dkt. 203 at 18.) Plaintiff does not know what to make of this—having been deprived of any discovery on Rick's relationship with Christine—but even if Defendants were absolutely right that this turned out to be incorrect, it is not sanctionable. *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 861 (N.D. Ill. 2015) ("[A]lthough [defendant] highlights several factual inconsistencies between certain of Plaintiffs' allegations and specific bits of evidence, those inconsistencies are overshadowed by the colorable specter of wrongdoing that arose from [defendant's conduct.]")

competition. (*Id.* at 14–15.) Defendants have not explained what this has to do with anything, nor have they shown why Plaintiff should, or could be, sanctioned for it.[6]

## V. Defendants have zero explanation or authority for why counsel's litigation conduct is sanctionable.

Over another twelve pages of their motion, Defendants seek to sanction Plaintiff's counsel for advocating for their client and setting sanctions "traps" for them. Defendants complain that (1) Plaintiff's counsel repeatedly advised the Court that Defendants were impermissibly communicating with the Class (*id.* at 29–34), (2) counsel was a difficult opponent in their efforts to obtain discovery from Defendants (*id.* at 34–37), (3) counsel asserted that Rick was transferring assets out of the country (*id.* at 37–38), and (4) counsel answered discovery in bad faith (*id.* at 38–41). To the extent that any of this is the province of a post-judgment sanctions motion, these arguments are meritless.

As to the first contention, Defendants *were* impermissibly communicating with the Class, which this Court has now held twice. *Mullen v. GLV, Inc.*, 334 F.R.D. 656, 661–63 (N.D. Ill. 2020), *reconsideration denied,* No. 18 C 1465, 2020 WL 5630454 (N.D. Ill. Sept. 20, 2020). Defendants' continuing campaign to distort the allegations of this complaint (and, ultimately, encourage Class members to opt out) was exactly what Defendants had always done when confronted with the allegations against Rick; Plaintiff's counsel would not stand for it in litigation premised on that very conduct. Moreover, after the Court granted Defendants' motion for summary judgment and gave Plaintiff the opportunity to substitute a new Class representative, Defendants continued to misleadingly communicate with the Class and discourage another representative from stepping forward. They did this through comments to the

---

[6]     Plaintiff disputes these facts, for what it is worth, but she is not going to engage in a battle of declarations on a subject that is self-evidently beneath the Court's notice. Plaintiff will be happy to provide testimony on this subject if the Court desires it.

press and, regrettably, counsel's Facebook page. (Plaintiff's Status Report ("Status Report"), dkt. 195.)[7] Bringing this to the Court's attention is not sanctionable.

Second, Plaintiff's counsel makes no apology for aggressively pursuing discovery, quickly running to ground Defendants' efforts to hide discoverable information, and demanding that Defendants substantiate their claims that the allegations of the complaint were false. (Defs.' Mem., dkt. 203 at 34–37.) That Plaintiff's counsel gave no quarter in this litigation is, no doubt, true. Plaintiff's counsel brought this case *pro bono*, but give to it all the effort and zeal that they give to their paid work. How that might be sanctionable is unexplained and unexplainable. *See Byrne v. Bd. of Educ., Sch. Dist. of W. Allis-W. Milwaukee*, 741 F. Supp. 167, 171 (E.D. Wis. 1990) ("Rule 11 should not be applied to discourage vigorous . . . legal arguments."). In any event, this is just the type of "satellite controvers[y]" that is not deserving even of the attention that Defendants now insist the Court pay to it. *See Cartwright*, 788 F. Supp. 2d at 755.

Third, Defendants simply say that Plaintiff's counsel's declaration about the risk of Rick's transferring assets was false, which, again, is not a colorable basis for sanctions. *See Kichatay*, 327 F.R.D. at 205 ("[N]othing more than an attorney's assertion in a motion.").

Finally, Defendants have decided that Plaintiff's responses to discovery—which she tendered more a year and a half ago—were sanctionable. Defendants never brought this to the Court's attention when discovery was actually taking place, and cannot try to litigate the issue now. *Cooke v. Jackson Nat'l Life Ins. Co.*, 919 F.3d 1024, 1029 (7th Cir.), *cert. denied,* 140 S. Ct. 134 (2019) ("Yet [Plaintiff] does not contend that it requested, or that the district judge issued, any order requiring [Defendant] to produce additional documents in discovery. Rule 37 is

---

[7]     Plaintiff's counsel took no pleasure in citing counsel's Facebook page—which was brought to their attention, not independently investigated—and would not have if it wasn't clear that counsel's post was misleading *and* being seen by Class members (as Plaintiff explained at the time). (Status Report ¶¶ 6–10.)

17

irrelevant."). Plaintiff does not begin to concede the "merits" of these discovery arguments, but cannot think that is within the proper scope of a post-judgment sanctions motion—nor worth the Court's time—to evaluate them.

## IV. Defendants' motion is procedurally defective and identifies no basis to sanction anyone.

The Seventh Circuit has long stood alone in finding that no Rule 11 motion need be served prior to seeking sanctions, and that a letter is sufficient because it constitutes "substantial compliance" with the Rule. *McGreal v. Vill. of Orland Park*, 928 F.3d 556, 559 (7th Cir. 2019), *cert. denied sub nom. DeRose v. Vill. of Orland Park, Illinois*, 140 S. Ct. 956 (2020) (discussing Seventh Circuit's unique approach to Rule 11(c)(2)). Why that should be reconsidered is evident from this case: Defendants did serve two Rule 11 letters, neither of which adequately disclosed the nearly 100-page (eventually cut to 50-page) farrago of arguments that Defendants intended to launch. (*See* Exhibit 20 to Defs.' Mem, dkt. 203-20.) This does not constitute even "substantial compliance" with Rule 11 and, moreover, the Seventh Circuit should join the other Circuits in interpreting Rule 11(c)(2) to require tendering of a motion itself, as the Rule's text suggests. *See* Fed. R. Civ. P. 11(c)(2).

Finally, Defendants seek to sanction every attorney who has ever filed an appearance in this case. (*See* Defs.' Mem., dkt. 203 at 49–50.) Defendants' motion, in all of its length, discloses no basis for this request. Defendants' motion should be denied.

## <u>CONCLUSION</u>

Laura Mullen and the undersigned can't, and won't, deny that they wholeheartedly believe that Rick Butler should have absolutely nothing to do with youth volleyball. Plaintiff has—outside of this lawsuit—promoted the truth about Rick on social media, advocated that he be banned from the Amateur Athletic Union and USA Volleyball, and celebrated when programs

18

and sponsors left their association with him. (*See id.* at 11–12.) Plaintiff's counsel has, along with Rick's victims, testified to the state legislature in favor of changes to the law which, currently, protects people like Rick. (*Id.* at 43.) We apologize neither for holding those beliefs nor for holding Rick to account—well within the bounds of the law—in any appropriate forum. That does not render this lawsuit sanctionable.

Rick Butler has been hiding the truth for decades. We are confident that it will come out, whether through this suit or otherwise. But in the meantime, Defendants have made clear that they will pull any thread to obfuscate the issue and make it seem as if third parties have blessed Rick's behavior. They have already started that campaign, mischaracterizing this Court's ruling on summary judgment as vindication for Rick despite the fact that the truth of the allegations against him were never tested. Let there be no mistake: they will treat the mere filing of this motion as yet another arrow in their quiver to mislead parents into entrusting their children to a sexual predator. This is the same strategy of disinformation that Plaintiff alleged was actionable. Defendants' claim that Plaintiff should be sanctioned for bringing this case takes us all the way through the looking glass. Defendants' motion should be denied.

Respectfully submitted,

**LAURA MULLEN,** individually and on behalf of a class of similarly situated individuals,

Dated: October 5, 2020                    By: /s/ Jay Edelson
                                              One of Plaintiff's Attorneys

                                          Jay Edelson
                                          jedelson@edelson.com
                                          Ryan D. Andrews
                                          randrews@edelson.com
                                          Eve-Lynn J. Rapp
                                          erapp@edelson.com
                                          Christopher L. Dore
                                          cdore@edelson.com

19

J. Eli Wade-Scott
ewadescott@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff and the Class*