IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| LAURA MULLEN, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff,*<br><br>v.<br><br>GLV, INC., d/b/a SPORTS PERFORMANCE VOLLEYBALL CLUB and GREAT LAKES CENTER, an Illinois corporation, RICKY BUTLER, an individual, and CHERYL BUTLER, an individual,<br><br>    *Defendants.* | Case No. 18-cv-1465<br><br>Honorable Matthew F. Kennelly |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
FOR SANCTIONS AGAINST PLAINTIFF AND HER ATTORNEYS**

Dated: October 15, 2020

Danielle D'Ambrose
D'AMBROSE P.C.
205 North Michigan Avenue, Suite 810
Chicago, IL 60601
(312) 396-4121
ARDC No. 6323782

Attorney for Defendants
*Rick Butler, Cheryl Butler, and
GLV, Inc. d/b/a Sports Performance Volleyball Club*

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**............................................................................................................ii

**ARGUMENT**..................................................................................................................................1

I.     **PLAINTIFF'S CONCLUSORY STATEMENTS DO NOT REBUT DEFENDANTS' FACT-SPECIFIC ARGUMENTS AND EVIDENCE**......................3

        A.     **Plaintiff's Continuously-Evolving Factual Theory of Fraud Contradicts Her Original Allegations**................................................................4

        B.     **The Statements Mullen "Liked" on Social Media are Attributable to Mullen**..........................................................................................................6

        C.     **Class Counsel's Discovery Misconduct Cannot Be Justified or Excused**..........................................................................................................7

        D.     **Plaintiff Misrepresents Defendants' Arguments and Evidence**......................10

II.     **CONTINUED PARTICIPATION IN THE CAMPAIGN TO DESTROY THE BUTLERS' REPUTATIONS AND BUSINESS WARRANT SEVERE SANCTIONS**..........................................................................................................12

**CONCLUSION**............................................................................................................................14

# **TABLE OF AUTHORITIES**

**United States Supreme Court Cases:**

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ...................................................................................................12

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) ..................................................................................................6

**United States Court of Appeals Cases:**

*Bland v. Roberts*,
    730 F.3d 368 (4th Cir. 2013), *as amended* (Sept. 23, 2013) ..............................................6

*Bonte v. U.S. Bank, N.A.*,
    624 F.3d 461 (7th Cir. 2010) ...................................................................................3, 4, 8

*Cooke v. Jackson Nat'l Life Ins. Co.*,
    919 F.3d 1024 (7th Cir.), *cert. denied,* 140 S. Ct. 134 (2019) ...........................................9

*Divane v. Krull Elec. Co.*,
    200 F.3d 1020 (7th Cir. 1999) ...................................................................................2

*First Bank of Marietta v. Hartford Underwriters Ins. Co.*,
    307 F.3d 501 (6th Cir. 2002) ....................................................................................1

*Fuery v. City of Chicago,*
    900 F.3d 450 (7th Cir. 2018) ...................................................................................12

*H.K. Porter Company, Inc. v. The Goodyear Tire & Rubber Co.*,
    536 F.2d 1115 (6th Cir.1976) ...................................................................................9

*Jimenez v. Madison Area Tech. Coll.*,
    321 F.3d 652 (7th Cir. 2003) ...................................................................................13

*Knight First Amendment Inst. at Columbia Univ. v. Trump*,
    928 F.3d 226 (2d Cir. 2019) ......................................................................................6

*Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*,
    912 F.3d 1049 (7th Cir. 2019) ...................................................................................7

*Markel v. Board of Regents of the Univ. of Wisconsin*,
    276 F.3d 906 (7th Cir. 2002) ...................................................................................10

*Pierce v. F.R. Tripler & Co.*,
  955 F.2d 820 (2nd Cir.1992) ..................................................................................10

*United States v. Farris*,
  532 F.3d 615 (7th Cir.2008) ....................................................................................8

**United States District Court Cases:**

*Cintora v. Downey*,
  No. 08-CV-2298, 2010 WL 786014 (C.D. Ill. Mar. 4, 2010) ..............................2

*Clevenger v. Bolingbrook Chevrolet, Inc.*,
  401 F. Supp. 2d 878 (N.D. Ill. 2005) ....................................................................9

*Dotson v. Bravo,*
  202 F.R.D. 559 (N.D. Ill. 2001) ............................................................................9

*MCI WorldCom Network Services, Inc. v. Atlas Excavating, Inc.*,
  No. 02 C 4394, 2006 WL 3542332 (N.D. Ill. Dec. 6, 2006) ..............................2

*Wafra Leasing Corp. v. Prime Capital Corp.*,
  247 F. Supp. 2d 987 (N.D. Ill. 2002) ....................................................................4

*Quela v. Payco–Gen. Am. Credits, Inc.*,
  No. 99 C 1904, 2000 WL 656681 (N.D. Ill. Mar. 26, 2000) ..............................12

Defendants, GLV, Inc. d/b/a Sports Performance Volleyball Club and Great Lakes Center ("GLV"), Rick Butler ("Rick"), and Cheryl Butler ("Cheryl") respectfully submit this Reply in Support of their Motion requesting this Court sanction Plaintiff and her attorneys.

## **ARGUMENT**

Defendants' 49-page Motion for Sanctions describes the pervasive, fraudulent scheme orchestrated by Jay Edelson and advanced by Laura Mullen in this action. The Motion for Sanctions against Plaintiff and her attorneys provides ample evidence that this case was filed to punish the Defendants for alleged abuse and to punish anyone who supported or continued to associate with the Defendants. *See First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 523-24 (6th Cir. 2002) (finding bad faith when plaintiff "improperly used the court system to try to force a result that it could not obtain under the applicable law"). Leading up to this lawsuit, Mullen personally campaigned for college coaches to boycott recruitment from Defendants' program, she encouraged the stalking and harassment of the Defendants at their business, and she pressured and threatened businesses to cut all ties with the Defendants. (Dkt. 203-4, pp. 18, 23; Dkt. 203-31)

Therefore, facing overwhelming evidence of their sanctionable conduct, Plaintiff's Response does not even attempt to confront the arguments and evidence in Defendants' Motion. Instead, Plaintiff simply asks, "So what?"

Rather than facing Defendants' arguments head-on, Plaintiff's Response takes a very different route. Plaintiff attempts to convince the Court that the misconduct at issue was merely a product of their passion, twice declaring that "counsel makes no apology" for their "effort and zeal" in this matter. (Dkt. 214, pp. 21, 23) The Response, while mischaracterizing the severity of the conduct, admits that "Plaintiff has—outside of this lawsuit—promoted the truth about Rick on

1

social media, advocated that he be banned from the Amateur Athletic Union and USA Volleyball, and celebrated when programs and sponsors left their association with him." (Dkt. 214, p. 22) However, no amount of rebranding can overcome the clear evidence that Plaintiff's lawsuit is an abuse of justice and the culmination of a meritless and vindictive campaign that has unfairly tarnished the Defendants' reputations and inflicted irreparable harm on their business.

Plaintiff's decision to ignore the Defendants' arguments further proves that this case was never about the fraud, it was never about the fees paid by the Class, and it was never about protecting players. Plaintiff fails to rebut Defendants' specific arguments and evidence demonstrating that the Complaint was filed with knowledge that its claims were meritless and with the improper purpose of harming the Defendants' reputations and business relationships. (Dkt. 214, p. 16) Instead, Plaintiff's submits irrelevant discussions of the abuse allegations, she relies on inadmissible evidence, and she advances, yet again, a new theory of factual liability against Defendants. (Dkt. 171) Other times, Plaintiff simply responds to Defendants' fact-specific arguments with a far-reaching, conclusory statement that does nothing to rebut the facts and evidence contained in Defendants' arguments.

Defendants' Motion for Sanctions described the specific conduct to be sanctioned and submitted evidence in support of their arguments. Yet, even after Plaintiff admits that "[a]ll sanctions assessments are, by their nature, highly fact-bound to the claims in the case," the Response deliberately ignores significant arguments, facts, and evidence raised in Defendants' Motion. *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1025, 1028 (7th Cir. 1999). "The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession." *Cintora v. Downey*, No. 08-CV-2298, 2010 WL 786014, at *4 (C.D. Ill. Mar. 4, 2010); *MCI WorldCom Network Services, Inc. v. Atlas Excavating, Inc.*, No. 02 C 4394, 2006 WL

3542332 *3 (N.D.Ill.Dec. 6, 2006). Where Plaintiff failed to respond to Defendants' arguments, much less cite other, more persuasive cases, the Court could, and should, thus conclude that Plaintiff has waived any argument in opposition to Defendants' position. *Id.*

## I. PLAINTIFF'S CONCLUSORY STATEMENTS DO NOT REBUT DEFENDANTS' FACT-SPECIFIC ARGUMENTS AND EVIDENCE

Defendants argued that Plaintiff's Complaint contains slanderous, irrelevant, and unsubstantiated allegations which further proves that Plaintiff and her counsel abused the judicial system to harm to Defendants' business and reputation. (Dkt. 203, p. 24) In response, Plaintiff fails to rebut the specific issues and evidence raised by Defendants, and simply states that "[a]ll of the facts alleged are related to the controversy." (Dkt. 214, p. 18) This type of general rebuttal "argument" made by Plaintiff has been addressed in Seventh Circuit cases, where courts have determined that general denials of wrongdoing do not respond to the arguments and evidence and, therefore, should be considered a concession. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (finding waiver of argument, explaining, merely identifying the "factual and legal basis" of their claim does little to save them from dismissal when [their opponent] has painstakingly explained precisely why that factual basis, taken as true, was insufficient).

Defendants also presented arguments and evidence establishing that Plaintiff and her attorneys intentionally pled slanderous, irrelevant, and unsubstantiated allegations to maximize the publicity of this lawsuit and harm to Defendants' business and reputation. (Dkt. 203, p. 24) In response, Plaintiff does not contend with any of the specific allegations Defendants addressed in their Motion, and instead concludes that "the facts don't support any possible story of improper purpose." (Dkt. 214, p. 16) There, Plaintiff also reaches the erroneous conclusion that any reputational and financial damage suffered by Defendants "is, in a sense, the point" of bringing a claim for fraud. *Id.* However, Plaintiff's unsupported contention is undermined by the Federal Rule

3

of Procedure 9(b), which was enacted for the purpose of *protecting* defendants from reputational harm resulting from a frivolous or otherwise improper claim - the precise situation Defendants now face. *See Wafra Leasing Corp. v. Prime Capital Corp.*, 247 F. Supp. 2d 987 (N.D. Ill. 2002).

As such, Plaintiff has not provided any meaningful, substantive response to the arguments made by Defendants in their Motion for Sanctions, and her failure to do so operates as a waiver of Plaintiff's right to challenge those arguments. *See Bonte*, 624 F.3d at 446 (holding that the plaintiffs' failure to oppose an argument "has the entirely predictable effect of conceding" that their claims are insufficient).

### A. **Plaintiff's Continuously-Evolving Factual Theory of Fraud Contradicts Her Original Allegations**

If Defendants' Motion "is premised on an ongoing, fundamental misunderstanding about Plaintiff's legal argument" as Plaintiff claims, it is only because Plaintiff has advanced several conflicting legal arguments throughout this litigation. (Dkt. 214, pp. 18-19) In a bad faith attempt to evade sanctions, Plaintiff advances a new theory that she "has been clear from the moment the complaint was filed that she had seen some of the news coverage about Rick" and declares that "Plaintiff has never said she did not know about the allegations." (Dkt. 214, pp. 6, 11) However, Mullen's prior arguments to this Court prove that Mullen is, again, untruthful. In her Response to Defendants' Motion to Dismiss, Mullen explicitly argued:

> The Court should decline to take judicial notice of the news articles appended to its Motion [to Dismiss], as none of the articles are referenced in the Complaint and they are inconsistent with her claims that **she did not see any information online until June of 2017 due to Defendants' concealment**. (Compl. ¶ 175.)

(Dkt. 57, p. 20 fn. 4) (emphasis added) Plaintiff continued, "even if Plaintiff **could or should have seen the articles**, her reliance on Defendants' omissions would not be unjustified." (Dkt. 57, pp.

20-21) Based on Plaintiff's false claims and her attorneys' untruthful arguments to this Court, the Court ruled that:

> Defendants argue that any reliance by Mullen was not justifiable, because information regarding sexual abuse allegations involving Butler was available on the Internet, **so she ought to have seen and considered these before agreeing to sign her daughter up for the club**. But Mullen has alleged that she relied on defendants' deceptive conduct and was misled, and this is sufficient for present purposes.

(Dkt. 68, pp. 5-6) (emphasis added) From an objective standpoint, the record shows that, in support of her conflicting theories, Plaintiff referenced the exact same factual allegation in her Complaint. (Dkt. 1, ¶ 175) ("Laura eventually found links in June of 2017 on the internet that led her to substantial details of Butler's sexual abuse.") In her Response to Defendants' Motion for Sanctions, Mullen cited Paragraph 175 of her Complaint to support the argument that "Plaintiff never said she did not know about the allegations. Plaintiff put that very fact in her complaint." Yet, Mullen previously used the same factual allegation to support that "she did not see any information online until June of 2017 due to Defendants' concealment." (Dkt. 57, p. 20 fn. 4) Therefore, Plaintiff's attempt to reframe her allegations only further evidences her willingness to abuse the judicial system.

Furthermore, in every version of Mullen's story, she claimed to have learned "substantial details of Butler's sexual abuse" from a Facebook Page in June of 2017, and, based on that information, she would not allow her daughters to participate in "any GLV associated volleyball programs." (Dkt. 1, ¶ 160) While the Response desperately tries to recast the GLV Summer League as anything but a GLV event, it cannot overcome the uncontested fact that Summer League is the *third* program Mullen's daughter attended at the Great Lakes Center after June of 2017, when Mullen claims to have learned "the truth." (Dkt. 171-19, ¶¶ 15-16)

Plaintiff's Response deliberately ignores Laura Mullen's admission that, after June of 2017, she paid GLV for her daughter to participate in two additional GLV programs in September of 2017, under the supervision of GLV coaches and taking place in the Great Lakes Center. (Dkt. 203-20; Dkt. 71-8) Thus, Mullen's claim that, "had she known about Butler's past abusive behavior, she would not have sent her daughters to GLV at all" is simply not true. (Dkt. 83-1, p. 14) Sanctions should be imposed because Mullen and her attorneys knew, at the time they filed the Complaint, that Mullen's factual claims were untrue and that her legal claims were meritless. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (holding that one of the basic purposes of Rule 11 is to "deter baseless filings in the district court").

### B. The Statements Mullen "Liked" on Social Media are Attributable to Mullen

In support of their Motion for Sanctions, Defendants submitted substantial evidence related to Laura Mullen's social media activity, because Mullen's statements are direct evidence of her sanctionable conduct. The evidence included, *inter alia*, numerous social media posts and comments "liked" by Mullen, and each of these statements are attributable to Mullen as if she were the author. *See Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 237 (2d Cir. 2019). From a common-sense standpoint, Laura Mullen's affirmative act of clicking the "like" button is evidence that she, in fact, *liked* the message that was shared in the post. Courts agree with this logic, holding that "the act of 'liking' a [social media] post makes the post attributable to the 'liker,' even if he or she did not author the original post." *See Bland v. Roberts*, 730 F.3d 368, 386 (4th Cir. 2013), *as amended* (Sept. 23, 2013) ("[C]licking on the 'like' button literally causes to be published the statement that the User 'likes' something, which is itself a substantive statement.... That a user may use a single mouse click to produce that message ... instead of typing the same message with several individual key strokes is of no constitutional significance."); *Knight First*

6

*Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 237 (2d Cir. 2019) (holding that "liking" a tweet conveys approval or acknowledgment of a tweet and is therefore a symbolic message with expressive content). Plaintiff's Response appears to conclude that the Court should disregard evidence of statements Mullen "liked" simply because she did not author the posts herself. (Dkt. 214, p. 17) However, Plaintiff offers no rationale or legal authority to support such a conclusion. Furthermore, Plaintiff did not further address any specific argument or evidence in Defendants' Motion. Thus, her failure to respond should be considered a concession. *See Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053–54 (7th Cir. 2019).

As Defendants previously noted, Mullen's activity log on Volleytalk contains over 700 entries—500 of which occurred in 2018 alone—largely taking place within at least 17 different threads related to Rick and Cheryl Butler. (Dkt. 203, p. 13) The full extent of Mullen's improper statements could not possibly be discussed and/or quoted in Defendants' Motion. Therefore, Defendants incorporated the full extent of the evidence into its Motion by reference to exhibits. However, Plaintiff's argument focused generally on those statements explicitly "quoted" in Defendants' brief, and the Response makes no mention of any specific statement. Plaintiff's failure to rebut any of those statements which were not explicitly quoted in Defendant's brief should be considered a concession of the argument. *See Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053–54 (7th Cir. 2019).

**C.** **Class Counsel's Discovery Misconduct Cannot Be Justified or Excused**

Facing ample evidence of their misconduct, Class counsel attempts to reframe their sanctionable discovery conduct as zealous advocacy. Yet, much like the rest of Defendants' claims, Plaintiff fails to respond to the specific arguments and evidence at issue in Defendants'

7

Motion. (Dkt. 214, p. 21) Therefore, Plaintiff has waived any further argument on the matter. *See Bonte*, 624 F.3d at 466; *United States v. Farris*, 532 F.3d 615, 619 (7th Cir.2008).

Plaintiff's only attempt to justify their false allegations related to discovery is with a general reference to the Court's Order sanctioning the Defendants and their counsel. (Dkt. 184) Throughout this entire litigation, Class counsel *repeatedly* accused both Defendants and Defense counsel of communicating with class members "for the purposes of misleading them about the nature of Plaintiff's lawsuit." (Dkt. 17, p. 1) However, the Court's ruling imposing sanctions against Defendants does not substantiate the factual allegations made by Plaintiff in numerous filings throughout this case. The Court sanctioned the Defendants after it determined that certain communications between Defendants and the class, which took place nearly one full year after Plaintiff's accusations began, "indicate[d] an intent to encourage opt-out" and were therefore improper. (Dkt. 184, p. 13) The Court did not find any of Defendants' communications to be misleading, and it did not issue corrective notice. Likewise, the Court's Order sanctioning Defense counsel does not substantiate Plaintiff's repeated accusations of misconduct. The Court's ruling on counsel's class communications was based on Defense counsel's single communication to a class member who "initiate[d] the contact" was improper because party was represented, and the Court explicitly stated that Defense counsel's "request for information" was "not coercive." *Id.* Therefore, the Court's Order does not rebut Defendants' specific facts and arguments related to each false and misleading accusation Plaintiff made to this Court about Defendants and their attorney. (Dkt. 17, p. 1)

Plaintiff's Response avoids any discussion of Mullen's deficient discovery responses and simply proclaims, inaccurately, that "Defendants never brought [the issue of Plaintiff's deficient discovery response] to the Court's attention when discovery was actually taking place, and cannot

8

try to litigate the issue now." (Dkt. 14, p. 21) Plaintiff's erroneous conclusion is accompanied by a misleading excerpt from a Seventh Circuit ruling which, of course, was responsive to the particular issue in that case. *Cooke v. Jackson Nat'l Life Ins. Co.*, 919 F.3d 1024, 1029 (7th Cir.), *cert. denied,* 140 S. Ct. 134 (2019) (considering whether the Rules of Civil Procedure require a defendant to attach documents to a filing that opposes a plaintiff's request, under Rule 12(c), for judgment on the pleadings). Defendants' Motion argues the correct application of Rule 37, which is that "issuance of a court order in the first instance is unnecessary before a violation of the rule can be found." *Dotson v. Bravo*, 202 F.R.D. 559, 570 (N.D. Ill. 2001). Plaintiff's brief and limited discussion of Defendants' arguments related to discovery do not come close to addressing the specific contentions and evidence at issue in Defendants' Motion.

In response to Defendants' arguments and evidence of attorney Jay Edelson intentionally submitting false testimony to the Court, both in a sworn Declaration and again at a hearing, Plaintiff simply concludes that the perjury is non-sanctionable and is, apparently, "nothing more than an attorney's assertion in a motion." (Dkt. 214, p. 22) Plaintiff's argument is obviously erroneous, as "courts have uniformly held that perjury of a single witness, false evidence (in the absence of attorney involvement) or mere nondisclosure are insufficient to establish fraud upon the court." *Dotson v. Bravo*, 202 F.R.D. 559, 569 (N.D. Ill. 2001), *aff'd,* 321 F.3d 663 (7th Cir. 2003)*; See also, H.K. Porter Company, Inc. v. The Goodyear Tire & Rubber Co*., 536 F.2d 1115, 1119 (6th Cir.1976) ("included under the guise of fraud on the court are those situations where attorneys, as officers of the court, have violated their duty of honesty to the court")

Moreover, Class Counsel relies on its own settlement demand to prove the validity of Plaintiff's claims violates the plain language of Rule 408 and is irrelevant to Plaintiff's argument that neither she nor her attorneys filed this case for an improper purpose. *See Clevenger v.*

*Bolingbrook Chevrolet, Inc.*, 401 F. Supp. 2d 878, 884 (N.D. Ill. 2005), *and Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2nd Cir.1992) (relying on plain language of Rule 408 to find evidence inadmissible when party sought to introduce settlement to prove its state of mind).

### D.     **Plaintiff Misrepresents Defendants' Arguments and Evidence**

Plaintiff attempts to rebut Defendants' evidence showing that Mullen's allegations of "physical and emotional abuse" related to Mullen's daughter were false. (Dkt. 214, p. 13) Again, Plaintiff fails to address any specific statement, document, or argument, and instead concludes that "[n]one of the this [evidence] contradicts what Plaintiff said." *Id.* However, to the extent that Plaintiff relies on the Declaration of Mullen to establish these allegations, the argument fails because Defendants specifically objected to the admissibility of Mullen's statement based on her lack of personal knowledge and hearsay.[1] (Dkt. 172, p. 5; Dkt. 171–19 ¶ 6); *see Markel v. Board of Regents of the Univ. of Wisconsin*, 276 F.3d 906, 912 (7th Cir. 2002).

Likewise, when Defendants' requested in discovery that Mullen state the facts related to her daughter's departure from the club, Plaintiff does not come close to supporting the truth of her Complaint's allegations. In response to the discovery request, Plaintiff merely stated that her daughters "left Sports Performance in 2017 because of concerns over her daughter A.M.'s health and how the club was handling it." (Dkt. 144-4, p. 22) Plaintiff's failure to address the email communications in her Response, her evasive discovery answers, and her lack of admissible testimony all weigh in favor of Defendants' argument that Plaintiff claims are not true.

Furthermore, the Response largely disregards the fact that Plaintiff filed this case on behalf of a Class of individuals who were allegedly defrauded. Plaintiff's counsel, who manufactured the

---

[1] Specifically, Defendants stated that, "[i]n her declaration, Mullen had managed to reach the legal and factual conclusion that Rick Butler 'verbally and emotionally abused' her daughter without providing any specific facts or evidence upon which she basis this claim. Additionally, this statement constitutes inadmissible hearsay." Id.; see Markel v. Board of Regents of the Univ. of Wisconsin, 276 F.3d 906, 912 (7th Cir. 2002).

claims in this lawsuit on behalf of the accusers, struggles to decipher who the "victims" are in this lawsuit, what the "allegations" are, and what the court's decision means. For example, when Defendants discuss to the "core allegations" in their Motion, they refer to the allegations of fraud brought by Mullen – the *actual*, *legal* causes of action in this case. (Dkt. 203, p. 23; Dkt. 214, p. 14) Yet, Plaintiff's Response confuses Defendants' argument and refers to those allegations as though Defendants were discussing the claims of abuse.

As a result, Plaintiff misrepresents the nature of Defendants' argument related to the allegations of abuse. (Dkt. 203, p. 23) Defendants assert that Plaintiff's legal theory was flawed, because even her own evidence contradicted her version of "the truth." *Id.* The argument is limited to the information and documents known to Plaintiff and her attorneys when they filed her Complaint, and Defendants identify inconsistencies in Mullen's evidence and her version of the "truth." (Dkt. 203, pp. 35-36)

Plaintiff further misunderstands that Defendants' arguments related to Plaintiff's refusal to identify which factual allegations she believes represent "the truth." (Dkt. 203, p. 35) Defendants contend that Plaintiff's version of "the truth" is simply whatever version she subjectively decides to believe, which has allowed her to morph her claims to suit whatever argument was necessary to survive different phases of this litigation. Defendants' Motion for Sanctions then pointed to examples where information known to Plaintiff contradicts the "truth" alleged in her Complaint, which contradicts her claim that she knows what "the truth" is at all. (Dkt. 203, p. 25) Thus, Defendants presented evidence of another incremental abuse of justice, as the investigation of Edelson PC would have revealed that the claims in the Complaint conflict with the evidence known to Mullen and her attorneys at the time of filing. *See Fuery v. City of Chicago*, 900 F.3d 450, 455 (7th Cir. 2018) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 35 (1991)).

11

## II. CONTINUED PARTICIPATION IN THE CAMPAIGN TO DESTROY THE BUTLERS' REPUTATIONS AND BUSINESS WARRANT SEVERE SANCTIONS

The Response states, "Laura Mullen and the undersigned can't, and won't, deny that they wholeheartedly believe that Rick Butler should have absolutely nothing to do with youth volleyball…We apologize neither for holding those beliefs nor for holding Rick to account—well within the bounds of the law—in any appropriate forum." (Dkt. 214, pp 22-23) Plaintiff's contention that the conduct alleged in Defendants' Motion – including stalking, harassment, and death threats – falls "well within the bounds of the law" is further proof that severe sanctions are warranted. Courts consider the prejudice to the judicial system and the potential for punishment and deterrence when assessing sanctions. *Quela v. Payco–Gen. Am. Credits, Inc.*, No. 99 C 1904, 2000 WL 656681, *8 (N.D. Ill. Mar. 26, 2000). In light of Plaintiff's pattern of judicial abuse and her malicious conduct towards the Defendants, this Court should award severe sanctions in an amount which would deter future abuse of the judicial system.

The evidence is clear that this case was brought as part of a bigger scheme to shut down the Defendants' business through any means necessary, and the actions of those in that scheme leading up to, and throughout, this litigation show that their threats against Defendants should be taken seriously. The need "to deter future parties from trampling upon the integrity of the court" is extremely high in this case, as those involved in the scheme have already vowed to take additional action taken to ensure the Defendants are removed from the sport. (Dkt. 203-3, p. 56)

In deciding the appropriate sanctions, courts consider the seriousness of the violations and whether the violations were intentional, as well as the nature and extent of the prejudice suffered or likely to be suffered by the parties in the future as a result of the violation. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). Mullen and her attorneys ensured that the Defendants would suffer permanent and irreparable harm upon filing her Complaint. Their decision to plead

nearly 50 pages of salacious allegations of sexual abuse of "underage athletes," combined with a misleading and improper reference to Michigan State, was certainly calculated to incite immediate, prejudicial publicity of Plaintiff's Complaint. What is profoundly obvious from the hundreds of posts, comments, and "likes" set forth in this Motion is that the actual victims alleged in this lawsuit – the class members – are rarely, if ever, mentioned. Furthermore, the actual harm alleged in this lawsuit – the fraud – is rarely, if ever, complained of. In fact, Plaintiff's attorneys were so determined to mislead the public about this lawsuit that they asked this Court to punish the Defendants for telling people that this case was about fraud. (Dkt. 48, pp. 1; 4-10) The Defendants were deeply prejudiced by the misconduct of Plaintiff and her attorneys from the moment this lawsuit was filed.

Through their false, fraudulent and salacious claims, Mullen and her attorneys exploited the judicial process to harass the Butlers and subjected the Defendants to unnecessary embarrassment and mental anguish. In Mullen's own words, they were pursuing this case to financially destroy the Butlers, "but more importantly and hurtful to Rick Butler by going after his name." (Dkt. 203-7, p. 4) Mullen confirmed their intention "to drag this out as long as possible and make it as public and embarrassing as possible for the Butlers/SPVB" and that "[a]nything they can do to damage the Butlers and their business has to be considered a positive." (Dkt. 203-2, p. 46) After Defendants warned the Plaintiff that they would be seeking sanctions for her misrepresentations in this lawsuit, Mullen doubled down on her false claims and allowed her daughter to play in a GLV program during the pendency of this lawsuit. (Dkt. 183, p. 22) Mullen's claims were so meritless and her behavior so unethical that the filing of her baseless Complaint amounts to a veritable attack on the judicial system. *See Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 656-57 (7th Cir. 2003).

This was never about fraud, because Plaintiff and each of her attorneys knew that the allegations against Rick Butler from the 1980s were never concealed. This was never about protecting athletes, because Plaintiff and each of her attorneys knew there had not been a single allegation of abuse made against Rick Butler since the 1980s. Through their false, fraudulent, and salacious claims, Mullen and her attorneys exploited the judicial process to publicly harass and humiliate the Butlers in hopes they would "be bled to death financially." (Dkt. 203-2, p. 41) The evidence confirms that Plaintiff intentionally lied about her motives, knowledge, and actions alleged in this litigation, justifying severe sanctions against Laura Mullen and her attorneys.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Motion for Sanctions and enter an Order granting the following relief:

A. Awarding Defendants reasonable attorneys' fees, costs, and expenses associated with defending this action;

B. Monetary sanctions in the form of a fine payable to the Court (in an amount to be determined by the Court);

C. A published, public reprimand of Jay Edelson, Alfred Kirkland Murray, Eve-Lynn J. Rapp, J. Eli Wade Scott, Ryan D. Andrews, Sydney M. Janzen, and Christopher Lillard Dore;

D. That Jay Edelson, Alfred Kirkland Murray, Eve-Lynn J. Rapp, J. Eli Wade Scott, Ryan D. Andrews, Sydney M. Janzen, and Christopher Lillard Dore attend 20 hours of continuing legal education in professionalism and legal ethics;

E. Referring this matter and Plaintiff's attorneys' conduct to the Illinois Attorney Registration and Disciplinary Commission; and

F. Any other relief that this Court deems just and proper.

Date: October 15, 2020

                                        Respectfully Submitted,
                                        GLV, INC., RICK BUTLER, and
                                        CHERYL BUTLER

                              By: */s/ Danielle D'Ambrose*
                                        One of Their Attorneys

Danielle D'Ambrose
D'AMBROSE P.C.
205 North Michigan Avenue, Suite 810
Chicago, IL 60601
P: (312) 396-4121 | F: (312) 574-0924
Danielle@DambrosePC.com
ARDC No. 6323782

*Attorney for Defendants*

**CERTIFICATE OF DELIVERY**

The undersigned, an attorney, certifies that pursuant to Section X (E) of the General Order on Electronic Case Filing for the Northern District of Illinois, service of the above and foregoing document on all attorneys of record was accomplished through the Court's Electronic Notice for Registrants on October 15, 2020.

*/s/ Danielle D'Ambrose*
