# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| LAURA MULLEN, individually and on behalf of all others similarly situated, *Plaintiff*, v. GLV, INC., d/b/a SPORTS PERFORMANCE VOLLEYBALL CLUB and GREAT LAKES CENTER, an Illinois corporation, RICKY BUTLER, an individual, and CHERYL BUTLER, an individual, *Defendants*. | Case No. 1:18-cv-1465 Honorable Matthew F. Kennelly |

## PLAINTIFF'S REPLY IN SUPPORT OF FEE PETITION

Class Counsel here expended more than a hundred hours—and more than $75,000 in attorney time—to investigate, appear in court, and brief the appropriate remedy for Defendants' willful interference with the Court-ordered Class notice process in this case. But Class Counsel did not ask to be compensated for all of those hours, nor to receive those fees. Instead, Class Counsel simply halved what they were asking for, all of which will be donated to charity.[1]

Defendants GLV, Inc., Ricky Butler, and Cheryl Butler do not think they should have to pay half of the fees. Indeed, the reader discovers, once they get to the end of the response brief, that Defendants think only the following hours were appropriately expended by a single attorney involved with the case:

---

[1] Defendants do not argue that this should in any way reduce the fees requested, and it should not. *Cf. Mays v. Springborn*, No. 01-CV-1254, 2014 WL 12730575, at *3 (C.D. Ill. Nov. 6, 2014) (citing *Blum v. Stenson*, 465 U.S. 886, 893–95 (1984)) (finding *pro bono* status of counsel irrelevant to fee award in civil rights case). What Class Counsel decides to do with the fees they are owed is not relevant to whether they are properly billed to Defendants.

1.      Two hours to issue and review all party and third-party discovery that revealed Defendants' misconduct;

2.      One hour to write a fifteen-page opening brief; and

3.      One and a half hours to write a nine-page reply brief.

(Defs.' Resp. to Fee Petition, dkt. 218 at 19.) Ultimately, Defendants request that the Court not even compensate those hours, concluding the petition should be denied in full. (*Id.* at 20.)

The essential unseriousness of Defendants' conclusion betrays the arguments that go before it. And sure enough, the content of Defendants' brief is primarily a *third* rehash of arguments that this Court has already twice rejected: that Defendants only harmed themselves in encouraging opt-outs, and, therefore, counsel should not be compensated (Defs.' Mot. to Reconsider Order on Mot. for Sanctions ("Defs.' Mot. to Reconsider"), dkt. 190 at 5, 12–13); and that Defendants didn't create the Facebook page or generate e-mails from the Class members so Class Counsel's investigation is not attributable to any act of theirs. (Defs.' Resp. to Mot. for Sanctions, dkt. 165 at 11; Defs.' Mot. to Reconsider, dkt. 190 at 12.) On this logic, Defendants argue that all time should be excluded for nearly all of Class Counsel's investigation and all court appearances, that all time should be excluded for all attorneys other than Mr. Murray, and on top of all of that, that Mr. Murray's rate should be cut. These arguments are simply ungrounded from the reality of the work required to expose Defendants' interference with the Class notice.

No doubt this Court has seen dozens, if not hundreds, of fee petitions and responses. Attorneys quibble over everything from vague time entries, to block billing, to attorneys performing clerical work. But a response that asserts the petitioning firm should have spent *four and a half hours*—3.4% of the documented time—should stand out. Class Counsel already halved their request in an effort to avoid a drawn-out fee dispute. On March 16, 2020, they

reached out and tried to settle this for $25,000, less than their original request, and didn't include time spent on the reply in support of the sanctions motion or any of the subsequent work on the fee petition. Class Counsel's offer was met with flat rejection. (Ex. D to Declaration of Jay Edelson ("Edelson Decl."), dkt. 192-1.) Class Counsel have done all they can to avoid demanding more resources from their own firm, from the Court, and even from Defendants. Defendants have improperly ensured that can't happen. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation.").

Class Counsel have, therefore, been forced to expend even more time on the fee petition. In an effort to foreclose yet more multiplication of these proceedings, and make this request all the more straightforward, they are waiving the time spent. Therefore, Class Counsel's request for $38,496.25.00 stands, which is half the amount of the fees incurred less dozens of hours more. The request is exceedingly reasonable and should be granted.

## I.     Class Counsel's hours investigating Defendants' conduct are compensable.

Class Counsel seek compensation for investigating Defendants' communications with the Class, appearing in court on the issue, and then briefing the motion for sanctions. Counsel agrees that only hours that result as a "but-for" cause of Defendants' misconduct should be compensated. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017). Defendants here argue (again) that that they should not have to pay for Class Counsel's work because other actors—Class members—sent Defendants e-mails and set up the Facebook page that were also the targets of Class Counsel's investigation. But Defendants have failed to identify any missed link in the causative chain: Class Counsel quite clearly would not have performed this investigation, appeared in Court, or briefed a motion for sanctions if Defendants had not engaged in—as this Court has twice made clear to them—precisely the sanctionable misconduct that

Class Counsel ultimately rooted out. *Goodyear*'s mandate that only fees incurred "but-for" the sanctioned actions is met.

In any event, the *Goodyear* standard still defers to the Court's exercise of "discretion and judgment." *Id.* As the Supreme Court put it:

> Trial courts undertaking that task "need not, and indeed should not, become green-eyeshade accountants" (or whatever the contemporary equivalent is). . . . "The essential goal" in shifting fees is "to do rough justice, not to achieve auditing perfection." . . . Accordingly, a district court "may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." . . . The court may decide, for example, that all (or a set percentage) of a particular category of expenses—say, for expert discovery—were incurred solely because of a litigant's bad-faith conduct. And such judgments, in light of the trial court's "superior understanding of the litigation," are entitled to substantial deference on appeal.

*Id.* (citations omitted). Here, the Court need not worry about auditing perfection because the hours sought by Class Counsel were all necessitated by Defendants' opt-out campaign as detailed below.

**A.      Class Counsel's investigation.**

Defendants seek to set aside virtually the entire investigation of Defendants' communications with Class members, including the entire investigation of the "Parents Against the Sports Performance Class Action Lawsuit" Facebook page and all issuance and review—save two hours—of discovery produced by Defendants.

The Facebook page contained an opt-out form and misleading information, which Defendants supported and directed people to. (*See* Pl.'s Mot. for Sanctions, dkt. 143 at 8–9.) The existence of the page was suspicious from the get-go, given that the Facebook page effectively provided the Class with the "e-mail" opt-out method that Defendants had sought at the notice stage and which the Court had denied. (*Id.* at 8.) This was a central part of Plaintiff's Motion for Sanctions, (*see id.*), and which the Court expressly relied on in finding that Defendants had

unlawfully encouraged Class members to opt out. (Order on Pl.'s Mot. for Sanctions ("Sanctions Order), dkt. 184 at 11, 13.) Nevertheless, Defendants contend that this investigation—the hours spent obtaining documents from Facebook, as well as the discovery issued to Defendants— revealed that the Facebook page was not set up by Defendants, and, thus, Class Counsel's time is not compensable in investigating it. Defendants also argue that Class Counsel would have had to review the e-mails between Defendants and Class members even if Defendants hadn't responded to them, and, in fact, had done nothing wrong. (Defs.' Resp. to Fee Petition, dkt. 218 at 7.)

But as the Court has made clear, Defendants did do something wrong. Class Counsel were right to investigate Defendants' relationship to the Facebook page and how they supported it, especially given that the investigation ultimately revealed Defendants' vocal support for the Facebook page as a resource to encourage opt-outs. (Pl.'s Mot. for Sanctions, dkt. 143 at 8–9 (discussing Facebook page).) Nor would Plaintiff have bothered to send Defendants discovery requests asking about the Facebook page and Defendants' communications with Class members if Class Counsel was not investigating whether Defendants were impermissibly communicating with the certified Class.[2] Put another way, Class Counsel did not do this work apropos of nothing; instead, they would never have expended considerable attorney and staff time "but-for" Defendants' sanctionable communications with Class members and interference with the Court-ordered notice. Counsel's efforts were required to get to "the bottom of what had occurred," (Sanctions Order, dkt. 184 at 14), which is the crux of compensability.[3] *Goodyear*, 137 S. Ct. at 1187.

---

[2]    These discovery requests were previously submitted to the Court as docket 123-2, Exhibit 2 to Pl.'s Status Report Regarding Class Notice (Pl.'s April 15, 2019 Status Report"), and concern only the opt-out campaign.
[3]    Defendants suggest that Plaintiff's counsel "hired a 'technologist'" to sort through Facebook's production. (Defs.' Resp. to Fee Petition, dkt. 218 at 5.) That's not correct: Mr. Sierra works for the firm.

**B.      Plaintiff's status reports.**

Defendants seek to exclude all time that Class Counsel spent preparing the status reports, which were provided to advise the Court on Defendants' improper communications with the Class. The argument is premised, primarily, on the same misguided logic above. (Defs.' Resp. to Fee Petition, dkt. 218 at 7–8.) Defendants again claim that all of this investigation and reporting to the Court was made necessary not by Defendants' campaign to obtain opt-outs—which did, in the end, exist—but by independent actors that Defendants had nothing to do with. It's self-evident that the status reports, just like the discovery that preceded them, had no purpose *but* to deal with Defendants' improper communications with the Class, and are compensable for that reason.

Defendants also argue that the time spent preparing the reports was unreasonable. As explained in Plaintiff's opening petition, these were not routine status reports. The documents were the considered—and relatively dense—presentation of Plaintiff's factual investigation into Defendants' conduct, which required some effort to lucidly explain to the Court. (*See* Pl.'s April 15, 2019 Status Report, dkt. 123 (three-page report describing status of Facebook subpoena, deficiencies in Defendants' discovery responses, Cheryl Butler's communications in encouraging opt-outs and sending Class members to Facebook page, and summarizing prior proceedings); Plaintiff's Second Status Report Regarding Class Notice ("Pl.'s May 7, 2019 Status Report"), dkt. 139 (seven-page report providing detailed timeline of Defendants' efforts to encourage opt-outs once Class notice was disseminated).) When it comes to the more-comparable product of a brief (discussed further below), courts routinely award well over two hours per page of finished, written product, which is about how much time counsel ultimately spent—5.9 hours for the first

His expertise in technical matters (like here, the opt-out web page and the data produced by Facebook) is why the firm keeps technologists on staff.

status report and 15.5 for the second. *E.g.*, *Baier v. Rohr-Mont Motors, Inc.*, 175 F. Supp. 3d 1000, 1022 (N.D. Ill. 2016) (reducing time, but awarding 160 hours to prepare sixteen-page summary judgment brief).

No matter how much time Class Counsel actually spent on these status reports, that is not what they are asking to be compensated for. These activities did take some considerable time. Among other reasons, that is why—in an aggressive exercise of billing discretion—Class Counsel *cut their request in half*. Nowhere in their response do Defendants so much acknowledge this fact. Instead, Defendants simply call Class Counsel's as-billed time improper and abdicate any argument at all about what would actually be reasonable. Should the Court reject Defendants' contention that not a minute should be compensated, Defendants have given the Court no guidance on their position about what would be reasonable—effectively waiving it. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). In any event, Defendants' failure to engage with the remedy Class Counsel actually sought speaks volumes. Half the fees requested for this work is a reasonable award.

### C. Court appearances.

Defendants object to compensating Class Counsel for the numerous Court appearances necessitated by their conduct, primarily based on the twice-rejected argument that none of this is really their fault. To the contrary, the March 29, 2019 appearance was driven entirely by the need for the Court to address Defendants' communications with Class members, (Mar. 29, 2019 Tr., dkt. 136 at 2:10–11 ("So let me tell you why I set [this matter] for a status hearing.")), the April 16, 2019 hearing was largely spent addressing Defendants' communications with Class members before turning to the protective order, (Apr. 29, 2019 Tr., dkt. 137 at 1:1–14:3 ("Your Honor, we have two other motions up in the case.")), and the May 8, 2019 hearing primarily addressed

Defendants' communications with Class members as well, (*see* Pl.'s May 7, 2019 Status Report, dkt. 139 (status report summarizing findings of investigation).) Defendants' only argument is that other matters were addressed at these hearings. Again, Class Counsel's request is already cut in half. To the extent that parts of these hearings were spent on something else, slashing the request in two is, Class Counsel contend, a generous form of "rough justice[.]" *See Goodyear*, 137 S. Ct. at 1187.

### D. Briefs.

Defendants do, at least, agree that the time spent writing the opening brief in support of the motion for sanctions and the reply brief are compensable, but contest how much. (Defs.' Resp. to Fee Petition, dkt. 218 at 11–13, 19.) Part of this argument is, again, an effort to blame the existence of the motion itself on other actors, which should be set aside for the reasons above. (*Id.* at 13.) Beyond this, Defendants (eventually) claim that the appropriate amount of time to spend on these briefs was an hour for Mr. Murray to draft the first fifteen-page brief, and an hour and a half to draft the nine-page reply. (*Id.* at 19.) This would have given Mr. Murray four minutes to write each page of the opening brief and ten minutes to write each page of the reply.

The time it actually took was a total of 25.6 hours spent drafting the opening brief and 22.9 hours drafting the reply brief. On the opening brief, the lions' share of time is Mr. Murray's drafting, along with review by a partner, Mr. Andrews. (*See* Edelson Decl., dkt. 192-1, Exhibit 1-A, submitted *in camera*.) On the reply brief, the situation is the same. (*Id.*, Exhibit 1-B, submitted *in camera*.) Defendants object that more than one attorney was involved, but this is not improper—Mr. Murray drafted these materials, with others editing. *Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1020 (N.D. Ill. 2009) ("[T]he court finds that although several attorneys devoted time to the same issue, it is generally clear that they were not duplicating work. Often,

one attorney was obviously the draftsman of a court filing, and the other the primary editor[.]"). Again, this time, about two hours per page of content—slightly less on the opening brief, slightly more on the reply—reflecting research, drafting, and revision. Courts, for good reason, routinely award more. *See Baier*, 175 F. Supp. 3d at 1022 (10 hours per page); *United Cent. Bank v. Kanan Fashions, Inc.*, No. 10 CV 331, 2012 WL 1409245, at *7 (N.D. Ill. Apr. 23, 2012) (awarding 45.4 hours for twenty-page brief); *cf. Banks v. Comm'r of Soc. Sec.*, No. 1:15-CV-00400-SLC, 2017 WL 3634300, at *3 (N.D. Ind. Aug. 23, 2017), *aff'd sub nom. Harrington v. Berryhill*, 906 F.3d 561 (7th Cir. 2018) (in Social Security context, collecting cases demonstrating two hours per page is reasonable). The time reported by Class Counsel—the time it actually took to perform these tasks—is a far more realistic assessment of the time it takes to file briefs that this Court would accept.

Defendants, for their part, filed a nineteen-page response to the motion for sanctions. (Defs.' Resp. to Mot. for Sanctions, dkt. 165.) Defendants have not disclosed how long it took to do this. (*See* Exhibit 1 to Defs.' Resp. to Fee Petition, dkt. 218-1 (requesting Defendants' counsel's hours).) Even if it took an hour and a half per page—which would be a very quickly-produced brief—Class Counsel spent less time on each of their briefs. It is to be expected that a shorter work would take longer. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, No. 18-3644, 2020 WL 5867923, at *2 (7th Cir. Sept. 24, 2020) (Scudder, J., in chambers) ("Indeed, shorter is often better, and I offer that perspective knowing that it is more difficult to write a short, effective brief than a long, belabored brief."). The time spent on the reply brief is attributable, in no small part, to Defendants' overlength brief. *Cf. Firestine v. Parkview Health Sys., Inc.*, 374 F. Supp. 2d 658, 669 (N.D. Ind. 2005) ("In contrast, where the defendant's objections are so numerous so as to cause lengthy briefs from the prevailing party, more leniency

is provided to the time spent seeking the recovery of fees and costs."). The hours Class Counsel committed to both briefs was reasonable.

But again: Class Counsel asked for half the fees. This is a more-than-sufficient bulwark even if any of this time was excessive, which it was not. The fees should be awarded.

## II. The firm's rates are reasonable.

Defendants also attack the rates charged by Class Counsel. Defendants first contend that the firm hasn't proven that the rates are reasonable, but Class Counsel have produced above-average evidence of this: a very recent decision where the rates were approved, including numerous other approvals cited there, as well as other evidence of comparable rates. *See Barnes v. Aryzta, LLC*, No. 17-cv-7358, 2019 WL 277716, at *3–4 (N.D. Ill. Jan. 22, 2019) (collecting cases approving of Edelson PC's hourly rates, and finding Edelson PC's rates were reasonable); (Pl.'s Fee Petition, dkt. 192 at 5–6 (collecting cases).) Detailed rate reviews in the class action context are relatively less frequent—as compared to § 1983 litigation, for instance—due to the advantages of the percentage-of-the-fund method in awarding fees.[4] Nevertheless, a comprehensive, expert review and assessment of Class Counsel's rates (discussed in *Barnes*) demonstrated that they were reasonable as compared against the Northern District of Illinois market. *See Barnes*, 2019 WL 277716, at *3–4; *see also Dickey v. Advanced Micro Devices, Inc.*, No. 15-CV-04922-HSG, 2020 WL 870928, at *8 (N.D. Cal. Feb. 21, 2020) (finding the firm's rates reasonable). Large law firms, which constitute Class Counsel's most-frequent adversaries, charge far more than this. *E.g.*, *Michels Corp. v. Cent. States, Se. & Sw. Areas Pension Fund*, No. 12 C 4144, 2017 WL 4564243, at *10 (N.D. Ill. May 30, 2017), *report and recommendation adopted*, No. 12 CV 4144, 2017 WL 4583254 (N.D. Ill. June 19, 2017); *Hall v.*

---

[4] Lodestar crosschecks, however, remain common. Perhaps realizing the outsized impact that a rate finding has on a class action practice, Defendants are highly focused on attacking the firm's rates.

*Funk*, No. 14-cv-6308, dkt. 228-1 (N.D. Ill. Aug. 20, 2018) (reflecting $675/hour rate for third-year attorney, $1,075 for partner in 2018 at prominent Chicago firm). The requested rates are reasonable.

Defendants argue that any increase from the last-approved rates in *Barnes* are unwarranted. This is contrary to well-established law that an attorneys' rate goes up as she gains experience, and that fees increase over time due to inflation. *Williamson v. Ortiz*, No. 14-CV-6397, 2019 WL 3555370, at *2 (N.D. Ill. July 31, 2019), *reconsideration denied*, No. 14-CV-6397, 2019 WL 10837714 (N.D. Ill. Aug. 30, 2019) ("[H]ourly fees increase over time as a result of both inflation and the increasing skill and reputation of the billing attorney."). What was appropriate for a second-year associate in 2018 ($270/hour) is not the appropriate rate when she has two more years' experience.[5] Defendants complain that Class Counsel's rates are too high, but present no rebuttal evidence to demonstrate what those rates should be. "Once an attorney provides evidence of his billing rate, the burden is upon the defendant to present evidence establishing 'a good reason why a lower rate is essential.' . . . A defendant's failure to do so is essentially a concession that the attorney's billing rate is reasonable and should be awarded." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir. 1996) (quoting *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993)). The rates of Class Counsel have increased since *Barnes* because they have gained experience and made modest increases to reflect inflation.

Beyond this, Defendants' arguments take aim at non-issues. Defendants make much of the fact that the Class Counsel made an arithmetic error in the original sanctions motion, which

---

[5] Ms. Janzen, who has withdrawn from this case, was admitted to the bar in November 2016. Depending on how one counts the first year—convention dictating that there is no "year zero"—Ms. Janzen is a fourth-year attorney now, and her second-year rates were approved in *Barnes*.

Defendants contend makes any evidence submitted about rates too unreliable to be accepted. (Defs.' Resp. to Fee Petition, dkt. 218 at 14–15.) This logic does not follow. Class Counsel's rates are not justified by their ability to divide by two—about which they could fairly face criticism—but the firm's expertise in class action practice, as approved by courts.[6] Class Counsel have carried the burden on the latter.

Defendants then note that Mr. Edelson's declaration did not include an outright conclusion that the "rates are reasonable," casting this as an evident capitulation. (*Id.* at 19.) Mr. Edelson (and surely, every attorney at Edelson PC) would gladly submit such a declaration, but do not expect it would carry much persuasive weight. *See Val v. BMO Harris, N.A.*, No. 15 C 2991, 2017 WL 4265715, at *4 (N.D. Ill. Sept. 26, 2017) (discussing relevance of affidavits from the petitioning attorney). The prior approvals, and comparable rates, are meant to serve the function of establishing the reasonable rate, which Defendants have not contradicted.

Finally, Defendants assert that Plaintiff's failure to produce to Defendants, on the day their response was due, a copy of the billing records tendered to the Court a year and a half ago—a snapshot in time of the hours incurred then—is relevant to the fee determination, though why this should be is unclear. (Defs.' Resp. to Fee Petition, dkt. 218 at 16.) The hours that were submitted to the Court at that time remain logged in Class Counsel's timekeeping system, which is why Class Counsel can say with confidence that the hours and rates reported then were accurate. (Pl.'s Fee Petition, dkt. 192 at 5 n.5.) Defendants' counsel has been in possession of all requested hours, including those earlier-incurred hours, for going on six months when they were tendered electronically to the Court's deputy and copied to Defendants' counsel. (*See* Exhibit 1

---

[6]     The errors were that Mr. Dore's hours were not halved, and that Mr. Andrews's, Mr. Murray's, and Ms. Janzen's hours were not halved correctly.

to Defs.' Resp. to Fee Petition, dkt. 218-1.) Defendants' counsel lacked no information needed to oppose this fee petition, and instead have continued to rely on rhetoric where reason is required.

In the end, Rick Butler's actions got the attention of a well-established firm who saw a wrong being committed, and within that firm, some of its most senior staff and attorneys. Those individuals have dedicated a tremendous amount of time and effort to serving this Class *pro bono*, and as part of that, dedicated more than a hundred hours to stopping Defendants from trying to undermine the class certification decision with an opt-out campaign. Those hours were, and are, not cheap. But this case posed complex legal questions of class action law, litigated in an extraordinarily important, and sensitive, action. The cost of those hours was reasonable, in light of the skill and experience of the attorneys and staff who expended them.

Moreover—for the last time—whatever the Court may order, Class Counsel must note that Defendants have gotten off comparably easy. Half the requested fees here is an unimpeachably reasonable result and should be awarded.

## III.     Defendants are wrong about costs.

Costs were awarded. (Sanctions Order, dkt. 184 ("The Court orders Rick Butler, Cheryl Butler, and GLV, Inc. . . . to reimburse the plaintiffs' reasonable attorney's fees *and expenses* incurred to litigate this motion.") (emphasis added).)

## IV.     Class Counsel's additional hours spent on the fee petition.

Class Counsel have worked hard to avoid the "secondary litigation" warned of by courts on the amount of fees, having tried to settle the matter for $25,000 before briefing on this fee petition even began. (*See* Pl.'s Fee Petition, dkt. 192.) Class Counsel have incurred more than twenty-five hours drafting this reply brief, primarily by a sixth-year associate, J. Eli Wade-Scott, with review by Mr. Andrews. This brings the time expended on the fee petition to more than

forty hours. (*See* Ex. C to Edelson Decl., dkt. 192-1, submitted *in camera*.) That time is compensable. *Ozinga v. United States Dep't of Health & Human Servs.*, No. 13 C 3292, 2018 WL 2320933, at *7 (N.D. Ill. May 22, 2018) (discussing "fees-on-fees"). Nevertheless, Class Counsel expect that increasing the request to include this time will trigger, at the least, a request for a surreply and more of Class Counsel's and the Court's time, as well as give undue ammunition to an argument that the petition itself overtook the primary issue. Class Counsel are accordingly waiving those fees, bringing the requested time down to far less than half of what was actually spent. The requested fees are, accordingly, more than reasonable.

## <u>CONCLUSION</u>

Class Counsel requests $38,496.25.00 in attorneys' fees, $220.31 in expenses, and that the Court grant any further relief as may be reasonable and just.

Respectfully submitted,

**LAURA MULLEN,** individually and on behalf of a class of similarly situated individuals,

Dated: October 22, 2020

By: /s/ J. Eli Wade-Scott
    One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Ryan D. Andrews
randrews@edelson.com
Eve-Lynn J. Rapp
erapp@edelson.com
Christopher L. Dore
cdore@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff and the Class*