**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LAURA MULLEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 18 C 1465** |
| | ) | |
| **GLV, INC., d/b/a SPORTS** | ) | |
| **PERFORMANCE VOLLEYBALL** | ) | |
| **CLUB and GREAT LAKES** | ) | |
| **CENTER, RICKY BUTLER,** | ) | |
| **and CHERYL BUTLER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Laura Mullen filed suit against GLV, Inc., a youth sports club, and its owners Rick
and Cheryl Butler, asserting claims involving fraud and concealment. (The Court will
refer to each of the Butlers by their first names for the sake of simplicity.) Mullen cited
evidence that Rick Butler had engaged in sexual conduct with several sixteen and
seventeen year old girls while coaching them in the 1980s. She said that the
defendants had concealed and misrepresented the full extent of Butler's sexual conduct
and contended that she would not have enrolled her two daughters in the program had
she known the full truth. Mullen sued on behalf of a putative class.

The Court denied a motion to dismiss filed by the defendants, *see Mullen v GLV,
Inc.*, No. 18 C 1465, 2018 WL 3218693 (N.D. Ill. July 2, 2018), and later certified a
class. *See Mullen v. GLV, Inc.*, 329 F.R.D. 587 (N.D. Ill. 2019). During discovery,

Mullen sought, among other things, discovery regarding Butler's sexual activity with girls he had coached. The defendants persuaded the Court to stay that discovery and to allow them to seek summary judgment on other unrelated grounds.

In considering the motion for summary judgment later filed by the defendants, the Court ruled that Mullen's individual claims could not succeed because she lacked evidence that the defendants believed their representations about the club's programs (largely, that its staff were "extremely qualified") were false; there was sufficient publicly-available information regarding Rick's sexual abuse of female youth athletes that Mullen could not justifiably rely on the defendants' concealment of full information; and that Mullen could not show that the alleged deception proximately caused her an injury because she could not establish that she had actually been deceived. *See Mullen v. GLV, Inc.*, 444 F. Supp. 3d 883 (N.D. Ill.), *amended on reconsideration*, 488 F. Supp. 3d 695 (N.D. Ill. 2020).

Accordingly, the Court dismissed Mullen's individual claims, which of course made her an inadequate class representative. The Court afforded class counsel the opportunity to seek substitution of a new class representative, but they either were unable to do so or elected not to do so. The upshot was that a final judgment was entered in September 2020 that had the effect of dismissing Mullen's claims with prejudice and the class's claims without prejudice. Mullen then appealed.

Around the time the Court ruled on summary judgment, it also sanctioned on the defendants and on their counsel for what the Court found to be improper communications with members of the putative class during the opt-out period after class notice was sent. Specifically, the Court imposed a non-monetary sanction on

defendants' counsel and imposed on the defendants a monetary penalty as well as the plaintiffs'' reasonable attorney's fees and expenses in connection with the investigation and litigation of the motion for sanctions, in an amount to be determined. *See Mullen v. GLV, Inc.*, 334 F.R.D. 656 (N.D. Ill. 2020). The Court later denied the defendants' and counsel's motion for reconsideration of that ruling. *See Mullen v. GLV, Inc.*, No. 18 C 1465, 2020 WL 5630454 (N.D. Ill. Sept. 20, 2020).

While the motion for reconsideration was pending, defendants moved for imposition of sanctions against Mullen and her attorneys. Once Mullen appealed from entry of judgment, the Court determined to hold off ruling on the defendants' motion for sanctions and on the amount of the sanctions award to the plaintiff, in the event an appellate ruling might affect matters.

In late June 2022, the court of appeals affirmed this Court's dismissal order. *Mullen v. GLV, Inc.*, 37 F.4th 126 (7th Cir. 2022). It concluded that Mullen could not show she had been injured by the defendants' claimed deception because she knew enough about "the findings adverse to Butler," *id.* at 1330, to undermine her claim that she had been injured as a result of the claimed deception.

The Court now addresses defendants' motion for sanctions and plaintiffs' fees-and-costs petition based on the Court's earlier sanctions order.

## A.    Defendants' motion for sanctions

Defendants' 49-page motion, reduced to its essentials, includes the following contentions in support of their request for imposition of sanctions on Mullen and her attorneys:

- Mullen and her counsel filed the suit for an improper purpose, specifically,

3

to force the defendants out of business.

- Mullen and her counsel included all sorts of irrelevant and extraneous material in her complaint in an effort to prejudice and embarrass the defendants.

- Mullen, and perhaps her counsel, engaged in a social media campaign that harassed and was defamatory of the defendants.

- The lawsuit and filings in it included a number of false factual assertions and irrelevant allegations, including principally the following:

    o   false statements that Mullen did not have prior knowledge of the allegations about Rick's sexual misconduct with underage girls;

    o   false statements that Mullen would not have paid for volleyball training for her daughters if she had known of the allegations regarding Rick;

    o   false statements about Mullen's daughter's experience in the program(s); and

    o   false statements about the DCFS proceedings regarding Rick.

- Mullen's counsel engaged in abusive discovery tactics.

Defendants seeks sanctions under Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and the Court's inherent power.  Rule 11 provides that by filing a document with the Court, an attorney certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the filing has an adequate foundation in fact and law, and "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b).   Rule 11 embodies both an objective and a subjective standard,

4

prohibiting "frivolousness on the objective side" and "bad faith on the subjective side." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 583 (7th Cir. 2019) (citing *Mars Steel Corp. v. Cont'l Bank N.A.,* 880 F.2d 928, 930 (7th Cir. 1989)).

Section 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" may be required to pay "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Seventh Circuit has said that section 1927 "sets a higher standard for sanctions" than Rule 11, *see United Stars Industries, Inc. v. Plastech Engineered Products, Inc.*, 525 F.3d 605, 610 (7th Cir. 2008), but elsewhere it has described the standard in a way rather similar to that just referenced for Rule 11:

> Some of our cases say either subjective or objective bad faith is a prerequisite for awarding sanctions pursuant to § 1927, while others seem to suggest otherwise. We read the cases as drawing a distinction between subjective and objective bad faith. Subjective bad faith, the more difficult type of bad faith to prove, is not always necessary. Subjective bad faith must be shown only if the conduct under consideration had an objectively colorable basis. The standard for objective bad faith does not require a finding of malice or ill will; reckless indifference to the law will qualify. If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious.

*Dal Pozzo v. Basic Machinery Co.*, 463 F.3d 609, 614 (7th Cir. 2006) (internal quotation marks and citations omitted).

Finally, a court has inherent authority to impose sanctions for litigation misconduct that involves "bad faith, designed to obstruct the judicial process, or a violation of a court order." *REXA, Inc. v. Chester*, 4 F.4th 652, 671 (7th Cir. 2022).

1.    **Claim of improper purpose**

Defendants have failed to show that Mullen or her attorneys filed or pursued the lawsuit for an improper purpose of the type encompassed by Rule 11 in a way that ran afoul of the Rule. The Court has little doubt that, in addition to a monetary award, Mullen hoped to make it far more difficult, if not impossible, for the defendants to continue to coach young volleyball players. But she and her counsel had a proper purpose in filing the suit—seeking to ensure that Rick's prior sexual misconduct was fully disclosed—and the fact that they may have had other motives does not suggest an *improper* purpose.

Lawsuits don't have to be about money, or just about money. Some plaintiffs who sue over use of a dangerous product have as a goal getting the product off the market; some of those who sue because they have been abused by the police hope the offending officer will be fired and want to try to force permanent change; some persons who get unwanted robocalls and sue for money also want to put an end to the defendant's robocalling business even if their own injury is minimal. Those aren't improper purposes.

This case is similar. Mullen had a facially viable lawsuit for damages. That, along with an injunction (until that request was dismissed), is what she sought in the lawsuit. It seems clear that she also hoped the defendants would be driven out of the business due to Rick's past misconduct and the defendants' claimed failure to come clean about it. Though reasonable persons may debate whether Rick Butler should continue to pay a price for his past sexual misconduct, there's nothing *improper* about having the view, as Mullen did, that he should effectively be excommunicated from the

world of youth volleyball. This parallel goal on Mullen's part does not translate into a basis for sanctions under Rule 11's "improper purpose" provision. In this regard the Court agrees with this statement by the Fifth Circuit:

> Doubtless many plaintiffs have multiple purposes in pursuing litigation. And so long as the merits of their claim, viewed objectively, are supported by a good-faith belief that the allegations are well founded and not frivolous, the subjective motivation for pursuing the claim and the multiple purposes are ordinarily of no moment.

*FDIC v. Maxxam, Inc.*, 523 F.3d 566, 581 (5th Cir. 2008). The Court finds that defendants have not shown that Mullen filed suit for an improper purpose within the meaning of Rule 11, nor have they shown that she would not have pursued the lawsuit if the only goal she could achieve was winning the case and an award of damages. There was no violation of Rule 11.

**2.     "Irrelevant" materials in the complaint**

The defendants contend that Mullen and her counsel included in her complaint numerous "slanderous, irrelevant, and unsubstantiated allegations wholly 'on information and belief' and an 'investigation conducted by her attorneys' . . . to maximize the publicity of this lawsuit and harm to Defendants' business and reputation." Defs.' Mot. and Mem. for Sanctions at 17. The Court does not agree that inclusion of these accusations was irrelevant and extraneous to the lawsuit. Mullen's core contention was that the defendants had acted deceptively by denying, minimizing, and failing to disclose the full extent of Rick Butler's sexual misconduct. Including allegations aimed at showing what Mullen contended Rick had done and what he had and had not said about it bore directly on the merits of her claim and thus was not improperly included. The Court also

7

notes that when the defendants moved to dismiss the complaint, they did not move to strike these allegations under Fed. R. Civ. P. 12(f). That said, if they had done so the Court would have denied the motion for the reasons just discussed. The bottom line is that there was no violation of Rule 11 or section 1927 here and no sanctionable misconduct.

The defendants also seem to take the position that it's sanctionable misconduct to call having sex with an underage person "rape." *See* Defs.' Mot. and Mem. for Sanctions at 19. It's not. This is an accurate and widely (though perhaps not universally) accepted use of the term. One common definition of rape is, "[u]nlawful sexual activity and usually sexual intercourse carried out forcibly or under threat of injury against a person's will *or with a person who is beneath a certain age* or incapable of valid consent because of mental illness, mental deficiency, intoxication, unconsciousness, or deception." Rape, https://www.merriam-webster.com/dictionary/rape (last checked Sept. 26, 2022) (emphasis added). And here there's the added component that Rick stood in a position of trust and authority vis-à-vis the girls he was coaching. Thus the defendants' contention that "Plaintiff's use of the word 'rape' . . . is false . . .," Defs.' Mot. and Mem. for Sanctions at 19, is itself inaccurate.

### 3. Significance of the dismissal of the case

At various points in their submissions, the defendants seem to take their win in the lawsuit as proving that basically everything about Mullen's contentions was a sham. That's a misreading. On one point of particular note referenced by the defendants, *see id.* at 29, the grant of summary judgment most certainly does not vindicate Rick Butler

on the matter of sexual misconduct.

The gist of Mullen's lawsuit was that Rick had, and was found to have had, sexual relations with sixteen-and-seventeen-year-old girls he was coaching, but that he had lied about or concealed it and the full extent of his sexual misconduct had not been fully aired. The first part of what Mullen alleged was accurate, and not undermined at all by the dismissal of the case: as discussed in the Court's summary judgment and other rulings, as well as in the Seventh Circuit's decision, the Illinois Department of Children and Family Services and USA Volleyball, a sanctioning body, both found in 1995 that Rick Butler "had sexual intercourse with at least three underage girls he was training." *Mullen*, 37 F.4th at 1329.

The second part of what Mullen alleged—that the defendants had lied about or concealed the extent of Rick's sexual misconduct—*was not adjudicated* in this lawsuit. The Butlers, Mullen alleged, had repeatedly and falsely denied Rick's sexual misconduct and falsely contended that the girls were at least eighteen years old when he had sexual intercourse with them. To attempt to show these denials and contentions were false and that there was more sexual misconduct that had *not* been disclosed, Mullen and her counsel sought discovery from the defendants on those topics. But the defendants persuaded the Court to preclude that discovery pending adjudication of their more narrowly-based summary judgment motion. So those issues were never even investigated as part of the lawsuit, let alone adjudicated. In short, this Court's and the Seventh Circuit's rulings are in no way, shape or form a vindication of the defendants regarding the nature and scope of Rick's past sexual misconduct vis-à-vis underage girls he was training.

### 4. Social media campaign

Defendants also contend that Mullen was publicly harassing them by conducting a social media campaign that had the purpose and effect of smearing their reputation. The Court is not a particularly big fan of social media campaigns, but Mullen has the right of free speech. If she or counsel committed actionable defamation, the Butlers and GLV could have sued her (and may still be able to do so, if the statute of limitations has not yet run). But the fact that this outside-the-lawsuit conduct by Mullen referenced the lawsuit or was carried on in parallel to the lawsuit is not evidence that supports a finding that Mullen, let alone her lawyers, violated Rule 11 or 28 U.S.C. § 1927 or that they filed or pursued the lawsuit in bad faith.

### 5. False statements

It became clear via discovery that Mullen was aware of a good deal of information that had been reported about Rick's sexual misconduct before, or at least when, she sent her daughters to GLV's programs. That was what ultimately doomed her claims: the Court concluded she could not sustain a contention that she had relied upon the accuracy of what *was* said and could not show she was harmed by what *wasn't* said. But although the Court overruled Mullen's contention that knowing some facts about Rick's sexual misconduct was way different from knowing all the facts, the argument was a colorable one in the Court's view. The ruling against Mullen on the merits doesn't, as defendants contend "prove that Mullen and her attorneys intended to commit a fraud upon the Court . . . ." Defs.' Mot. and Mem. for Sanctions at 8. *See, e.g., Beverly Gravel, Inc. v. DiDomenico*, 908 F.2d 223, 227 (7th Cir. 1990) (Grant of summary judgment is not dispositive of the issue of sanctions); *see also, e.g., Brown v.*

*National Bd. of Med. Examiners*, 800 F.2d 168, 173 (7th Cir.1986) (cited in *Beverly Gravel*) ("[T]he fact that the underlying claim was groundless does not necessarily mean that the appropriateness of sanctions under Rule 11 is an equally clear cut issue.")*;*

The defendants' contention that Mullen's enrollment of one of her daughters in a program associated with the Butlers and GLV in 2018, after the lawsuit was filed, shows that she was lying in her central allegations regarding reliance likewise does not provide a basis for sanctions. The Court found this to be an relevant point on the issuance of reliance and causation—though not dispositive by itself—but Mullen had an at-least-colorable argument that this wasn't inconsistent with her central allegations, on the basis that the program was a high school summer league with her high school coaches, not a Butler program, and simply used GLV's site. *See* Pl.'s Resp. to Defs.' Mot. for Sanctions at 2.

The defendants contend that Mullen made false allegations that one of her daughters suffered verbal abuse from Rick Butler, which they say was false. But even if this is so, this was not a significant allegation in the lawsuit and was one that defendants were easily able to address. It didn't multiply the proceedings or cause the defendants any increased expense, at least not that they have shown.

In addition, the defendants have not shown that Mullen or her attorneys misrepresented anything material about the DCFS proceedings. The defendants have consistently taken the position that the DCFS proceedings are not a matter of public record, but that of course does not make the does not make the agency's findings irrelevant. The defendants contend that Mullen overstated the nature and import of the rulings, but the Court largely adopted her characterization, which was supported by

evidence in the record. The Court also dealt at length with the defendants' claims of inaccurate characterization in its ruling on the motion for reconsideration, *see Mullen*, 2020 WL 5630454, at *3, and it overruled those claims. The claims of inaccuracy are not a basis to impose sanctions upon Mullen or her attorneys.

The Court has also considered the defendants' other claims regarding allegations by Mullen that they contend were false. These are less-central points than those discussed above. The Court has considered all of them (as well as everything else in the defendants' 49-page motion) and does not find them to be a basis for imposing sanctions under any of the legal authorities the defendants cite.

### 6. Discovery tactics

The Court overrules the defendants' contentions regarding Mullen's counsel's discovery tactics as a basis for imposing post-suit sanctions. First, there's no particular discovery request that the defendants have shown, or tried to show, ran afoul of Rule 11's or Rule 26(g)'s requirements regarding the propriety of the requests; this seems to be more of a "vexatious conduct" or bad faith argument. Regardless, the time to raise these points regarding discovery was while discovery was ongoing, not after the case was dismissed. The Court promptly adjudicated every discovery-related issue that was presented, some of them in the defendant's favor—in particular, the decision to preclude discovery regarding sexual misconduct by Rick Butler until after the anticipated summary judgment motion could be adjudicated. From this alone, the defendants were on notice that they could raise issues with the Court regarding the scope and conduct of discovery and that the Court would have been willing to consider their points. They chose not to do so. It's not appropriate to revisit now, post-judgment, any such strategic

decisions the defendants made at the time.

*       *       *

The Court has also considered the defendants' other contentions in support of their request for sanctions and finds them lacking in merit. For the reasons stated above, the Court denies the defendants' motion for sanctions.

**B.     Monetary award on previous sanctions ruling**

The Court turns next to the monetary award arising from its earlier sanctions order against the defendants for improperly communicating with class members. In its order, the Court awarded Mullen her reasonable attorney's fees and expenses incurred to investigation regarding what had occurred between defendants and their counsel and class members, and in filing and pursuing the motion for sanctions.

Mullen's counsel say the fees actually incurred (time multiplied by hourly rates) total $76,992.50, but they are asking for half of that, $38,496.25, plus costs of $220.31. The $76,000 figure would have been a significant overreach—so the decision to cut the request was wise—but the $38,000 figure is still unreasonably high in certain respects, as described below.

**1.     Hourly rates**

The first issue involves the appropriate hourly rates. Mullen claims time for five attorneys at rates ranging from $450 to $1,000 per hour; a digital forensic investigator at a $200 hourly rate; and a paralegal at a $125 hourly rate. Specifically, the rates requested, and the years of experience for each attorney, are as follows:

| Name | Years of experience | Hourly rate |
|------|------|------|
| Sydney Janzen | 3 | $ 450 |

13

| Alfred Murray | 11 | $ 650 |
| Christopher Dore | 10 | $ 700 |
| Ryan Andrews | 14 | $ 725 |
| Jay Edelson | 23 | $ 1,000 |
| Jessica Woodward (paralegal) | | $ 125 |
| Felipe Sierra (forensic investing.) | | $ 200 |

The rates are supported only by the affidavit of lead counsel Jay Edelson and by awards approved for the law firm in other cases. Edelson's affidavit is scant support; it says only that the rates proposed are the attorneys' regular rates. That doesn't establish much. The previous approvals are much better evidence. They are summarized in Judge Thomas Durkin's decision in *Barnes v Arytza, LLC*, No. 17 C 7358, 2019 WL 277716 (N.D. Ill. Jan. 22, 2019), in which he approved the following hourly rates for attorneys at the Edelson firm for work done in 2017-18, one to two years before the work in this case, which was done from 2018 through 2020:

| Name | Years of experience | Hourly rate |
| --- | --- | --- |
| Sydney Janzen | 2 | $ 270 |
| Todd Logan | 2 | $ 270 |
| Alexander Tievsky | 3 | $ 350 |
| Eli Wade-Scott | 4 | $ 295 / $ 375 |
| Ryan Andrews | 13 | $ 610 / $ 650 |
| Roger Perlstadt | 16 | $ 610 / $ 650 |

This in the Court's view is the best evidence of the appropriate hourly rates, and it provides an appropriate basis for the Court to set and extrapolate reasonable attorney rates here. This evidence, however, does not support the rates proposed by Edelson.

Two of the attorneys in *Barnes*, Sydney Janzen and Ryan Andrews, are also involved in the present case; they are identified as having one more year of experience than they had at the time of the work done in *Barnes.* The Court sets Janzen's rate for this case at the same amount as the rate approved for attorney Tievsky in *Barnes*; at

14

the time of the work done in the present case, Janzen had the same level of experience as Tievsky did in *Barnes*. Thus Janzen's approved rate is $350, not $450 as requested.

Mullen has not justified a twelve percent jump for attorney Andrews (from $650 to $725) for work done with just one more year of experience, and one year later, than the work Judge Durkin considered in *Barnes*. The Court will instead apply a rate of $675 for Andrews's work.

Next is attorney Murray. His proposed rate of $650 is insufficiently supported; the Court will instead apply a rate of $550 for his work, which is commensurate with the low-end $610 rate approved in *Barnes* for attorney Andrews, who at the time at issue in that case had two more years of experience than Murray had at the time relevant in the present case.

The Court will apply that same $550 rate for attorney Dore, who had slightly less experience than Murray. Finally, attorney Edelson is without question a highly skilled and experienced lawyer, but he has made no effort to support his proposed $1,000 hourly rate. The Court will apply a rate of $800, which it gets from extrapolating from the other approved rates to account for his greater degree of experience.

The proposed paralegal rate of $125 per hour is supported by caselaw, so the Court adopts that rate here. *See World Outreach Conference Ctr. v. City of Chicago* 234 F. Supp. 3d 904, 915 (N.D. Ill. 2017). By contrast, no support is offered for the $200 rate proposed for the digital forensic investigator. In the absence of support, there is no basis to approve his time at a higher rate than the $125 rate for the paralegal.

###   2.      Reasonable time

The reduced time claimed by counsel, the paralegal, and the forensic investigator

has been sufficiently supported as proximately caused by the defendants' misconduct, reasonable, and within the scope of the Court's sanctions order, with a few exceptions.

First, the Court disapproves the time spent preparing status reports that the Court did not request. The Court expected that counsel would advise the Court of their efforts at progress at the in-person status hearings it was holding frequently during the relevant stage of the case. Given those hearings, written reports weren't needed, which is why the Court didn't ask for them. The Court excludes the time for preparation and review of these three reports.

Second, the time spent on the investigation of the contacts between the defendants and their counsel and class members—including what the defendants refer to as "the Facebook investigation"—was all proximately caused by the defendants' and counsel's misconduct and reasonably spent to ferret out what had occurred. It's true that not every line of investigation struck paydirt, but that's the nature of investigations. All of this time and effort was incurred because of the misconduct by the defendants and their counsel, as required under *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017).

Third, nearly all of the time spent at the three in-court hearings was proximately caused by, and reasonably related to, the misconduct.[1] On the other hand, it is true, as the defendants point out, that the status hearings also involved other matters, though those other matters weren't the principal topics. For this reason the Court will reduce the time charged for the status hearings by one-fourth; the rest is properly compensable

---

[1] Defendants' contention that the time has to be "solely" caused by the misconduct is misplaced; it distorts the meaning of proximate cause.

and reasonable

Fourth, the time spent on Mullen's sanctions brief and reply is somewhat excessive, but not by anywhere near as much as the defendants argue. The defendants rather absurdly contend that the Court should reduce the attorney time to one (1) hour for the fifteen-page motion for sanctions and one and one-half (1.5) hours for the nine-page reply. That's ridiculous; the Court is quite confident that the defendants' attorney spent *far* more than that on her response brief; it not, it would border on malpractice. In addition, defendants' principal objection to the time charged on the briefs is that it duplicates the time spent on the status reports, as the facts and other points set out in the status reports are incorporated into the briefs. On this the defendants cannot have it both ways. They cannot exclude the time on the status reports because the reports weren't needed and then cut the time on the sanctions briefs because they duplicate what was charged for the status reports. The Court will reduce the time allocated to drafting the motion and the reply by one-fourth.

The Court will award half the time spent on the preparing of the current fee request and the reply; the amounts indicated in the briefs for these tasks is unreasonably high given what was filed.

Last but not least, all of the time spent by the paralegal and forensic investigator is properly supported, proximately caused by the misconduct, and reasonably spent. The relatively modest costs sought by Mullen are properly supported and reasonable as well.

The Court directs Mullen's counsel to recalculate the attorney time and fees using the hourly rates as approved by the Court and the reductions the Court has made.

17

They are to provide the recalculation along with an explanation to the defendants' counsel by Monday, October 3, 2022. The defendants are to provide any objections to Mullen's counsel by Friday, October 7, 2022. A joint status report is to be filed with the Court on Wednesday, October 12, 2022, providing the recalculation, explanation, and any objections. To be clear, these submissions are not an opportunity to reargue the matters; the Court has ruled, and now what the parties need to do is come up with a calculation that incorporates the Court's ruling.

### Conclusion

The Court denies the defendants' motion for sanctions [dkt. no. 203] for the reasons stated in this order. The Court also rules on the plaintiff's sanctions fee petition as stated in this order. A joint status report with a recalculation of the compensable fees and costs consistent with this order and directions in the paragraph just above is to be filed on October 12, 2022.

Date: September 28, 2022

MATTHEW F. KENNELLY
United States District Judge